**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**


IN RE: ABILIFY (ARIPIPRAZOLE)    )
PRODUCTS LIABILITY LITIGATION   )
                            )   Case No. 3:16-md-2734
                            )
                            )   Pensacola, Florida
                            )   **November 7, 2016**
                            )   11:10 a.m.
                            )


**CASE MANAGEMENT CONFERENCE**

BEFORE THE HONORABLE M. CASEY RODGERS
CHIEF UNITED STATES DISTRICT JUDGE
(Pages 1-71)

## APPEARANCES

FOR THE PLAINTIFFS:    **GARY WILSON, ESQUIRE**
**TARA D. SUTTON, ESQUIRE**
**MUNIR R. MEGHJEE, ESQUIRE**
**MEGAN J. MCKENZIE, ESQUIRE**
Robins Kaplan Miller
800 Lasalle Avenue, Suite 2800
Minneapolis, Minnesota  55402

**BRYAN F. AYLSTOCK, ESQUIRE**
**STEPHEN H. ECHSNER, ESQUIRE**
Aylstock, Witkin, Kreis & Overholtz
17 E Main Street, Suite 200
Pensacola, Florida  32502

**B. KRISTIAN W. RASMUSSEN, ESQUIRE**
**ERNEST CORY, ESQUIRE**
Cory, Watson, Crowder
2131 Magnolia Avenue, Suite 200
Birmingham, Alabama  35205

**LEXI J. HAZAM, ESQUIRE**
Lieff, Cabraser, Heimann & Bernstein
275 Battery Street, 29th Floor
San Francisco, California 94111

**J. GORDON RUDD, JR., ESQUIRE**
Zimmerman Reed LLP
1100 IDS Center, 80 S. 8th Street
Minneapolis, Minnesota  55402

**JENNIFER LIAKOS, ESQUIRE**
Napoli Shkolnik PLLC
525 South Douglas Street, Suite 260
El Segundo, California  90245

**M. BRANDON SMITH, ESQUIRE**
Childers, Schlueter & Smith L.L.C.
1932 North Druid Hills Road, Suite 100
Atlanta, Georgia  30319

**MARLENE J. GOLDENBERG, ESQUIRE**
GoldenbergLaw, PLLC
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402

**APPEARANCES**

FOR THE PLAINTIFFS:      *KENNETH S. BYRD, ESQUIRE*
                         Lieff, Cabraser, Heimann & Bernstein
                         150 4th Avenue N, Suite 1650
                         Nashville, Tennessee  37219

                         *JONATHAN S. MANN, ESQUIRE*
                         Pittman, Dutton & Hellums, P.C.
                         2001 Park Place N., Suite 1100
                         Birmingham, Alabama  35203

                         *BEHRAM V. PAREKH, ESQUIRE*
                         Kirtland & Packard LLP
                         2041 Rosecrans Avenue, Third Floor
                         El Segundo, California  90245

                         *TROY A. RAFFERTY, ESQUIRE*
                         *DANIEL A. NIGH, ESQUIRE*
                         Levin, Papantonio
                         316 S. Baylen Street, Suite 600
                         Pensacola, Florida  32502

                         *GEORGE T. WILLIAMSON, ESQUIRE*
                         Farr, Farr, Emerich
                         99 Nesbit Street
                         Punta Gorda, Florida  33950

                         *LAUREN CALVERT, ESQUIRE*
                         Morris Anderson Law
                         2001 S. Maryland Parkway
                         Las Vegas, Nevada  89104

                         *RICHARD W. SCHULTE, ESQUIRE*
                         Wright & Schulte LLC
                         865 S Dixie Drive
                         Vandalia, Ohio  45377

<u>**APPEARANCES**</u>

FOR THE DEFENDANTS:        *ANAND AGNESHWAR, ESQUIRE*
                          Arnold & Porter LLP
                          399 Park Avenue
                          New York, New York  10022

                          *LUKE A CONNELLY, ESQUIRE*
                          Winston & Strawn LLP
                          200 Park Avenue
                          New York, New York  10166

                          *MATTHEW ALAN CAMPBELL, ESQUIRE*
                          Winston & Strawn  LLC
                          1700 K Street NW
                          Washington, D.C.   20006

                          *LARRY HILL, ESQUIRE*
                          *CHARLES F. BEALL, JR., ESQUIRE*
                          *KIMBERLY S. SULLIVAN, ESQUIRE*
                          Moore, Hill & Westmoreland, P.A.
                          350 W Cedar Street
                          Maritime Place, Suite 100
                          Pensacola, Florida  32502

                          *HAL K. LITCHFORD, ESQUIRE*
                          Baker Donelson Bearman
                          390 N Orange Avenue, Suite 1875
                          Orlando, Florida  32801

                          *MATTHEW A. EISENSTEIN, ESQUIRE*
                          Arnold & Porter LLP
                          601 Massachusetts Avenue NW
                          Washington, D.C.   20001

                          *KYLE A DIAMANTAS, ESQUIRE*
                          Baker Donelson Bearman PC
                          200 S Orange Avenue, Suite 2900
                          Orlando, Florida  32801

                          *LAUREN COLTON, ESQUIRE*
                          Hogan Lovells US LLP
                          100 International Drive
                          Baltimore, Maryland  21202

*P R O C E E D I N G S*

**(Court called to order 11:10 a.m.)**

11:10:12 **THE COURT:**  Good morning.  It's still morning, maybe not for some of you, maybe afternoon, but welcome.  I'm Judge Casey Rodgers.  It's my pleasure to have you all here this morning for the initial case management conference in the Abilify MDL action.

For the record, this is In Re: Abilify Products Liability Litigation, Case No. 3:16md2734.

So it looks a little bit like jury selection, there's so many of you here.  I wish I could have hosted you in my nice big courtroom across the street.  Some of you have been in that courtroom.  But I assure you we are much better off here in this courtroom breathing clean air.  And beyond that, how often do you all get to appear in a beautifully-restored historic courthouse?

So I hope you're comfortable enough.  But I do want to assure you, as I think I did with some of you on the conference I had with the original actions filed in this court, that if you feel we need a larger courtroom, something that we can't accommodate here in this courthouse, then I'm happy to hold any proceedings over in our Tallahassee courthouse, just a short 200 miles away from here.  But I'm happy to do it.  And you'll just need to let me know if you think we need to do that or the circumstances call for it.

| | | |
|---|---|---|
| 11:11:43 | 1 | As you know, this MDL action was assigned to me by |
| 11:11:48 | 2 | order of the Judicial Panel on Multidistrict Litigation on |
| 11:11:52 | 3 | October 3rd, 2016. |
| 11:11:55 | 4 | Now, in terms of introductions, I feel like I'm at a |
| 11:12:00 | 5 | bit of a disadvantage in terms of names and facial recognition. |
| 11:12:04 | 6 | There's only one of me, but I believe at last count I think |
| 11:12:08 | 7 | there's about thirty of you here in the courtroom.  I know |
| 11:12:10 | 8 | there are others on the phone. |
| 11:12:12 | 9 | I'm going to do my best hopefully early on in the |
| 11:12:15 | 10 | litigation to begin to commit to memory faces and names and |
| 11:12:20 | 11 | make that connection.  I promise you I will do that.  But I'd |
| 11:12:24 | 12 | like to start now by asking each of you to introduce |
| 11:12:37 | 13 | yourselves, if you would.  Some of you I do know.  Many of you |
| 11:12:37 | 14 | I do not know.  And for the record, I think it would be helpful |
| 11:12:37 | 15 | to have you all introduce yourselves and the client you're here |
| 11:12:40 | 16 | representing. |
| 11:12:41 | 17 | So we'll start with -- you must be Mr. Wilson? |
| 11:12:43 | 18 | MR. WILSON:  Yes, I am, Your Honor.  Thank you.  And |
| 11:12:44 | 19 | the courtroom is great. |
| 11:12:45 | 20 | THE COURT:  Thank you. |
| 11:12:46 | 21 | MR. WILSON:  I am Gary Wilson from Robins Kaplan in |
| 11:12:51 | 22 | Minneapolis representing the plaintiffs. |
| 11:12:53 | 23 | THE COURT:  And you're interim co-lead? |
| 11:12:53 | 24 | MR. WILSON:  Yes, I am. |
| 11:12:56 | 25 | THE COURT:  Thank you. |

| | | |
|---|---|---|
| 11:12:56 | 1 | **MR. AYLSTOCK:**  Good morning, Your Honor.  Bryan |
| 11:12:57 | 2 | Aylstock from Aylstock, Witkin, Kreis & Overholtz, and I'm |
| 11:13:04 | 3 | representing the plaintiffs, interim liaison. |
| 11:13:05 | 4 | **THE COURT:**  Good morning. |
| 11:13:05 | 5 | **MR. RASMUSSEN:**  Good morning, Your Honor.  Kristian |
| 11:13:08 | 6 | Rasmussen, and I'm here on behalf of plaintiffs as interim |
| 11:13:11 | 7 | co-lead counsel. |
| 11:13:12 | 8 | **THE COURT:**  Good to see you again. |
| 11:13:14 | 9 | Mr. Echsner? |
| 11:13:14 | 10 | **MR. ECHSNER:**  Good morning, Judge Rodgers.  Steve |
| 11:13:18 | 11 | Echsner from Aylstock, Witkin, Kreis & Overholtz representing |
| 11:13:19 | 12 | the Locklear plaintiffs filed here in the Northern District. |
| 11:13:23 | 13 | **THE COURT:**  Good to see you, thank you. |
| 11:13:23 | 14 | Mr. Rafferty? |
| 11:13:24 | 15 | **MR. RAFFERTY:**  Good morning, Your Honor.  Troy |
| 11:13:25 | 16 | Rafferty from Levin Papantonio representing several of the |
| 11:13:29 | 17 | plaintiffs here in the litigation. |
| 11:13:30 | 18 | **THE COURT:**  Mr. Rafferty, I heard something this |
| 11:13:32 | 19 | morning that maybe you weren't receiving notices of orders. |
| 11:13:37 | 20 | Whatever we need to do to rectify that, we will. |
| 11:13:41 | 21 | **MR. RAFFERTY:**  Thank you, Your Honor.  I got an email |
| 11:13:44 | 22 | right before I came in saying -- I think it's been fixed, but |
| 11:13:49 | 23 | thank you. |
| 11:13:49 | 24 | **MS. HAZAM:**  Good morning, Your Honor.  Lexi Hazam from |
| 11:13:52 | 25 | Lieff, Cabraser, Heimann & Bernstein in San Francisco, |

| 11:13:54 | 1 | representing several plaintiffs transferred to this district. |

**THE COURT:**  Good morning.

**MS. SUTTON:**  Good morning, Your Honor.  Tara Sutton from the Robins Kaplan firm in Minneapolis on behalf of plaintiffs.

**THE COURT:**  Good morning.

**MR. RUDD:**  Good morning, Your Honor.  Gordon Rudd from Zimmerman Reed in Minneapolis on behalf of the plaintiffs.

**THE COURT:**  Good morning.

**MR. MEGHJEE:**  Good morning, Your Honor.  Munir Meghjee from the Robins Kaplan law firm on behalf of plaintiffs.

**THE COURT:**  Good morning, thank you.

**MR. CORY:**  Good morning, Your Honor.  I'm Ernie Cory from Birmingham here on behalf of plaintiffs.

**THE COURT:**  Thank you.

**MS. LIAKOS:**  Good morning, Your Honor.  Jennifer Liakos from Napoli Shkolnik, here on behalf of plaintiffs.

**THE COURT:**  Good morning.

**MR. SMITH:**  Good morning, Your Honor.  Brandon Smith from Childers, Schlueter & Smith in Atlanta on behalf of the plaintiffs.

**MS. GOLDENBERG:**  Good morning, Your Honor.  Marlene Goldenberg from Goldenberg Law in Minneapolis on behalf of the plaintiffs.

**MR. BYRD:**  Your Honor, Kenny Byrd with Lieff,

| | | |
|---|---|---|
| 11:14:51 | 1 | Cabraser, Heimann & Bernstein in the Nashville office on behalf |
| 11:14:54 | 2 | of plaintiffs. |
| 11:14:55 | 3 | **MR. MANN:**  Good morning, Your Honor.  Jon Mann from |
| 11:14:57 | 4 | Pittman, Dutton & Hellums on behalf of plaintiffs. |
| 11:14:57 | 5 | **THE COURT:**  Good morning. |
| 11:15:06 | 6 | **MR. PAREKH:**  Good morning, Your Honor.  Behram Parekh |
| 11:15:06 | 7 | from Kirtland & Packard for the plaintiffs. |
| 11:15:06 | 8 | **THE COURT:**  Good morning, thank you. |
| 11:15:09 | 9 | **MR. NIGH:**  Good morning, Your Honor.  Daniel Nigh from |
| 11:15:11 | 10 | Levin Papantonio here in Pensacola on behalf of plaintiffs. |
| 11:15:11 | 11 | **THE COURT:**  Good morning. |
| 11:15:16 | 12 | Anyone on the phone on behalf of the plaintiffs?  I |
| 11:15:19 | 13 | believe we do have a few attorneys on the phone. |
| 11:15:27 | 14 | **MS. MCKENZIE:**  Yes, Your Honor.  This is Megan |
| 11:15:28 | 15 | McKenzie from Robins Kaplan on behalf of the plaintiffs. |
| 11:15:35 | 16 | **THE COURT:**  Okay.  Good morning. |
| 11:15:35 | 17 | **MR. SCHULTE:**  This is Richard Schulte from Wright & |
| 11:15:37 | 18 | Schulte on behalf of plaintiffs. |
| 11:15:40 | 19 | **THE COURT:**  Good morning. |
| 11:15:44 | 20 | **MR. WILLIAMSON:**  Judge, this is George Williamson on |
| 11:15:47 | 21 | behalf of the plaintiffs. |
| 11:15:48 | 22 | **THE COURT:**  And then is Ms. Calvert also on the line? |
| 11:15:52 | 23 | **MS. CALVERT:**  Yes.  Lauren Calvert of Morris Anderson |
| 11:15:57 | 24 | on behalf of plaintiffs. |
| 11:15:58 | 25 | **THE COURT:**  Thank you. |

| | | |
|---|---|---|
| 11:15:58 | 1 | And then Ms. Bolton (sic), are you on the line? |
| 11:16:04 | 2 | **MS. COLTON:**  It's actually Lauren Colton with a "C", |
| 11:16:09 | 3 | Your Honor. |
| 11:16:09 | 4 | **THE COURT:**  I apologize. |
| 11:16:11 | 5 | **MS. COLTON:**  No worries.  I'm on behalf of the |
| 11:16:15 | 6 | defendant, Bristol-Myers. |
| 11:16:16 | 7 | **THE COURT:**  Thank you. |
| 11:16:17 | 8 | Then Mr. Litchford, are you on?  Hal Litchford? |
| 11:16:27 | 9 | He was on, I believe, but maybe not any longer. |
| 11:16:31 | 10 | **MR. LITCHFORD:**  Your Honor, I'm sorry, I had a call |
| 11:16:34 | 11 | coming in and I couldn't answer quickly enough there.  It's Hal |
| 11:16:39 | 12 | Litchford, Baker Donelson, and I'm on the line for the Otsuka |
| 11:16:44 | 13 | defendants. |
| 11:16:44 | 14 | **THE COURT:**  Thank you and good morning. |
| 11:16:46 | 15 | Is there anyone else on the telephone who has not |
| 11:16:49 | 16 | introduced themselves? |
| 11:16:52 | 17 | *(No response.)* |
| 11:16:53 | 18 | All right.  If at any point during the conference, |
| 11:16:57 | 19 | those of you on the telephone, if there's technical |
| 11:17:01 | 20 | difficulties or you have trouble hearing, just speak up and let |
| 11:17:04 | 21 | us know and we'll try to fix that. |
| 11:17:07 | 22 | Then turning now to the defense, for Bristol-Myers |
| 11:17:12 | 23 | Squibb, Mr. Agneshwar? |
| 11:17:15 | 24 | **MR. AGNESHWAR:**  Correct, Your Honor.  Good morning. |
| 11:17:18 | 25 | **THE COURT:**  Good morning. |

| | | |
|---|---|---|
| 11:17:18 | 1 | **MR. EISENSTEIN:**  Good morning, Your Honor.  Matt |
| 11:17:19 | 2 | Eisenstein from Arnold & Porter on behalf of Bristol-Myers. |
| 11:17:21 | 3 | **THE COURT:**  Good morning. |
| 11:17:21 | 4 | **MR. HILL:**  Good morning, Your Honor.  Larry Hill from |
| 11:17:24 | 5 | Moore, Hill & Westmoreland for Bristol-Myers. |
| 11:17:29 | 6 | **MR. CAMPBELL:**  Good morning, Your Honor.  Matt |
| 11:17:30 | 7 | Campbell from Winston & Strawn, the DC office, here on behalf |
| 11:17:30 | 8 | of two of the defendants. |
| 11:17:30 | 9 | **MR. CONNELLY:**  Luke Connelly also from Winston & |
| 11:17:30 | 10 | Strawn for the Otsuka defendants. |
| 11:17:41 | 11 | **MR. DIAMANTAS:**  Kyle Diamantas from Baker Donelson, |
| 11:17:43 | 12 | also for the Otsuka defendants. |
| 11:17:43 | 13 | **MR. BEALL:**  Your Honor, Charles Beall from Moore, Hill |
| 11:17:48 | 14 | & Westmoreland on behalf of Bristol-Myers. |
| 11:17:50 | 15 | **THE COURT:**  Good morning. |
| 11:17:50 | 16 | **MS. SULLIVAN:**  Good morning, Your Honor.  Kim Sullivan |
| 11:17:50 | 17 | with Moore, Hill & Westmoreland on behalf of Bristol-Myers. |
| 11:17:55 | 18 | **THE COURT:**  Okay.  Who else do we have? |
| 11:17:55 | 19 | **MS. HENNESSY:**  Monica Hennessy from Otsuka. |
| 11:17:55 | 20 | **MR. LeGOWER:**  Good morning, Your Honor.  Donald |
| 11:18:02 | 21 | LeGower from Bristol-Myers. |
| 11:18:02 | 22 | **THE COURT:**  Now, are you all in-house? |
| 11:18:05 | 23 | **MR. LeGOWER:**  We're both in-house. |
| 11:18:06 | 24 | **MS. HENNESSY:**  Yeah, we're in-house counsel, Your |
| 11:18:13 | 25 | Honor. |

| | | |
|---|---|---|
| 11:18:13 | 1 | **THE COURT:**  Okay, good, thank you. |
| 11:18:13 | 2 | Excuse me just a minute, please. |
| 11:18:33 | 3 | Now I'd like to take just a minute to introduce some |
| 11:18:36 | 4 | of the court personnel that you will become -- if you're not |
| 11:18:39 | 5 | already acquainted with, you will become familiar with them |
| 11:18:42 | 6 | throughout the course of this litigation. |
| 11:18:45 | 7 | First, Magistrate Judge Gary Jones.  I believe Judge |
| 11:18:50 | 8 | Jones is on the telephone.  He is one of our magistrate judges. |
| 11:18:53 | 9 | He actually sits in the Gainesville division of our court.  If |
| 11:18:58 | 10 | you've had the pleasure of appearing before Judge Jones, then |
| 11:19:02 | 11 | you know he is highly competent and will be excellent support |
| 11:19:09 | 12 | for our court and me in particular in this litigation. |
| 11:19:13 | 13 | Also, my law clerk that's assigned to this MDL action |
| 11:19:20 | 14 | is Ms. Gwendolyn Bills, and she is here.  Also excellent |
| 11:19:26 | 15 | support for me, and she's very easy to work with, and I'm sure |
| 11:19:30 | 16 | you will find her a pleasure to work with. |
| 11:19:34 | 17 | Also, Ms. Susan Simms, if you haven't met Ms. Simms, |
| 11:19:40 | 18 | she is my courtroom deputy.  She works for me but she's |
| 11:19:43 | 19 | technically assigned to our clerk's office, but she'll be |
| 11:19:47 | 20 | available to you for certainly any courtroom logistical issues |
| 11:19:53 | 21 | as well as scheduling. |
| 11:19:55 | 22 | This is Ms. Donna Boland to my immediate right. |
| 11:20:02 | 23 | Ms. Boland, B-o-l-a-n-d, is my court reporter.  She, too, is |
| 11:20:08 | 24 | excellent.  And if you need any services from Ms. Boland, then |
| 11:20:15 | 25 | feel free to reach out to her and she will assist you.  And I |

| | |
|---|---|
| 11:20:21 | 1 |
| 11:20:24 | 2 |
| 11:20:28 | 3 |
| 11:20:36 | 4 |
| 11:20:40 | 5 |
| 11:20:43 | 6 |
| 11:20:46 | 7 |
| 11:20:51 | 8 |
| 11:20:54 | 9 |
| 11:20:58 | 10 |
| 11:21:00 | 11 |
| 11:21:04 | 12 |
| 11:21:08 | 13 |
| 11:21:15 | 14 |
| 11:21:20 | 15 |
| 11:21:23 | 16 |
| 11:21:27 | 17 |
| 11:21:31 | 18 |
| 11:21:35 | 19 |
| 11:21:35 | 20 |
| 11:21:39 | 21 |
| 11:21:44 | 22 |
| 11:21:49 | 23 |
| 11:21:52 | 24 |
| 11:21:53 | 25 |

want to talk in a few minutes about court reporter services and
transcripts, but I'll hold off for just a little bit on that.

Mr. Randy Hausner is my court security officer.
Obviously he has responsibility for maintaining security here
in the courtroom and enforcing all of the Court's orders in the
courtroom.  I don't think that will be an issue.  He'll
probably get very bored.  I know that won't be an issue here,
but he will be here -- whenever you have a conference,
Mr. Hausner will be here in the morning, he'll open the
courtroom and get you all situated.

And then in the back of the courtroom, you may not
have met -- and they're probably not happy about me introducing
them -- is Mr. Travis Green and Ms. Donna Bajzik.  They are
employees of our clerk's office.  Mr. Green is actually our
resident deputy clerk in charge here in Pensacola.  And they
are very much involved in the day-to-day activity on the docket
in this litigation.  But feel free to reach out to either one
of them, Donna or Travis, if you need anything from the clerk's
office.

And if it would be helpful -- I wish I had had the
foresight to do it -- we can create a list of all of those
names of the people I've just introduced to you with contact
information, and we can actually file that on the docket after
today.  That will be helpful.

All right.  I want to thank you all for your

| | |
|---|---|
| 11:21:59 | 1 |
| 11:22:03 | 2 |
| 11:22:07 | 3 |
| 11:22:11 | 4 |
| 11:22:16 | 5 |
| 11:22:22 | 6 |
| 11:22:26 | 7 |
| 11:22:29 | 8 |
| 11:22:31 | 9 |
| 11:22:35 | 10 |
| 11:22:38 | 11 |
| 11:22:42 | 12 |
| 11:22:45 | 13 |
| 11:22:51 | 14 |
| 11:22:57 | 15 |
| 11:23:04 | 16 |
| 11:23:10 | 17 |
| 11:23:18 | 18 |
| 11:23:23 | 19 |
| 11:23:28 | 20 |
| 11:23:31 | 21 |
| 11:23:36 | 22 |
| 11:23:41 | 23 |
| 11:23:44 | 24 |
| 11:23:47 | 25 |

preconference submissions.  The materials were extremely
helpful to me in preparing for today's conference, so thank you
for that.  I know a lot of time went into those submissions.

Also helpful to me recently was my attendance at the
MDL conference down in West Palm.  That was last week.  And of
course, that's the national conference that is hosted by the
Judicial Panel on Multidistrict Litigation through the Federal
Judicial Center.

There was a great deal of information presented at
that conference.  I found my head swimming just a little bit
while I was there, but I tried to act like a sponge and just
take in as much information as I could.

One of the many takeaways for me at that conference
was the fact that there is -- from what I can gather, there is
no magic formula or recipe for handling an MDL action.  And
although most MDL judges do seek out advice and guidance from
other more experienced MDL judges, most borrow ideas from a
number of different judges.  A lot of judges seek out maybe one
colleague that they know of who has an MDL or has had one in
the past, but there are a number of judges who seek the advice
of a broad range of judges across the federal judiciary and
then they apply what seems relevant to them given the case that
they've been assigned.  And that's what I plan to do.  And I
have spoken to a number of my colleagues around the country,
various geographic areas, districts, about their handling of

MDLs, and from that I've learned again there's no one magic formula or approach.  But I also plan to listen to you all. You certainly bring a wealth of experience and a unique perspective to the table, and so I will be relying on you as well as we move through this litigation.

And from the outset, I want you to know that I take this very seriously, my role to help you manage these cases in such a way that each side gets the information that it needs and the answers that it needs in order to make an informed decision on whether to take the individual cases back to the transferor districts for trial or to test your respective positions through a bellwether trial process in hopes of resolving the MDL here in this court.

But in either case, I hope that you get the information -- and I will help you to get the information that you need during the coordinated pretrial proceedings to answer those questions.

So the state of this MDL, as I understand it -- and please correct me if you understand it differently -- we have 45 cases pending now in the MDL.  Dozens of attorneys have appeared.  41 of the 45 cases have been transferred by the Judicial Panel on Multidistrict Litigation from 22 different districts.  Four cases were originally filed in this district prior to the transfer order, and two have been filed in this district since the transfer order.

| | | |
|---|---|---|
| 11:25:42 | 1 | There is one additional case I understand that's |
| 11:25:47 | 2 | pending transfer.  This was part of what the defendants advised |
| 11:25:54 | 3 | me of in their brief, which I appreciated.  It's filed |
| 11:25:58 | 4 | originally in the Northern District of Illinois, and there's a |
| 11:26:02 | 5 | *pro se* plaintiff, I believe, involved, a Mr. Memler in that |
| 11:26:06 | 6 | action. |
| 11:26:06 | 7 | I don't believe it's actually been transferred yet. |
| 11:26:08 | 8 | Do you know differently? |
| 11:26:15 | 9 | **MR. AGNESHWAR:**  I don't believe it has, Your Honor. |
| 11:26:17 | 10 | **THE COURT:**  But you anticipate it will be? |
| 11:26:21 | 11 | **MR. AGNESHWAR:**  Yes, Your Honor. |
| 11:26:22 | 12 | **THE COURT:**  Okay, thank you. |
| 11:26:22 | 13 | Additionally, there are 21 cases currently pending in |
| 11:26:25 | 14 | New Jersey state court, all of which have been consolidated, |
| 11:26:29 | 15 | before Judge James -- now known to me as Jim -- DeLuca.  Very |
| 11:26:37 | 16 | nice man.  He's been very gracious.  I think he and I will be |
| 11:26:41 | 17 | good friends when this is all over. |
| 11:26:43 | 18 | Now, I wanted to address with you all and seek some |
| 11:26:48 | 19 | input on what you expect in terms of -- and I know you don't |
| 11:26:53 | 20 | have a crystal ball, I don't either, and I keep asking for one |
| 11:26:58 | 21 | but no one has given me one -- what you expect in terms of the |
| 11:27:03 | 22 | cases to be filed in this MDL.  And also, I want to ask you |
| 11:27:08 | 23 | about any class action litigation that may or may not be on the |
| 11:27:13 | 24 | horizon or expected. |
| 11:27:15 | 25 | You had -- both sides had sort of wildly disparate |

|          |    |                                                                     |
|----------|----|---------------------------------------------------------------------|
| 11:27:20 | 1  | views on the number of cases that you expect to make up this        |
| 11:27:25 | 2  | MDL.                                                                 |
| 11:27:25 | 3  | So, Mr. Wilson, what can you --                                      |
| 11:27:27 | 4  | MR. WILSON:  Yes, Your Honor, may I please speak to                  |
| 11:27:30 | 5  | that?                                                                |
| 11:27:30 | 6  | THE COURT:  Yes.                                                     |
| 11:27:30 | 7  | MR. WILSON:  We had an organizational dinner last                   |
| 11:27:33 | 8  | night.  And as I always do, I conducted my survey of: *How many*    |
| 11:27:37 | 9  | *cases do you have?  What's your plans?*                             |
| 11:27:39 | 10 | And what I've found is these -- the people behind me                |
| 11:27:41 | 11 | are all very experienced MDL attorneys.  And people are waiting     |
| 11:27:46 | 12 | for some of the efficiencies to be put into place, for example,     |
| 11:27:50 | 13 | a master complaint and a short form complaint, which is             |
| 11:27:56 | 14 | commonplace in these types of cases, and I don't believe the        |
| 11:27:59 | 15 | defendants are going to oppose that.                                |
| 11:28:01 | 16 | And then we're going to see a surge in case filings.                |
| 11:28:07 | 17 | We put in our papers that it's going to be in excess of a           |
| 11:28:11 | 18 | thousand cases ultimately, and we still believe that.               |
| 11:28:15 | 19 | THE COURT:  Okay.  And as I said, the defendants, I                 |
| 11:28:20 | 20 | guess, had a different view of this, but it was pretty much I       |
| 11:28:25 | 21 | think based on what you've seen in other MDLs of this nature        |
| 11:28:29 | 22 | and how rapidly or quickly cases were filed after the transfer      |
| 11:28:33 | 23 | order, say within the first 30 days, as compared to this case.      |
| 11:28:33 | 24 | Is that --                                                          |
| 11:28:37 | 25 | MR. AGNESHWAR:  Well, that's correct, Your Honor, but               |

11:28:39   1    again, it's totally up to the plaintiffs what they file.

11:28:39   2             THE COURT:  Right.

11:28:41   3             MR. AGNESHWAR:  But typically what you see is, when an

11:28:44   4    MDL application is filed you'll see a lot of cases filed then,

11:28:47   5    and certainly after an MDL is created you start seeing a lot of

11:28:50   6    cases being filed as the leadership structure on the

11:28:55   7    plaintiffs' side is being put in place, as people want a seat

11:28:58   8    at that table.

11:28:59   9             What we're seeing here is just a remarkably few cases

11:29:02  10    that have been filed both since the MDL application was filed

11:29:06  11    and after the MDL was created.

11:29:08  12             Now, I have no reason to dispute what Mr. Wilson is

11:29:10  13    saying, that everyone is waiting for more stuff to happen, and

11:29:13  14    it may well be.  But we can only act based on what we see right

11:29:18  15    now.

11:29:18  16             THE COURT:  Sure.

11:29:18  17             MR. AGNESHWAR:  And at this point it seems like a much

11:29:21  18    smaller MDL than what you typically see in pharmaceutical

11:29:25  19    cases.

11:29:26  20             MR. WILSON:  And if I may just add one thing, Your

11:29:26  21    Honor?

11:29:28  22             THE COURT:  Yes, sir.

11:29:28  23             MR. WILSON:  This case is kind of unique from other

11:29:31  24    cases, in that the FDA just issued a warning.  So people --

11:29:37  25    people behind me included -- are looking at this as just

| | | |
|---|---|---|
| 11:29:41 | 1 | starting off now.  They feel like there's time before they're |
| 11:29:44 | 2 | forced to file, and they think they're in a great position to |
| 11:29:48 | 3 | wait until they can do so with a short form complaint and when |
| 11:29:51 | 4 | things are kind of up and running. |
| 11:29:53 | 5 | The usual rush to file cases to ensure your spot on |
| 11:29:58 | 6 | the leadership, we have been meeting for months about the |
| 11:30:02 | 7 | leadership, and I think everybody pretty much understands what |
| 11:30:07 | 8 | the leadership will look like, with your approval, of course. |
| 11:30:12 | 9 | And we're -- we have like a cohesive group together, and we |
| 11:30:17 | 10 | think we're going to be able to work very well going forward. |
| 11:30:20 | 11 | So there aren't a lot of people coming in saying *I'm* |
| 11:30:22 | 12 | *going to run an ad campaign and file 500 cases so I can get a* |
| 11:30:29 | 13 | *leadership spot.* |
| 11:30:30 | 14 | **THE COURT:**  All right, thank you.  And I appreciate |
| 11:30:32 | 15 | you standing.  I'll allow you to remain seated, if that's |
| 11:30:36 | 16 | easier for you, during this conference.  Some attorneys just |
| 11:30:39 | 17 | can't do that and they want to stand, and that's fine, too. |
| 11:30:46 | 18 | Mr. Wilson, though, I'm sorry, I did not hear any |
| 11:30:52 | 19 | reference to class actions.  Do you have any sense of that? |
| 11:30:57 | 20 | **MR. WILSON:**  We don't see a class action at this time. |
| 11:31:01 | 21 | Sometimes there's third-party payer actions, sometimes there's |
| 11:31:04 | 22 | security derivative actions.  I can't speak for people who |
| 11:31:08 | 23 | might bring them in the future, but we see nothing at this |
| 11:31:10 | 24 | point. |
| 11:31:11 | 25 | **THE COURT:**  Okay.  Thank you for that. |

| | | |
|---|---|---|
| 11:31:12 | 1 | All right.  I'm going to just go through my checklist. |
| 11:31:25 | 2 | It certainly won't track perfectly your agenda, but I think it |
| 11:31:30 | 3 | will cover everything, and then some, that you submitted to me. |
| 11:31:33 | 4 | So all counsel and any *pro se* litigants certainly will |
| 11:31:38 | 5 | be expected to thoroughly familiarize themselves with the |
| 11:31:41 | 6 | Court's orders.  As I hope all of you know, there have been |
| 11:31:45 | 7 | three significant orders entered in the case. |
| 11:31:50 | 8 | October 19th I entered an order establishing case |
| 11:31:55 | 9 | management procedures appointing interim counsel.  That can be |
| 11:31:58 | 10 | found at ECF No. 8.  And then two days later on the 21st I |
| 11:32:04 | 11 | entered an order establishing docketing and filing procedures. |
| 11:32:08 | 12 | That order can be found at ECF No. 12. |
| 11:32:12 | 13 | And then there were some filings that were not |
| 11:32:16 | 14 | compliant with that order from ECF No. 12, and so I entered an |
| 11:32:23 | 15 | additional order on November 3rd just further highlighting my |
| 11:32:32 | 16 | expectations for compliance with the procedural requirements of |
| 11:32:35 | 17 | the case and notifying some that their filings had not been |
| 11:32:39 | 18 | compliant.  And that order can be found at ECF No. 41. |
| 11:32:43 | 19 | So additional housekeeping -- well, probably more |
| 11:32:49 | 20 | meaningful than just housekeeping, but we are going to be -- |
| 11:32:54 | 21 | we're in the process of setting up a website for this MDL that |
| 11:32:57 | 22 | will be available on our court website.  I intend to put on |
| 11:33:05 | 23 | this website the calendar, certainly any orders, briefs that |
| 11:33:10 | 24 | are significant, and any pertinent forms that may need to be |
| 11:33:18 | 25 | easily accessible by others. |

| | |
|---|---|
| 11:33:21 | 1 |
| 11:33:27 | 2 |
| 11:33:32 | 3 |
| 11:33:36 | 4 |
| 11:33:41 | 5 |
| 11:33:43 | 6 |
| 11:33:47 | 7 |
| 11:33:54 | 8 |
| 11:33:56 | 9 |
| 11:34:01 | 10 |
| 11:34:04 | 11 |
| 11:34:08 | 12 |
| 11:34:13 | 13 |
| 11:34:19 | 14 |
| 11:34:22 | 15 |
| 11:34:25 | 16 |
| 11:34:27 | 17 |
| 11:34:33 | 18 |
| 11:34:39 | 19 |
| 11:34:45 | 20 |
| 11:34:49 | 21 |
| 11:34:51 | 22 |
| 11:34:53 | 23 |
| 11:34:57 | 24 |
| 11:35:03 | 25 |

I also would like to include on the website transcripts of these case management conferences.  As you can see, Ms. Boland is here taking down this conference.  I know some judges record these, some don't.  I plan to.  I would like to post the transcript on the website.

I don't know how you all feel about official transcript versus real time transcript.  If there is an official transcript placed on the website, then you all would have to order it, and that way Ms. Boland would be paid for her work in preparing that official transcript.  If you all do not order an official transcript, then I would propose submitting and posting on the website a real time transcript.  Ms. Boland is very good at what she does, and she prepares excellent real time transcripts, but they are not official.  And so if you all want official transcripts, then you'll need to make arrangements through her for that.

Any other suggestions for the website are welcome.  So if you would like to suggest -- this will be our first attempt at creating an MDL website, so we are open to your input.

MR. WILSON:  Your Honor, it's always nice to have a calendar of upcoming events.

THE COURT:  Yes, I intend to do that.  Once we have some dates on that calendar I will be doing that.  And again, just feel free to submit suggestions, if you have them.  I know many of you have been involved, if not all of you, in other

| | |
|---|---|
| 11:35:06 | 1 |
| 11:35:08 | 2 |
| 11:35:11 | 3 |
| 11:35:17 | 4 |
| 11:35:21 | 5 |
| 11:35:25 | 6 |
| 11:35:29 | 7 |
| 11:35:35 | 8 |
| 11:35:39 | 9 |
| 11:35:44 | 10 |
| 11:35:45 | 11 |
| 11:35:48 | 12 |
| 11:35:53 | 13 |
| 11:35:59 | 14 |
| 11:36:04 | 15 |
| 11:36:08 | 16 |
| 11:36:09 | 17 |
| 11:36:13 | 18 |
| 11:36:17 | 19 |
| 11:36:21 | 20 |
| 11:36:24 | 21 |
| 11:36:29 | 22 |
| 11:36:32 | 23 |
| 11:36:35 | 24 |
| 11:36:40 | 25 |

MDLs.

I want to talk just a moment about leadership structure, and then we'll get more into the weeds, I guess. The leadership structure is something that, obviously, I'll be establishing in the near future. And I noted in the plaintiffs' submissions that you all offered to provide a slate of attorneys to fill those positions. But I have decided, in an effort to be more fair and transparent in this process, that I'm going to solicit applications from anyone who wants to submit an application.

So any interested counsel, I will be preparing that application form for you, and I will be sending that out -- I hope to send that out next week. I'm traveling the rest of this week, so it might be a bit ambitious to say the beginning of next week, so it will probably be more towards the end of next week.

That will outline the leadership structure, which I'll talk about in just a moment, duties and obligations, and that will include the application. I'm going to require that those applications be turned around quickly and back to the Court within 14 days.

And I will reduce all of this to a written order after this conference.

I anticipate having an order out filling those leadership positions the first week of December. I've targeted

| | |
|---|---|
| 11:36:47 | 1 |
| 11:36:51 | 2 |
| 11:36:57 | 3 |
| 11:36:59 | 4 |
| 11:37:09 | 5 |
| 11:37:13 | 6 |
| 11:37:16 | 7 |
| 11:37:21 | 8 |
| 11:37:24 | 9 |
| 11:37:28 | 10 |
| 11:37:30 | 11 |
| 11:37:33 | 12 |
| 11:37:39 | 13 |
| 11:37:43 | 14 |
| 11:37:48 | 15 |
| 11:37:51 | 16 |
| 11:37:54 | 17 |
| 11:37:58 | 18 |
| 11:38:00 | 19 |
| 11:38:05 | 20 |
| 11:38:09 | 21 |
| 11:38:15 | 22 |
| 11:38:20 | 23 |
| 11:38:25 | 24 |
| 11:38:31 | 25 |

for myself December 2nd.  I shouldn't tell you all that, but I've targeted that for us here, and that's what I'm going to work towards.

Now, the leadership structure -- well, let me start out by saying I'm going to look to create a diverse leadership structure.  I'm going to be looking for attorneys, obviously, who have the financial, the legal, the technical abilities and resources to oversee and manage the litigation to its conclusion in this court for the benefit of all of the plaintiffs in the MDL.

I'm also going to be looking for diversity in terms of experience, so I'll be looking for superior litigators, excellent oral advocacy skills, strong writing skills.  I'll also be looking for skilled negotiators, attorneys with excellent people skills, people who can work well with the other side.  I don't know if we will have more *pro se* plaintiffs, but I'll be looking for people who can work well with *pro se* plaintiffs.

Also, I will look for unique skill sets that would be of benefit to the litigation, maybe a strong science or medical background or maybe even sort of strong data management skills.

The structure that I envision -- and this stems from what you all submitted to me, both plaintiff and defense, but largely plaintiff -- I do intend to appoint an executive committee, plaintiffs' executive committee.  My intent will be

| | | |
|---|---|---|
| 11:38:36 | 1 | to appoint a very strong leadership team. |
| 11:38:39 | 2 | I do intend at this time -- now, this could change, |
| 11:38:43 | 3 | but at this point I would envision co-lead counsel as well as |
| 11:38:50 | 4 | liaison counsel and then two others on -- if I do co-lead |
| 11:38:55 | 5 | counsel and liaison counsel, that's three, and then I would |
| 11:38:58 | 6 | appoint two more for a total of five on that executive |
| 11:39:00 | 7 | committee. |
| 11:39:01 | 8 | The steering committee, which I'll also be appointing |
| 11:39:03 | 9 | as a supplement to the executive committee, and of course I'll |
| 11:39:06 | 10 | be looking for sort of a core team that can manage the |
| 11:39:10 | 11 | day-to-day litigation process on the ground.  I intend to |
| 11:39:13 | 12 | appoint seven to that committee. |
| 11:39:17 | 13 | On that steering committee I also -- of the seven I |
| 11:39:22 | 14 | intend one of those to be a federal-state liaison counsel.  And |
| 11:39:28 | 15 | I understand there may be some duplication here.  You may have |
| 11:39:31 | 16 | one attorney who holds more than one role, although I'm going |
| 11:39:35 | 17 | to be mindful not to stretch someone too thin. |
| 11:39:42 | 18 | Then on the defendants' side I intend to appoint a |
| 11:39:48 | 19 | defense liaison counsel.  I would prefer that person be local, |
| 11:39:53 | 20 | meaning Pensacola or Tallahassee.  I also intend to appoint a |
| 11:40:02 | 21 | joint discovery committee of six, three from each side.  And |
| 11:40:09 | 22 | when I say "side" I mean all of the defendants as one. |
| 11:40:19 | 23 | And then, now, everyone hold on to their seats, |
| 11:40:23 | 24 | because I'm also going to appoint a joint settlement committee. |
| 11:40:30 | 25 | At this time I would envision only two attorneys on that |

| | |
|---|---|
| 11:40:33 | 1 |
| 11:40:38 | 2 |
| 11:40:47 | 3 |
| 11:40:51 | 4 |
| 11:40:55 | 5 |
| 11:41:01 | 6 |
| 11:41:06 | 7 |
| 11:41:09 | 8 |
| 11:41:15 | 9 |
| 11:41:21 | 10 |
| 11:41:29 | 11 |
| 11:41:31 | 12 |
| 11:41:36 | 13 |
| 11:41:39 | 14 |
| 11:41:43 | 15 |
| 11:41:50 | 16 |
| 11:41:55 | 17 |
| 11:41:58 | 18 |
| 11:42:02 | 19 |
| 11:42:09 | 20 |
| 11:42:09 | 21 |
| 11:42:12 | 22 |
| 11:42:16 | 23 |
| 11:42:17 | 24 |
| 11:42:20 | 25 |

committee, one from each side.  And I'm going to do this from
the outset with a settlement master.

Obviously, there is no obligation to settle this
matter, and this should not be interpreted as arm twisting to
achieve an early settlement in any way.  But engaging in early
settlement negotiations can often be helpful, it can oftentimes
identify problems or sticking points in the litigation that
need to be resolved.  And this is one of those tips that I've
taken from a number of other MDL judges who I respect and have
handled massive and numerous MDLs, and so I'm going to take
their lead and do the same here.

I'm going to ask you all for suggestions as far as a
settlement master, and I'll put this in an order that I enter
after this conference.  I will share with you one name that I
have heard repeated from other judges as well respected
certainly by the judiciary, but it's presented to me as someone
respected on both sides of the table, but I certainly can't
speak for you all and your opinions of this person.  Her name
is Ellen Reisman, and she's at Reisman, Karron & Greene LLP in
D.C.

MR. AGNESHWAR:  Your Honor, Ms. Reisman used to be a
partner in my firm, Arnold & Porter, so I don't think she would
be --

THE COURT:  Well, she's out then.  Well, then, all the
better that I'm going to ask you all to submit your own

11:42:23  1   suggestions.  Hopefully we'll find someone as competent as she

11:42:30  2   appears to be.

11:42:36  3           All right.  I've mentioned to you I expect to get the

11:42:41  4   order out next week establishing the structure, 14 days

11:42:44  5   thereafter for your applications, the first week of December

11:42:48  6   for the order actually making the appointments.

11:42:52  7           Now, depending on the number of applications I

11:42:55  8   receive, and based on what Mr. Wilson is suggesting there may

11:42:58  9   not be that many, I may or may not hold a hearing.  I would

11:43:02  10  think not.  But I know other judges do, and if I think it's

11:43:07  11  helpful I will.  But at this point I'm not thinking it will be

11:43:10  12  necessary.

11:43:12  13          Questions that in my mind raised as a result of your

11:43:19  14  briefing.  This master complaint and short form complaints,

11:43:26  15  pleading with agreed-upon modules, all of this is sort of new

11:43:30  16  to me.

11:43:30  17          So can I ask someone from plaintiffs' side if you

11:43:34  18  would sort of walk me through how this would look in practice.

11:43:40  19          MR. WILSON:  Yes.  The way it usually works is there

11:43:44  20  will be one complaint filed in the court, and it will be called

11:43:47  21  a master complaint.  And it will be very comprehensive listing

11:43:52  22  all the facts, listing everything you would put in a normal

11:43:56  23  complaint, listing causes of action that maybe span different

11:44:04  24  state law regimens.

11:44:06  25          And then the short form complaint that follows upon

| | | |
|---|---|---|
| 11:44:09 | 1 | that allows a person to give the name of a plaintiff, and |
| 11:44:14 | 2 | usually there will be some boxes to check as to which of the |
| 11:44:17 | 3 | allegations in the master complaint are being asserted on |
| 11:44:21 | 4 | behalf of a particular plaintiff. |
| 11:44:23 | 5 | THE COURT:  So it's not either/or?  I wasn't sure when |
| 11:44:26 | 6 | I read your submissions.  It sound almost -- I misunderstood, |
| 11:44:30 | 7 | and I thought it was a master complaint or a short form |
| 11:44:32 | 8 | complaint.  And that didn't make sense to me. |
| 11:44:35 | 9 | MR. WILSON:  No.  There's usually one on behalf of all |
| 11:44:38 | 10 | plaintiffs, it's called the master.  It's gigantic.  It's |
| 11:44:41 | 11 | everything you would put in a complaint.  And then, rather than |
| 11:44:44 | 12 | having everyone file that, people are allowed to file a shorter |
| 11:44:48 | 13 | form where they check off what causes of action are asserted. |
| 11:44:52 | 14 | And some of the factual allegations of the master complaint are |
| 11:44:56 | 15 | deemed to be part of the short form complaint. |
| 11:44:58 | 16 | THE COURT:  And then how are they responded to? |
| 11:45:02 | 17 | MR. WILSON:  They're responded to usually with a |
| 11:45:05 | 18 | master answer, and then we will work together with the |
| 11:45:10 | 19 | defendants to make a shorter answer to respond to the short |
| 11:45:14 | 20 | forms. |
| 11:45:15 | 21 | THE COURT:  Are you all on the defense side accustomed |
| 11:45:18 | 22 | to working with master complaints and short form complaints? |
| 11:45:23 | 23 | MR. AGNESHWAR:  We are in MDLs, definitely, Your |
| 11:45:26 | 24 | Honor.  Now, there's a negotiation process that gets us to that |
| 11:45:28 | 25 | point, because there's some causes of action that we see in the |

| | | |
|---|---|---|
| 11:45:32 | 1 | complaints that are being filed that we don't think are viable |
| 11:45:35 | 2 | causes of action.  And we've been talking about sitting down |
| 11:45:38 | 3 | and seeing if we could work those out.  It may come to a point |
| 11:45:41 | 4 | where we agree with a master complaint in theory, but there |
| 11:45:44 | 5 | might be one or two parts of it that we don't think are viable, |
| 11:45:49 | 6 | and we would file a motion as to those parts. |
| 11:45:52 | 7 | I definitely believe a master complaint is appropriate |
| 11:45:55 | 8 | here, as well as a master answer.  And in return for that, we |
| 11:45:58 | 9 | would just ask the Court to stay our responses to all the |
| 11:46:02 | 10 | pending complaints now to give us time to work out the master |
| 11:46:05 | 11 | complaint, the short form complaint, and the master answer. |
| 11:46:09 | 12 | **THE COURT:**  I don't have a problem continuing the stay |
| 11:46:15 | 13 | for now, but I do want to talk to you about deadlines for |
| 11:46:20 | 14 | getting this done.  So I'll be getting to that in just a |
| 11:46:27 | 15 | minute.  Thank you. |
| 11:46:29 | 16 | **MR. AGNESHWAR:**  Thank you, Your Honor. |
| 11:46:30 | 17 | **THE COURT:**  Now, also raised by your -- either the |
| 11:46:37 | 18 | agenda or the briefs, is this issue of the service of process, |
| 11:46:39 | 19 | and it seems you've been working well with that.  And OAPI and |
| 11:46:46 | 20 | BMS have agreed, correct, to accept service of process? |
| 11:46:54 | 21 | **MR. CAMPBELL:**  That's correct, Your Honor. |
| 11:46:55 | 22 | **THE COURT:**  And then we have OPC who has agreed in |
| 11:47:01 | 23 | Maryland? |
| 11:47:01 | 24 | **MR. CONNELLY:**  That's right, Your Honor, OPC won't |
| 11:47:01 | 25 | contest service if it's conveyed upon the agent pursuant to the |

11:47:03  1    process in Maryland.  But that's correct, the position is

11:47:09  2    that's correct.

11:47:09  3              THE COURT:  Thank you.  There was discussion or an

11:47:12  4    issue raised as to the tolling agreement.  I guess you all are

11:47:15  5    still working on that as well; is that right?

11:47:17  6              MR. AYLSTOCK:  Your Honor, we've had some preliminary

11:47:20  7    discussions with Mr. Agneshwar and haven't come to a

11:47:24  8    conclusion.  Obviously, they're the ones that have to agree to

11:47:27  9    it, but we're in continued discussions on that.

11:47:30  10             THE COURT:  So that will need a deadline, too, okay.

11:47:38  11   Then there's a protective order in the New Jersey litigation.

11:47:41  12             And I know, Mr. Aylstock, you all are wanting to have

11:47:49  13   some time to discuss this with other counsel on plaintiffs'

11:47:54  14   side?

11:47:55  15             MR. AYLSTOCK:  Yes, Your Honor.  We don't see any

11:47:57  16   major problems with the protective order.  It's a little

11:48:00  17   different and has some things that we might want to try to

11:48:04  18   improve on with negotiation.  But since we weren't involved in

11:48:07  19   that at all and a lot of counsel here weren't, I think we

11:48:11  20   wanted to give everybody an opportunity to weigh in.

11:48:13  21             And the same with the ESI order, Your Honor.  That

11:48:16  22   order, just so the Court understands, it's really just a format

11:48:20  23   of production order for single page text.  It doesn't cover a

11:48:24  24   lot of the things by its terms.  We all -- or the New Jersey

11:48:26  25   counsel agreed to kind of kick that down the road for really

| | |
|---|---|
| 11:48:29 | 1 |
| 11:48:34 | 2 |
| 11:48:38 | 3 |
| 11:48:41 | 4 |
| 11:48:42 | 5 |
| 11:48:47 | 6 |
| 11:48:52 | 7 |
| 11:48:55 | 8 |
| 11:49:01 | 9 |
| 11:49:03 | 10 |
| 11:49:04 | 11 |
| 11:49:07 | 12 |
| 11:49:11 | 13 |
| 11:49:17 | 14 |
| 11:49:19 | 15 |
| 11:49:23 | 16 |
| 11:49:30 | 17 |
| 11:49:33 | 18 |
| 11:49:37 | 19 |
| 11:49:40 | 20 |
| 11:49:41 | 21 |
| 11:49:43 | 22 |
| 11:49:45 | 23 |
| 11:49:49 | 24 |
| 11:49:54 | 25 |

this Court to handle.  And we have some folks on our side that are experts in that -- I'm not -- but we would like the opportunity for them to weigh in on that as well, as we continue our discussions.

**THE COURT:**  All right.  And I noted that the parties agree there's no preservation order needed at this time.

**MR. WILSON:**  Your Honor, we believe that the defendants are preserving everything.

**THE COURT:**  Okay.  I made note of that, and I appreciate that.

Now, I also noted the plaintiffs stated intent to retain a document management firm, and I want to discuss that. I think that's an excellent idea.  I want to discuss that in just a moment in connection with another topic.

But before I do that, let me turn to the personal jurisdiction issue with OPC.  My understanding from Judge DeLuca and in reading his orders as well and is you all are engaged in jurisdictional discovery now.  You have a deadline of January 21st, I believe, to complete that jurisdictional discovery.

**MR. CONNELLY:**  That's correct, Your Honor.

**THE COURT:**  He did not give you a deadline for renewing your motion to dismiss.  I'm going to give you a deadline here of January 23rd, because really it's the plaintiffs who need that discovery.

| | | |
|---|---|---|
| 11:49:56 | 1 | And so you all have filed a motion to dismiss in at |
| 11:50:01 | 2 | least a couple of other federal jurisdictions, one of which is |
| 11:50:06 | 3 | the subject of an R&R right now out of -- I believe it was |
| 11:50:10 | 4 | Indiana.  So I don't think that's going to be too burdensome on |
| 11:50:14 | 5 | you all to be prepared to file that motion here. |
| 11:50:16 | 6 | My question is -- I'm presuming no more discovery is |
| 11:50:23 | 7 | going to be needed on this issue beyond what's being conducted |
| 11:50:27 | 8 | in New Jersey, because I also understand you're doing some core |
| 11:50:32 | 9 | discovery there, and the same deadline is due for that core |
| 11:50:35 | 10 | discovery of the 21st, and by that point you will have |
| 11:50:38 | 11 | exchanged, I believe, about a million-and-a-half pages of |
| 11:50:43 | 12 | material.  Is that's right? |
| 11:50:46 | 13 | MR. CONNELLY:  Yeah, let me, if I can, Your Honor, |
| 11:50:48 | 14 | first as a concept, OPC is perfectly willing to make what we |
| 11:50:52 | 15 | would see an omnibus motion to dismiss for lack of personal |
| 11:50:56 | 16 | jurisdiction by January 23rd.  That's fine to us. |
| 11:51:00 | 17 | THE COURT:  You're Mr. Campbell, right? |
| 11:51:02 | 18 | MR. CONNELLY:  I'm Connolly, this is Campbell.  I'm |
| 11:51:06 | 19 | sorry, we switched up. |
| 11:51:06 | 20 | THE COURT:  Oh, okay.  You're in contempt.  No, I'm |
| 11:51:12 | 21 | kidding.  Okay, so you're Mr. Connolly, Luke Connolly? |
| 11:51:16 | 22 | MR. CONNELLY:  Connelly, that's right, from Winston as |
| 11:51:19 | 23 | well.  We're both for the Otsuka defendant. |
| 11:51:19 | 24 | We are conducting jurisdictional discovery, that is |
| 11:51:22 | 25 | correct, and we've been doing so for a bit.  There's some |

| | | |
|---|---|---|
| 11:51:24 | 1 | issues about jurisdictional discovery that we're meeting and |
| 11:51:26 | 2 | conferring about in New Jersey.  And then part of that is we |
| 11:51:29 | 3 | will produce -- we've agreed in New Jersey to produce a |
| 11:51:33 | 4 | corporate representative, a 30(b)(6) style witness for |
| 11:51:37 | 5 | testimony. |
| 11:51:38 | 6 | And, yeah, ideally what we would do is we'd coordinate |
| 11:51:41 | 7 | all of that with the MDL so that we're doing jurisdictional |
| 11:51:44 | 8 | discovery once and for all and then making a motion.  That's |
| 11:51:47 | 9 | right, Your Honor. |
| 11:51:49 | 10 | Plaintiffs may have something to say about that, and |
| 11:51:50 | 11 | we've talked about it, but that is our position, that we should |
| 11:51:53 | 12 | be complete with jurisdictional discovery, we'll make the |
| 11:51:56 | 13 | motion, and then the Court rules on it, and we'll go from |
| 11:51:59 | 14 | there. |
| 11:51:59 | 15 | **THE COURT:**  Mr. Wilson, I'll say that was my |
| 11:52:01 | 16 | understanding when I spoke to Judge DeLuca, because he actually |
| 11:52:04 | 17 | called me ahead of time before he entered that order and asked |
| 11:52:07 | 18 | if this would be agreeable, not that he had to do that, but he |
| 11:52:11 | 19 | did as a courtesy, and asked if that would be acceptable to me, |
| 11:52:15 | 20 | and I felt like it was acceptable. |
| 11:52:18 | 21 | **MR. WILSON:**  Yes, Your Honor.  The one sticking point |
| 11:52:19 | 22 | is the jurisdictional inquiry, of course, is going to deal with |
| 11:52:23 | 23 | contacts of OPC with particular states.  If there's, say, a |
| 11:52:32 | 24 | Kentucky resident before you, there's going to be a need for |
| 11:52:37 | 25 | discovery about the contact between OPC and Kentucky. |

| | |
|---|---|
| 11:52:40 | 1 |

**THE COURT:**  So in all of those documents you're
getting they're only limited to New Jersey?

2 **MR. WILSON:**  That is my understanding.

**MR. CONNELLY:**  It's a little more completed than that.
But to resolve it, we can meet and confer and we can make sure
we've covered all of the states at issue.

We had -- and not to get too deep in the weeds, but we
had started jurisdictional discovery for cases in California,
and at the same time we were talking about Maryland and the
Southern District of Indiana and a bunch of other states.  And
then when the stays were issued in those courts, then we
focused on New Jersey.

So there's been a focus on particular states, but we
can meet and confer and ensure that we're addressing all of the
states where there are cases at issue.

**MR. WILSON:**  Yes, what we're seeing, Your Honor, is
sometimes there's, you know, the payments to doctors, the
promotion by OPC is different in different states.  The
clinical testing sometimes is done in a particular state, not a
different state.  So there is going to be some follow-up need
to expand the New Jersey discovery to other states.

**THE COURT:**  Well, Mr. Connolly is saying they're
willing to do that.  I'm going to ask that you start -- if
you're not already doing it, that you start it immediately.
And I will be willing and happy and plan to actually -- I was

| | | |
|---|---|---|
| 11:53:54 | 1 | going to do it a little bit later but I can do it now -- set a |
| 11:53:58 | 2 | discovery conference with you all every couple of weeks, to the |
| 11:54:03 | 3 | extent you run in -- and it may be that we don't need to hold a |
| 11:54:07 | 4 | conference, and you can let me know that and we'll just cancel |
| 11:54:11 | 5 | it.  But if we have it on the books where we can get together |
| 11:54:15 | 6 | every couple of weeks, by telephone is fine.  If you have any |
| 11:54:18 | 7 | sticking points, anything that you need help with from the |
| 11:54:21 | 8 | Court, I'd rather be proactive than reactive. |
| 11:54:25 | 9 | MR. WILSON:  The plaintiffs think that is a great |
| 11:54:27 | 10 | idea. |
| 11:54:28 | 11 | MR. CONNELLY:  And that's fine, Your Honor.  Maybe the |
| 11:54:31 | 12 | place to start is for us to have that conversation and see what |
| 11:54:33 | 13 | they think they need, you know, state by state.  Certainly we |
| 11:54:35 | 14 | can produce the same sort of information we've produced so far |
| 11:54:39 | 15 | for those states that I've mentioned for all of the states at |
| 11:54:41 | 16 | issue, and then that should not be a problem. |
| 11:55:00 | 17 | THE COURT:  Okay, thank you.  I just mentioned the |
| 11:55:01 | 18 | omnibus, it sounds like, motion by January 23rd.  And again, |
| 11:55:04 | 19 | these dates will be reduced to writing in an order following |
| 11:55:04 | 20 | this conference.  But just for those who are taking notes: |
| 11:55:06 | 21 | Plaintiffs' response to the motion, February 6th. |
| 11:55:11 | 22 | Defendant's reply, February 13th. |
| 11:55:17 | 23 | Hearing, to the extent we need an evidentiary hearing, |
| 11:55:20 | 24 | or if not, oral argument, February 22nd.  And that's also -- |
| 11:55:25 | 25 | jumping a little bit ahead, that's also going to be a case |

| | | |
|---|---|---|
| 11:55:29 | 1 | management conference date as well. |
| 11:55:38 | 2 | Any discussion -- this is one of the other takeaways |
| 11:55:43 | 3 | from the MDL conference:  Any discussion of discovery in an MDL |
| 11:55:49 | 4 | should include a discussion on the bellwether trial process. |
| 11:55:55 | 5 | And following my conversations with a number of |
| 11:56:07 | 6 | different judges who have handled MDLs and in addition to a lot |
| 11:56:11 | 7 | of reading that I've done, I don't think you can overstate the |
| 11:56:14 | 8 | benefit to the MDL litigation a whole of both sides sort of |
| 11:56:21 | 9 | having the opportunity to take a class of representative cases |
| 11:56:25 | 10 | through discovery and through motion practice, to be able to |
| 11:56:29 | 11 | evaluate the strengths of each side's arguments, the evidence |
| 11:56:33 | 12 | that each side has, and also to be able to evaluate the risks |
| 11:56:38 | 13 | and the costs of the litigation itself, regardless of whether |
| 11:56:42 | 14 | the vast majority of the cases are ultimately remanded to the |
| 11:56:48 | 15 | transferor courts or ultimately a global settlement is reached |
| 11:56:52 | 16 | in the MDL. |
| 11:56:53 | 17 | As I understand it, there's also a benefit to local |
| 11:56:56 | 18 | counsel in having a bellwether process because then local |
| 11:57:03 | 19 | counsel has what's been referred to by some of my colleagues as |
| 11:57:09 | 20 | a nice neat trial package that's been created through the MDL |
| 11:57:13 | 21 | bellwether process in which the massive amounts of data and |
| 11:57:18 | 22 | information that have been produced here during the MDL have |
| 11:57:21 | 23 | been organized -- and this gets back to your electronic storage |
| 11:57:25 | 24 | of information -- but have been organized and streamlined for |
| 11:57:29 | 25 | that subsequent use later in those cases that are remanded for |

11:57:35  1   trial.

11:57:35  2        So in my view, the key to useful bellwether trials is

11:57:44  3   to have a true representative sample of cases, including

11:57:50  4   representative of the various causes of action that exist in

11:57:56  5   the MDL and the state law that governs those claims.

11:58:01  6        Now, obviously, any discussion of the bellwether trial

11:58:09  7   process leads to a discussion of *Lexecon* waivers.  And

11:58:13  8   obviously, any waiver of venue must be voluntary.  But I think

11:58:21  9   the value of engaging in this process really can't be

11:58:25  10  overstated, even if you don't ultimately receive or execute the

11:58:29  11  waivers.

11:58:30  12       So even if the waivers are not executed in this

11:58:35  13  action, my vision for the early part of this MDL will include a

11:58:41  14  bellwether process for discovery as well as motion practice.

11:58:48  15  Some of you -- I won't ask for a show of hands, but some of you

11:58:52  16  may be familiar with discovery pools.

11:58:55  17       And it makes the most sense to me for all of us, the

11:59:01  18  Court as well as all parties, to take a census of the entire

11:59:06  19  MDL litigation.  Right now it's probably not that difficult to

11:59:10  20  do.  If Mr. Wilson's predictions turn out to be true in terms

11:59:15  21  of the number of actions or cases filed, then it will be a much

11:59:20  22  more herculean task to undertake, but that's why you have data

11:59:28  23  analytic firms who are sort of experts, expert professionals in

11:59:33  24  gathering that type of information, streamlining it, and then

11:59:37  25  also reporting on it statistically.

| | | |
|---|---|---|
| 11:59:40 | 1 | So these firms -- my understanding is these firms can |
| 11:59:44 | 2 | take the plaintiffs' fact sheets, they can create sort of an |
| 11:59:51 | 3 | online portal for fact sheets, for the creation, collection, |
| 12:00:00 | 4 | exchange of fact sheets.  They can also, most importantly, |
| 12:00:08 | 5 | create reports from the fact sheets that will give the Court |
| 12:00:12 | 6 | and the parties real-time demographic information about the |
| 12:00:18 | 7 | plaintiffs and the litigation.  And from that, discovery pools |
| 12:00:24 | 8 | that are representative of the entire MDL action can be |
| 12:00:29 | 9 | created. |
| 12:00:29 | 10 | So just reviewing the materials that you all have |
| 12:00:32 | 11 | already submitted, some variables have come to mind to us, and |
| 12:00:41 | 12 | those would be variables such as gender, age, previous history |
| 12:00:46 | 13 | of compulsive behavior, also dechallenge and rechallenge |
| 12:00:52 | 14 | results. |
| 12:00:55 | 15 | That's what I envision this type of a process, at |
| 12:01:06 | 16 | least initially, for discovery and motion practice.  And of |
| 12:01:10 | 17 | course, the discovery and the motion practice will be |
| 12:01:14 | 18 | case-specific, is what I'm talking about, but it will be |
| 12:01:18 | 19 | case-specific to those representative cases. |
| 12:01:20 | 20 | Now, there are likely to be a number of data, sort of, |
| 12:01:27 | 21 | analytic firms out there who could handle this type of a |
| 12:01:32 | 22 | project.  One such firm that I've been -- "referred to" is not |
| 12:01:41 | 23 | the right word, but has been discussed with me -- is |
| 12:01:45 | 24 | BrownGreer.  And they have a software program called MDL |
| 12:01:50 | 25 | Centrality. |

| | | |
|---|---|---|
| 12:01:55 | 1 | And BrownGreer is probably well known to you all, but |
| 12:01:59 | 2 | this MDL Centrality is a multi-facetted -- at least my |
| 12:02:04 | 3 | understanding is it's a multi-facetted litigation management |
| 12:02:04 | 4 | tool.  It serves a number of different functions that are |
| 12:02:08 | 5 | beneficial, not just to the plaintiffs, but to the defense as |
| 12:02:15 | 6 | well, and certainly to the Court in any MDL case. |
| 12:02:17 | 7 | They, as I said -- I mentioned fact sheet exchange. |
| 12:02:20 | 8 | There's also online fact sheet completion exchange, case |
| 12:02:25 | 9 | tracking, document repository, a pleadings database, exchange |
| 12:02:30 | 10 | of electronic discoveries, search capabilities, and again, |
| 12:02:35 | 11 | importantly, the creation of statistical reports from the fact |
| 12:02:37 | 12 | sheets and the discovery documents that will give the Court and |
| 12:02:40 | 13 | the parties the information it needs to identify the |
| 12:02:43 | 14 | representative group of cases. |
| 12:02:45 | 15 | So this discovery committee that I have just -- hold |
| 12:02:45 | 16 | on just a minute, I'll hear from you in just a minute -- |
| 12:02:56 | 17 | discovery committee that I have indicated to you all that I'll |
| 12:02:58 | 18 | be appointing, I would expect that discovery committee to draw |
| 12:03:03 | 19 | up a trial selection blueprint.  And I refer to it as -- I use |
| 12:03:08 | 20 | the word "trial" because that's -- you hear "bellwether trial." |
| 12:03:12 | 21 | But at the end of the day, if these cases don't get tried -- I |
| 12:03:16 | 22 | hope they will -- I know I can try four of them.  But if they |
| 12:03:20 | 23 | don't get tried, there's still a benefit, in my opinion, to the |
| 12:03:23 | 24 | discovery proceeding in this fashion and the case-specific |
| 12:03:28 | 25 | motions proceeding in this fashion. |

| | |
|---|---|
| 12:03:32 | 1 |
| 12:03:38 | 2 |
| 12:03:43 | 3 |
| 12:03:46 | 4 |
| 12:03:51 | 5 |
| 12:03:56 | 6 |
| 12:03:58 | 7 |
| 12:04:01 | 8 |
| 12:04:04 | 9 |
| 12:04:09 | 10 |
| 12:04:13 | 11 |
| 12:04:14 | 12 |
| 12:04:18 | 13 |
| 12:04:24 | 14 |
| 12:04:27 | 15 |
| 12:04:31 | 16 |
| 12:04:37 | 17 |
| 12:04:43 | 18 |
| 12:04:46 | 19 |
| 12:04:50 | 20 |
| 12:04:56 | 21 |
| 12:05:02 | 22 |
| 12:05:06 | 23 |
| 12:05:10 | 24 |
| 12:05:15 | 25 |

But the committee would itself catalog and would work with the data analytic firm to catalog the entire universe of cases that comprise the MDL.  They would divide those cases, with the assistance of the consultant, into several distinct, easily ascertainable categories of cases based upon that census and the identification of those major variables.

And then the Court and counsel would select a manageable pool of cases, which would reflect or be reflective of those various categories or major variables, and these cases would be put on a fast track for case-specific discovery and motion practice.

And then near the conclusion of the case-specific discovery, to the extent cases weren't disposed of in the motion practice, then the Court and counsel would select a predetermined number of those cases within that sample set and set them for trial, as well as *Daubert* -- we would already probably have had the *Daubert* and dispositive motions certainly prior to trial, but as part of that process.  Now, depending on the number of cases existing in the MDL at the time, we may have different tracks running with the discovery pools.

I did want to also mention that during discovery, and including this jurisdictional discovery that is proceeding now and will also be proceeding for purposes of this MDL, I am going to schedule -- just set conferences with the Court every other week.  We'll pick a date and a time that works, and I'll

| 12:05:19 | 1 | be available.  If I'm traveling, I'll be available.  If I'm |
| 12:05:22 | 2 | here in trial, I'll take a break and we'll have the conference |
| 12:05:27 | 3 | if we need to.  You'll submit to me a couple of days in advance |
| 12:05:30 | 4 | any issues that you need help with. |
| 12:05:32 | 5 | Now, that doesn't mean I'm not available.  If you're |
| 12:05:36 | 6 | in the middle of a discovery deposition and an issue comes up |
| 12:05:42 | 7 | and you need some attention, I can be available.  If I'm not, |
| 12:05:45 | 8 | then Judge Jones can be available to you.  If I'm in the middle |
| 12:05:49 | 9 | of selecting a jury, I won't be available to you during your |
| 12:05:52 | 10 | deposition, but Judge Jones will be. |
| 12:05:53 | 11 | Mr. Agneshwar, you're looking restless over there. |
| 12:06:01 | 12 | **MR. AGNESHWAR:**  I'm a New Yorker, that's my style. |
| 12:06:05 | 13 | Just at this point in the litigation I have a little |
| 12:06:09 | 14 | bit of a concern about committing, you know, absolutely to a |
| 12:06:10 | 15 | bellwether system, precisely because we have only 45 cases, and |
| 12:06:14 | 16 | those 45 cases, if Mr. Wilson is correct, seem to be |
| 12:06:19 | 17 | self-selected by a handful of plaintiffs lawyers from a much |
| 12:06:24 | 18 | larger inventory that they have.  I mean, if that's -- I think |
| 12:06:26 | 19 | that's accurate. |
| 12:06:26 | 20 | So if what I'm hearing is correct, that there are |
| 12:06:29 | 21 | hundreds maybe of other cases that are held by these same |
| 12:06:32 | 22 | plaintiffs lawyers that haven't been filed, and so we have a |
| 12:06:35 | 23 | pool of 45 plaintiffs right now, if we think that that's the |
| 12:06:39 | 24 | total pool and start picking the subset of those as bellwethers |
| 12:06:43 | 25 | as representatives of the litigation as a whole, I think we're |

| | | |
|---|---|---|
| 12:06:45 | 1 | going to be skewed.  Because those cases -- those handful of |
| 12:06:49 | 2 | cases that have already been filed are in fact self-selected by |
| 12:06:53 | 3 | the plaintiffs and most probably their strongest cases. |
| 12:06:56 | 4 | So that's my concern with doing a bellwether system |
| 12:06:59 | 5 | right now.  Of course, if we get to the point where hundreds of |
| 12:07:01 | 6 | cases are being filed, I think it makes a lot more sense to |
| 12:07:04 | 7 | think about discovery pools and bellwethers.  But I'm just -- |
| 12:07:09 | 8 | I'm not -- I'm happy to discuss this in the context of |
| 12:07:12 | 9 | discovery, but I'm not sure that that would be really fair to |
| 12:07:17 | 10 | the defendants at this point to go down a bellwether system. |
| 12:07:20 | 11 | I also think that -- typically when you look at MDLs |
| 12:07:25 | 12 | that have hundreds or thousands of cases and you start doing |
| 12:07:27 | 13 | discovery pools, the discovery pools tend to be, you know, 40 |
| 12:07:31 | 14 | to 50 cases, along the lines of what we actually have right |
| 12:07:33 | 15 | now. |
| 12:07:33 | 16 | THE COURT:  Right. |
| 12:07:34 | 17 | MR. AGNESHWAR:  So I don't really see an issue, if the |
| 12:07:37 | 18 | litigation stays as it is right now, with working up all the |
| 12:07:39 | 19 | cases. |
| 12:07:40 | 20 | THE COURT:  I'm assuming it's not going to stay as it |
| 12:07:42 | 21 | is right now.  I mean, that's based on what Mr. Wilson has |
| 12:07:45 | 22 | represented to me.  But if it doesn't, we can -- if you want to |
| 12:07:49 | 23 | address sequencing of discovery -- you mentioned that in your |
| 12:07:53 | 24 | briefs -- I'll hear from you on that. |
| 12:07:55 | 25 | But let me finish my checklist, and then I'll |

| | | |
|---|---|---|
| 12:07:58 | 1 | certainly give both sides an opportunity to address the Court |
| 12:08:00 | 2 | with other issues. |
| 12:08:02 | 3 | MR. AGNESHWAR:  Okay.  One other thing I wanted to |
| 12:08:05 | 4 | point out is Mr. Aylstock knows -- and I feel like I'm the wet |
| 12:08:10 | 5 | blanket on some of those, quote, "suggestions," but the |
| 12:08:10 | 6 | BrownGreer firm is co-counsel with Arnold & Porter with another |
| 12:08:16 | 7 | fairly large litigation that is winding down but it's still |
| 12:08:18 | 8 | active.  So I'm not sure if that would disqualify them, but I |
| 12:08:20 | 9 | just wanted to disclose that to the Court. |
| 12:08:20 | 10 | THE COURT:  Well, you all have worked so cooperatively |
| 12:08:23 | 11 | thus far that maybe -- |
| 12:08:25 | 12 | MR. AYLSTOCK:  Your Honor, we're very familiar with |
| 12:08:28 | 13 | BrownGreer, and as you know, I'm sure, they're handling the |
| 12:08:33 | 14 | Xarelto litigation and doing it very well. |
| 12:08:34 | 15 | THE COURT:  That's how I heard about them. |
| 12:08:36 | 16 | MR. AYLSTOCK:  And they also were co-counsel with |
| 12:08:40 | 17 | Mr. Agneshwar's firm in the Fen-Phen litigation way back when |
| 12:08:43 | 18 | and we have a good relationship with them, but we can talk |
| 12:08:46 | 19 | about that. |
| 12:08:47 | 20 | I agree with Your Honor that a bellwether process |
| 12:08:51 | 21 | makes sense, and I also agree fast-track makes sense.  In order |
| 12:08:55 | 22 | to do proper bellwether discovery, though, I think it's |
| 12:09:00 | 23 | important for the Court to know that we would also need to |
| 12:09:03 | 24 | fast-track some general discovery, because so much of the |
| 12:09:06 | 25 | case-specific discovery is fed off the general discovery. |

| | |
|---|---|
| 12:09:08 | 1 |
| 12:09:12 | 2 |
| 12:09:15 | 3 |
| 12:09:19 | 4 |
| 12:09:19 | 5 |
| 12:09:28 | 6 |
| 12:09:35 | 7 |
| 12:09:40 | 8 |
| 12:09:45 | 9 |
| 12:09:48 | 10 |
| 12:09:51 | 11 |
| 12:10:00 | 12 |
| 12:10:04 | 13 |
| 12:10:08 | 14 |
| 12:10:11 | 15 |
| 12:10:13 | 16 |
| 12:10:13 | 17 |
| 12:10:17 | 18 |
| 12:10:20 | 19 |
| 12:10:22 | 20 |
| 12:10:26 | 21 |
| 12:10:28 | 22 |
| 12:10:28 | 23 |
| 12:10:31 | 24 |
| 12:10:34 | 25 |

Particularly, on a failure to warn claim we need to know what they knew, when they knew it, and the science and so forth.

THE COURT:  Right, I'm going to get to that in just a minute.  Thank you.

So Mr. Aylstock mentioned science, so we are going to have science day.  Both sides seemed amenable to that, and the Court would like to hold a science tutorial.  The date that I've identified for that is January 30th.

MR. AGNESHWAR:  I'm sorry, Your Honor, January 30th?

THE COURT:  January 30th.  Let me make sure about that.  Yes, January 30th.

I will enter an order as to what I contemplate for science day, but right now I'm thinking both sides maybe two experts.  If you think you need more --

MR. AYLSTOCK:  Your Honor, we've discussed this with Mr. Agneshwar.

THE COURT:  Oh, all right.

MR. AYLSTOCK:  And our thinking, at least before your comment, was that we wouldn't need an expert, we could simply do it in the way it's been done in some other litigations that I've been involved with, it was actually off the record so we can --

THE COURT:  Well, it would be off the record, definitely would be off the record.  There would not be a cross-examination.  And when I say off the record, let me

| 12:10:38 | 1 | qualify that.  I will have Ms. Boland here, so it will be on |
| 12:10:44 | 2 | the record, but there will not be an official transcript.  But |
| 12:10:49 | 3 | to the extent I need to refer back to the transcript, I will |
| 12:10:52 | 4 | have it as real time if she's in here.  You all will not have |
| 12:10:57 | 5 | that transcript, though, because you will not be able to -- |
| 12:11:00 | 6 | obviously -- be able to use anything against the other side at |
| 12:11:02 | 7 | any later point in time, but this would be just for my benefit. |
| 12:11:06 | 8 | MR. AYLSTOCK:  We were thinking, however, Your Honor, |
| 12:11:08 | 9 | that experts wouldn't be necessary for the basic science |
| 12:11:12 | 10 | tutorial, and with the Court's indulgence, maybe pushing it off |
| 12:11:15 | 11 | a little bit because so much of the information is part of this |
| 12:11:18 | 12 | discovery that we have yet to receive from the defendants. |
| 12:11:22 | 13 | So it made sense to us anyway that if we pushed it off |
| 12:11:25 | 14 | a little bit further when we can digest some of the science, it |
| 12:11:30 | 15 | might make for a more fair presentation. |
| 12:11:33 | 16 | THE COURT:  Well, I don't want to put it off too far. |
| 12:11:36 | 17 | And my next comment is going to tie into this.  I am going to |
| 12:11:41 | 18 | give the defendants -- so I've talked about the bellwether |
| 12:11:46 | 19 | trial process.  Now I'm going to give the defendants the |
| 12:11:49 | 20 | ability to test general causation early in the case, so we're |
| 12:11:54 | 21 | going to need to establish a process for that. |
| 12:11:58 | 22 | MR. WILSON:  Your Honor, if I could -- again, I thank |
| 12:12:04 | 23 | your indulgence -- but it would not be fair to hold a science |
| 12:12:09 | 24 | day before we get some knowledge of the science that they know |
| 12:12:12 | 25 | about and we don't know about yet.  It's just going to slip |

12:12:15   1   into an advocacy situation.

12:12:18   2           THE COURT:  Well, I wouldn't let it slip into an

12:12:21   3   advocate situation.

12:12:23   4           MR. WILSON:  But right now sort of the balance of

12:12:26   5   information so favors them because they have the clinical trial

12:12:32   6   data and they haven't produced it to us, they have the adverse

12:12:35   7   event data and they haven't produced it to us.

12:12:38   8           THE COURT:  Well, they may be required to produce it

12:12:41   9   to you, and maybe I do need to push the date out a little bit,

12:12:44   10  but this is not going to be an adversarial setting for science

12:12:48   11  day.  But, now, when we start talking about challenges to

12:12:50   12  general causation, obviously, that's adversarial, and you'll

12:12:55   13  have expert discovery on that and present your challenges and

12:12:59   14  summary judgment.

12:12:59   15          MR. WILSON:  Kind of the way it works, though, is --

12:13:02   16          THE COURT:  Well, kind of the way it works --

12:13:06   17          MR. WILSON:  I'm sorry.  I would like -- I really

12:13:07   18  think it's important that we get to see some of the science

12:13:10   19  that they alone see now before we can present a balanced

12:13:14   20  picture for the Court.

12:13:15   21          THE COURT:  Okay.  So, do you have, Mr. Wilson, a list

12:13:23   22  of the information that you feel you need to present an

12:13:28   23  effective tutorial for the Court on science day?

12:13:30   24          MR. WILSON:  Right now the defendants in the New

12:13:33   25  Jersey litigation, they're obligated by January 21st.

| | |
|---|---|
| 12:13:35 | 1 |
| 12:13:38 | 2 |
| 12:13:42 | 3 |
| 12:13:48 | 4 |
| 12:13:48 | 5 |
| 12:13:54 | 6 |
| 12:13:57 | 7 |
| 12:14:02 | 8 |
| 12:14:06 | 9 |
| 12:14:06 | 10 |
| 12:14:08 | 11 |
| 12:14:12 | 12 |
| 12:14:14 | 13 |
| 12:14:19 | 14 |
| 12:14:24 | 15 |
| 12:14:25 | 16 |
| 12:14:28 | 17 |
| 12:14:30 | 18 |
| 12:14:34 | 19 |
| 12:14:35 | 20 |
| 12:14:39 | 21 |
| 12:14:43 | 22 |
| 12:14:46 | 23 |
| 12:14:51 | 24 |
| 12:14:55 | 25 |

**THE COURT:**  That's the core discovery?

**MR. WILSON:**  Yes.  Much of that is the clinical trial data, it's the communications with the regulators, it's the sciency information -- some of the sciency information.

**THE COURT:**  Okay.

**MR. WILSON:**  I think we need to at least have them confirm to you that they've completed that discovery, give us 30 days or so to digest it, then we'd be happy to have a science day.

**THE COURT:**  Okay, that seems fair, that seems fair. So maybe we move science day off a little bit.

**MR. AGNESHWAR:**  That's fine, Your Honor.  I believe the -- I will say that the plaintiffs filed a complaint based on a thorough discussion of science, but we're fine with producing to them adverse event reports and clinical data and having a science day shortly after that.  I do agree with Your Honor that it should sooner rather than later, because I think it will give the Court a grounding to evaluate the parties' various positions.

And I do agree with Mr. Aylstock.  I've done these both ways, with experts and with counsel.  At this point in the litigation, it's early enough in the litigation that the purpose of it is to give the Court a grounding of our various perspectives of the science to help the Court manage the case. I do think it can be done effectively with attorney

| | |
|---|---|
| 12:14:58 | 1 |

presentations rather than with experts, and that's what we

would recommend doing at this point.

        **THE COURT:**  Well, I would envision, you know, shortly

thereafter you all moving into discovery on general causation.

        I don't know.  Let me give that some thought as to

whether I want to hear from experts or if I'm comfortable just

being educated by you all.  And I'm sure you are well-versed,

or will be when you get the materials that you need on the

plaintiffs side.  But let me give that some thought.  I wasn't

expecting you to propose that to me.  I was expecting to have

experts.

        I suppose if we're going to move quickly into general

causation, though, I'll be hearing from those experts sooner

rather than later, so maybe that's sufficient.

        So let me ask, as far as the general causation

discovery including the expert, you all -- I saw a stipulation

regarding one of the plaintiffs' experts in the New Jersey

litigation.  I presume you're going to use the same experts

here that you have in New Jersey, or not?

        **MR. WILSON:**  It's likely we will, with probable

additions.

        **THE COURT:**  Well, are you on any schedule with Judge

DeLuca as far as experts?

        **MR. WILSON:**  No, we are not.  We've stressed before

Judge DeLuca that, before there can be a lot of development of

| | |
|---|---|
| 12:17:05 | 1 |
| 12:17:08 | 2 |
| 12:17:11 | 3 |
| 12:17:14 | 4 |
| 12:17:19 | 5 |
| 12:17:23 | 6 |
| 12:17:28 | 7 |
| 12:17:28 | 8 |
| 12:17:36 | 9 |
| 12:17:44 | 10 |
| 12:17:48 | 11 |
| 12:17:51 | 12 |
| 12:17:53 | 13 |
| 12:17:56 | 14 |
| 12:18:01 | 15 |
| 12:18:02 | 16 |
| 12:18:06 | 17 |
| 12:18:07 | 18 |
| 12:18:09 | 19 |
| 12:18:12 | 20 |
| 12:18:14 | 21 |
| 12:18:17 | 22 |
| 12:18:21 | 23 |
| 12:18:21 | 24 |
| 12:18:21 | 25 |

1  the expert record, we need to have discovery from the files of
2  the company.  We haven't gotten that yet.  And that -- in my
3  mind, that's what's slowing down the litigation.  We have not
4  been provided any liability discovery, and that's -- before we
5  can do anything, before we can have a motion practice on
6  individual cases, we have to have discovery from the
7  defendants.
8          THE COURT:  Well, in the interest of moving more
9  quickly towards science day and discovery, both generally as
10 far as causation but also in the case-specific, is there any
11 chance you all can produce these documents any sooner?
12         MR. AGNESHWAR:  Well, we're doing it as fast as we
13 can.  We're trying to do it on a rolling basis, and we expect
14 to complete by January 21st, which is when Judge DeLuca has
15 imposed a deadline on us.
16         THE COURT:  Right, but I'm just wondering if there's
17 any chance you can do it sooner.
18         MR. CAMPBELL:  Your Honor, we can look into it.  One
19 of the issues the Court should be aware of is that the
20 documents that are part of this core discovery are actually a
21 large volume, but also contains -- Your Honor may be aware of
22 this -- personal identifying information because they're
23 clinical trials.
24         THE COURT:  Right.
25         MR. CAMPBELL:  It's a very tedious process to go

| | |
|---|---|
| 12:18:24 | 1 |
| 12:18:26 | 2 |
| 12:18:26 | 3 |
| 12:18:29 | 4 |
| 12:18:31 | 5 |
| 12:18:35 | 6 |
| 12:18:38 | 7 |
| 12:18:42 | 8 |
| 12:18:46 | 9 |
| 12:18:47 | 10 |
| 12:18:47 | 11 |
| 12:18:50 | 12 |
| 12:18:55 | 13 |
| 12:18:57 | 14 |
| 12:19:00 | 15 |
| 12:19:04 | 16 |
| 12:19:08 | 17 |
| 12:19:10 | 18 |
| 12:19:15 | 19 |
| 12:19:18 | 20 |
| 12:19:22 | 21 |
| 12:19:22 | 22 |
| 12:19:24 | 23 |
| 12:19:29 | 24 |
| 12:19:32 | 25 |

through and redact that information, and that's really what is
slowing down the process.  It's something where, you know, you
could have a pool of reviewers and it just takes days to get a
thousand documents or a thousand pages out.

We'll go back and look and try to reassess and try to
add more bodies to that.  But at this point in time we had set
the January 21 date based on the volume we were aware of and we
thought it was a tight schedule to begin with.  Of course we'll
try to accommodate, but we'd have to let you know that we can't
guarantee it at this point.

THE COURT:  So, Mr. Campbell, if you can do that
sooner, then I can hold science day sooner.  And I'm really
interested in science day.

MR. AGNESHWAR:  We will talk and we will do our best.

On the general causation issue, I think Mr. Wilson
might be mixing apples and oranges because there's a reference
to liability documents.  And it is true that the core
discovery, which, as it's defined in New Jersey, does not
include the custodial email documents and things like that.
They're the adverse event reports, clinical studies, things of
that nature.

However, as I understand what Your Honor is suggesting
with general causation is looking at the scientific evidence
somewhat early in the case to see if really the data that is
out there that the plaintiff is trying to show a relationship

| 12:19:35 | 1 | between the --
| 12:19:37 | 2 | THE COURT:  That's exactly what I'm talking about.
| 12:19:38 | 3 | MR. AGNESHWAR:  And I believe that's going to be
| 12:19:40 | 4 | scientifically-driven data, and that's going to be driven by
| 12:19:43 | 5 | the published articles that are out there, by the case reports
| 12:19:47 | 6 | that are out there, by the FDA materials that Mr. Wilson cited
| 12:19:50 | 7 | in his paper.  And to the extent they want to rely on adverse
| 12:19:56 | 8 | event information, that's also going to be produced to them
| 12:19:59 | 9 | early on in the case.
| 12:20:00 | 10 | THE COURT:  That's what you all have?
| 12:20:02 | 11 | MR. AGNESHWAR:  Exactly, we have that and we're
| 12:20:03 | 12 | producing it to them.
| 12:20:04 | 13 | So I don't see custodial production really holding up
| 12:20:08 | 14 | that process, because what someone said in an email of how
| 12:20:12 | 15 | somebody performed on the drug isn't really relevant to the
| 12:20:13 | 16 | issue of whether there, in fact, is sufficient evidence on
| 12:20:17 | 17 | general causation.
| 12:20:20 | 18 | THE COURT:  Okay.
| 12:20:20 | 19 | MR. WILSON:  I guess, Your Honor, I just -- I don't
| 12:20:21 | 20 | want the point lost that what they're doing about the 21st is
| 12:20:24 | 21 | like a limited interim production.  What we want to do is we
| 12:20:29 | 22 | want Rule 26 disclosures and we want to serve document requests
| 12:20:34 | 23 | so we can also get into the custodial files.
| 12:20:37 | 24 | THE COURT:  But I'm expecting you -- my vision is that
| 12:20:41 | 25 | you would do that as part of the bellwether process.  That's

| 12:20:45 | 1 | what I would expect. |
| 12:20:48 | 2 | **MR. WILSON:**  So the bellwether process will include |
| 12:20:51 | 3 | general liability discovery of the custodians of the company? |
| 12:20:55 | 4 | **THE COURT:**  Yes. |
| 12:20:57 | 5 | **MR. WILSON:**  I don't see -- usually -- I don't want to |
| 12:21:01 | 6 | betray my age here, but in the old days you just got all the |
| 12:21:05 | 7 | discovery.  Like we would serve document requests, we would get |
| 12:21:08 | 8 | the discovery, it would take six months to go through it all, |
| 12:21:12 | 9 | and then the case would just go forward from there.  So I |
| 12:21:16 | 10 | really think parsing it out like this is going to make things |
| 12:21:24 | 11 | take longer. |
| 12:21:24 | 12 | **THE COURT:**  I guess I don't agree. |
| 12:21:26 | 13 | Mr. Aylstock? |
| 12:21:30 | 14 | **MR. AYLSTOCK:**  Your Honor, if I may, just to respond |
| 12:21:32 | 15 | to Mr. Agneshwar's point about custodial files.  Having done |
| 12:21:37 | 16 | some clinical trial 30(b)(6) depositions before and having the |
| 12:21:40 | 17 | opportunity to review emails and internal documents in |
| 12:21:42 | 18 | preparations for those depositions and use them, I couldn't |
| 12:21:46 | 19 | disagree more. |
| 12:21:47 | 20 | The custodial files of key science figures and medical |
| 12:21:50 | 21 | personnel are absolutely critical to the understanding of the |
| 12:21:54 | 22 | science if we're going to really delve deeply into it. |
| 12:21:59 | 23 | **THE COURT:**  My understanding is you've all already |
| 12:22:01 | 24 | agreed with Judge DeLuca that you're going to produce the |
| 12:22:04 | 25 | 30(b)(6) representative. |

| | | |
|---|---|---|
| 12:22:05 | 1 | **MR. AYLSTOCK:**  Not custodial files, Your Honor.  It |
| 12:22:08 | 2 | was simply really FDA documents and clinical trials. |
| 12:22:08 | 3 | **THE COURT:**  Oh, okay. |
| 12:22:13 | 4 | **MR. AYLSTOCK:**  And so that's why -- you might have |
| 12:22:14 | 5 | noticed in the letter -- it was really initial.  It was called |
| 12:22:18 | 6 | core, but I don't view that as core discovery.  I view |
| 12:22:21 | 7 | custodial files of those individuals as inclusive of the core |
| 12:22:24 | 8 | discovery. |
| 12:22:25 | 9 | **THE COURT:**  I'm using here the reference that was |
| 12:22:29 | 10 | given to it in the New Jersey litigation, which was core |
| 12:22:32 | 11 | discovery. |
| 12:22:33 | 12 | **MR. AGNESHWAR:**  Your Honor, maybe a little bit of |
| 12:22:37 | 13 | background as to how this issue of core discovery came up might |
| 12:22:37 | 14 | help. |
| 12:22:38 | 15 | So the New Jersey cases were filed, and at the same |
| 12:22:40 | 16 | time those cases were filed federal cases were being filed, and |
| 12:22:43 | 17 | we were negotiating with the plaintiffs about whether we were |
| 12:22:46 | 18 | going to join in an MDL application and when that would get off |
| 12:22:49 | 19 | the ground and the timing. |
| 12:22:51 | 20 | And it was our position -- the defendants' position |
| 12:22:54 | 21 | that, based on, you know, not wanting to get conflicting orders |
| 12:22:59 | 22 | in different litigations, that we should wait for the MDL to be |
| 12:23:02 | 23 | created and do discovery in a coordinated fashion with the |
| 12:23:07 | 24 | state court litigation in New Jersey and the MDL. |
| 12:23:09 | 25 | The plaintiffs -- Mr. Wilson had most of the cases at |

| | |
|---|---|
| 12:23:13 | 1 |
| 12:23:17 | 2 |
| 12:23:20 | 3 |
| 12:23:24 | 4 |
| 12:23:27 | 5 |
| 12:23:30 | 6 |
| 12:23:33 | 7 |
| 12:23:37 | 8 |
| 12:23:40 | 9 |
| 12:23:42 | 10 |
| 12:23:44 | 11 |
| 12:23:49 | 12 |
| 12:23:53 | 13 |
| 12:23:58 | 14 |
| 12:24:02 | 15 |
| 12:24:05 | 16 |
| 12:24:07 | 17 |
| 12:24:10 | 18 |
| 12:24:14 | 19 |
| 12:24:15 | 20 |
| 12:24:19 | 21 |
| 12:24:26 | 22 |
| 12:24:29 | 23 |
| 12:24:31 | 24 |
| 12:24:34 | 25 |

the time -- was anxious to at least get a head start on some of
the discovery, some of the company's documents before it got
coordinated, before the MDL was created, because just by virtue
of the JPML hearings to take some time to do that.

So we agreed at that point that, if there were certain
sets of documents that we could just kind of find on the shelf
without doing a lot of searches, without doing custodial
searches, that were clearly relevant to the litigation, we
would produce those and call it core discovery.

And we put together a list that's actually quite
extensive, which includes all the adverse drug event reports,
it includes clinical report information, it includes some
marketing materials, it includes every promotional piece we've
done on Abilify in the 2253 FDA forms, and that's what's going
to be produced on January 21st.

Now, we have never said that that's all the production
that we're going to do in this litigation.  We recognize that
we're going to be producing more, we're going to be producing
custodial files and the like.

THE COURT:  They're saying that they need that as part
of this phase of the case that's going to involve the science
and the general causation challenge.

MR. AGNESHWAR:  Well, that's what -- I think I
disagree with them on that, because I think the law is pretty
clear that, even if they could find an admission in our

| | |
|---|---|
| 12:24:37 | 1 |
| 12:24:41 | 2 |
| 12:24:45 | 3 |
| 12:24:50 | 4 |
| 12:24:53 | 5 |
| 12:24:56 | 6 |
| 12:25:00 | 7 |
| 12:25:03 | 8 |
| 12:25:07 | 9 |
| 12:25:09 | 10 |
| 12:25:13 | 11 |
| 12:25:16 | 12 |
| 12:25:20 | 13 |
| 12:25:22 | 14 |
| 12:25:24 | 15 |
| 12:25:27 | 16 |
| 12:25:30 | 17 |
| 12:25:35 | 18 |
| 12:25:38 | 19 |
| 12:25:43 | 20 |
| 12:25:46 | 21 |
| 12:25:50 | 22 |
| 12:25:52 | 23 |
| 12:25:56 | 24 |
| 12:26:00 | 25 |

documents where some company scientist says -- and there is no
such document, let me say -- but that '*I believe that Abilify
causes compulsive gambling,*' you know, that might be helpful at
trial.  But in an actual *Daubert* hearing, whatever a company
employee said is not relevant to the scientific evidence that
must be presented to get over the *Daubert* standard.

          That's my understanding based on my review of the case
law.  I'm sure Mr. Aylstock might disagree with me.

          **THE COURT:**  Well, I may have you submit briefs on this
to me so I can make a decision about whether this discovery is
necessary to facilitate this phase of the case that I'm
interested in now early on, which is the science and the
general causation.

          **MR. RASMUSSEN:**  Your Honor, I was going to suggest
that maybe give us about a week just to meet and confer with
the defendants and then either submit something to the Court as
a joint brief outlining our position or competing briefs.  And
then perhaps, like you mentioned earlier, having a discovery
conference call after whatever written briefs have been
provided to the Court, just to maybe -- to the extent that you
have questions about what we have put down in writing, that may
make the most sense.  And then you could ask us some questions
and then we could explain why we are submitting what we're
submitting jointly for the defendants, or to the extent we
disagree, we could explain why we -- our relative positions.

| 12:26:04 | 1 | **THE COURT:**  That sounds like a good idea. |
| 12:26:07 | 2 | **MR. AGNESHWAR:**  That's fine, Your Honor.  And I'll be |
| 12:26:09 | 3 | happy to meet and confer, and we've done this and discussed |
| 12:26:11 | 4 | with them on a lot of things. |
| 12:26:12 | 5 | But on the discovery, I'm not sure what Mr. Wilson is |
| 12:26:14 | 6 | referring to about piecemeal things, but as I understand what |
| 12:26:17 | 7 | the Court is saying is that a lot of things are going to happen |
| 12:26:21 | 8 | concurrently, and the Court is going to put together a |
| 12:26:23 | 9 | discovery committee concurrently with all of these other |
| 12:26:26 | 10 | materials, and that committee will in fact sit down and work |
| 12:26:30 | 11 | out a production -- what production we're going to produce to |
| 12:26:33 | 12 | the plaintiffs from custodial files and the like. |
| 12:26:35 | 13 | **THE COURT:**  Have any of y'all ever run the Boston |
| 12:26:39 | 14 | Marathon?  You know how they have those corrals that are 20,000 |
| 12:26:44 | 15 | people deep, and one starts at eight o'clock and the next one |
| 12:26:48 | 16 | starts at 8:15, and the next one at 8:25.  That's how this is |
| 12:26:53 | 17 | going to work.  Right?  That's how the case is going to |
| 12:26:57 | 18 | proceed, things will be running concurrently, yes, exactly. |
| 12:27:03 | 19 | Case management order.  This is going to turn around a |
| 12:27:14 | 20 | little quicker than I think you all were expecting.  As I |
| 12:27:18 | 21 | indicated, I expect the second -- excuse me -- the first week, |
| 12:27:22 | 22 | hopefully December 2nd I will have your leadership structure |
| 12:27:28 | 23 | appointments in place and an order entered.  The proposed case |
| 12:27:33 | 24 | management order will be submitted 14 days after that. |
| 12:27:38 | 25 | And the order that I enter -- hopefully tomorrow, but |

| | |
|---|---|
| 12:27:44 | 1 |
| 12:27:48 | 2 |
| 12:27:52 | 3 |
| 12:27:55 | 4 |
| 12:27:59 | 5 |
| 12:28:03 | 6 |
| 12:28:05 | 7 |
| 12:28:16 | 8 |
| 12:28:23 | 9 |
| 12:28:32 | 10 |
| 12:28:35 | 11 |
| 12:28:40 | 12 |
| 12:28:47 | 13 |
| 12:28:50 | 14 |
| 12:28:55 | 15 |
| 12:29:03 | 16 |
| 12:29:08 | 17 |
| 12:29:15 | 18 |
| 12:29:19 | 19 |
| 12:29:23 | 20 |
| 12:29:28 | 21 |
| 12:29:37 | 22 |
| 12:29:42 | 23 |
| 12:29:48 | 24 |
| 12:29:55 | 25 |

as I said, I'm traveling, so it may be Wednesday but definitely this week -- will outline everything that I want you all to submit in your proposed case management order.  And of course, if there are other things you want to propose, that's fine, too, but I will give you sort of the minimum of what I'm looking for.

Now, case management conferences, I intend to hold one per month, at least initially.  I won't hold one next month, however.  Right now I had January 30th as our next conference, but of course that was also going to be held in conjunction with science day, which may or may not take place on January 30th.  So for now pencil that date in, January 30th.  It may be that we have a case management conference that day and a science day another day.

February 22nd is the next case management conference. And just to let you know, I'm going to mark off two days for this.  And that may be overkill and it may not be necessary. But if I don't, then I'll lose that time for sure.  I think I can do this.  We will have a case management conference.  We will also hear oral argument or evidentiary hearing, to the extent it's necessary, on the personal jurisdiction question.

I was also hoping on that date -- and I'm not going to -- my hopes aren't completely dashed, it may still happen -- I would like to hear from a representative of the firm that you all decide you would like to use for the data analytics.  So to

| | |
|---|---|
| 12:29:59 | 1 |
| 12:30:06 | 2 |
| 12:30:13 | 3 |
| 12:30:14 | 4 |
| 12:30:53 | 5 |
| 12:31:01 | 6 |
| 12:31:09 | 7 |
| 12:31:11 | 8 |
| 12:31:14 | 9 |
| 12:31:18 | 10 |
| 12:31:20 | 11 |
| 12:31:24 | 12 |
| 12:31:27 | 13 |
| 12:31:35 | 14 |
| 12:31:39 | 15 |
| 12:31:42 | 16 |
| 12:31:43 | 17 |
| 12:31:47 | 18 |
| 12:31:52 | 19 |
| 12:31:54 | 20 |
| 12:31:55 | 21 |
| 12:31:56 | 22 |
| 12:31:57 | 23 |
| 12:31:57 | 24 |
| 12:32:02 | 25 |

the extent it's BrownGreer, I may have a representative here that day to discuss with me the MDL Centrality and its application here.

And by that time -- just a moment, let me check.  My hope was -- in advance of this conference, my desire to have the data analytics person here was that the plaintiffs' fact sheets would be completed by that time.

What do you all need for that?  How much time?  Is that too ambitious, Mr. Aylstock?

MR. AYLSTOCK:  I think it is a little bit, Your Honor. Probably an additional 30 days.

THE COURT:  The discovery committee will be in place by this time.  So you're thinking -- but again, a firm, whether it's BrownGreer or another, can be of significant advantage to you all in getting these done.

MR. AYLSTOCK:  Absolutely.

THE COURT:  But it may be, then, that we hear from BrownGreer at the March 27th case management conference.

MR. AYLSTOCK:  We'll certainly try to get it done for the February 22nd.

THE COURT:  Mr. Rasmussen?

MR. RASMUSSEN:  Your Honor, I was just going to say, part of what this hinges on, in terms of time with respect to the plaintiffs' fact sheets and then also the defendants' fact sheets, is the information that is being requested and/or

| | | |
|---|---|---|
| 12:32:06 | 1 | provided from the perspective parties in the individual cases. |
| 12:32:08 | 2 | And since the Court brought up -- or referenced Judge |
| 12:32:14 | 3 | Fallon, and in particular the Xarelto litigation, the plaintiff |
| 12:32:20 | 4 | -- actually, I forget how many cases it is right now, because |
| 12:32:26 | 5 | of, you know, to have data on this many cases, and really it's |
| 12:32:27 | 6 | the data that -- the court references "the necessary data."  So |
| 12:32:32 | 7 | all that's required from the plaintiffs now is to submit -- I |
| 12:32:34 | 8 | believe it's about a page-and-a-half or two pages worth of |
| 12:32:39 | 9 | information that's on the facts sheet, whereas originally |
| 12:32:42 | 10 | everything was contained in each one of those pages, and I |
| 12:32:46 | 11 | believe it was maybe 8 pages or 10 pages, the entire fact sheet |
| 12:32:47 | 12 | is.  And now Judge Fallon is only requiring plaintiffs to |
| 12:32:52 | 13 | submit a page or two. |
| 12:32:53 | 14 | So when the Court asked about the timing issue with |
| 12:32:58 | 15 | respect to the facts sheet, obviously we need -- the most |
| 12:32:59 | 16 | important information is to have this important demographic |
| 12:33:02 | 17 | data but -- |
| 12:33:03 | 18 | THE COURT:  Well, maybe we can do it that way.  I |
| 12:33:08 | 19 | don't have an objection to that.  If that would get us to the |
| 12:33:12 | 20 | point of being able to start inputting that important variable |
| 12:33:16 | 21 | information early on, then I would be in favor of that. |
| 12:33:21 | 22 | MR. AYLSTOCK:  One of the things that I have discussed |
| 12:33:23 | 23 | with the other side, Your Honor, is the concept of exactly |
| 12:33:26 | 24 | that, but we call it a "plaintiff profile form" -- |
| 12:33:26 | 25 | THE COURT:  Right. |

| | |
|---|---|
| 12:33:30 | 1 |
| 12:33:31 | 2 |
| 12:33:35 | 3 |
| 12:33:39 | 4 |
| 12:33:41 | 5 |
| 12:33:44 | 6 |
| 12:33:49 | 7 |
| 12:33:53 | 8 |
| 12:33:56 | 9 |
| 12:33:59 | 10 |
| 12:34:02 | 11 |
| 12:34:05 | 12 |
| 12:34:09 | 13 |
| 12:34:10 | 14 |
| 12:34:13 | 15 |
| 12:34:16 | 16 |
| 12:34:19 | 17 |
| 12:34:22 | 18 |
| 12:34:24 | 19 |
| 12:34:27 | 20 |
| 12:34:32 | 21 |
| 12:34:36 | 22 |
| 12:34:37 | 23 |
| 12:34:40 | 24 |
| 12:34:44 | 25 |

**MR. AYLSTOCK:**  -- and then a "plaintiff fact sheet" later on.  So if we're talking about a plaintiff profile form, that's a much easier process from our end and from our client's end to get everything.  And it's the core data, it is the important information for data points and so forth.  So we've agreed to continue to meet and confer about that as well.

**MR. CAMPBELL:**  Your Honor, I think we're -- we've had preliminary discussions about this, and we'd be open to it. Obviously, we have somewhat of a disagreement about what's core information for being able to determine the proper demographics, but I think we're willing to have further discussions with them to see whether we could have short of a fact sheet that gives everything that we need for the actual -- if it's going to be a part of a beginning of bellwether selection process, then we definitely want to have certain key information that I'm not sure would be included in a page-and-a-half fact sheet, but we're happy to discuss that further before we make that decision.

**THE COURT:**  The discovery committee can certainly work on this, but I don't want you all to stop your discussions on it, thinking, *Oh, we'll wait until the discovery committee is in place.*

Continue to discuss this and see if there is some version of the fact sheet, short of a full complete fact sheet, that could get us the information that we need and the firm

| | | |
|---|---|---|
| 12:34:49 | 1 | needs, the important variables. |
| 12:34:52 | 2 | And then to the extent there's additional information |
| 12:34:55 | 3 | you feel you need for that process, work on -- whether it's one |
| 12:35:01 | 4 | page or two pages, y'all work on that, just so that it's |
| 12:35:07 | 5 | manageable from a time standpoint for the plaintiffs, |
| 12:35:10 | 6 | understanding the Court's sort of goal here. |
| 12:35:15 | 7 | MR. AGNESHWAR:  Yes, Your Honor.  So just responding |
| 12:35:17 | 8 | to both of their points, I think what Mr. Aylstock is referring |
| 12:35:20 | 9 | to as the patient profile forms are used in some litigations. |
| 12:35:24 | 10 | Typically they're used in litigations where there's thousands |
| 12:35:26 | 11 | of plaintiffs and where you pick a discovery pool that all of |
| 12:35:30 | 12 | them submit a bigger fact sheet, the most complete fact sheet, |
| 12:35:34 | 13 | and those are typically 60 to 80 people at a time.  And then |
| 12:35:38 | 14 | the thousands of people in the background submit patient |
| 12:35:41 | 15 | profile forms. |
| 12:35:42 | 16 | And, again, I sound like a broken record, but I come |
| 12:35:45 | 17 | back to the fact that at this point the litigation is only 45 |
| 12:35:47 | 18 | people.  We have negotiated a fact sheet with the plaintiffs. |
| 12:35:51 | 19 | And Mr. Aylstock initially asked for an extra 30 days to |
| 12:35:55 | 20 | complete those fact sheets. |
| 12:35:57 | 21 | Now, I think we're fine with that.  But at this number |
| 12:36:00 | 22 | of people, we think, especially if the Court is leaning towards |
| 12:36:04 | 23 | using -- going down the bellwether process even if we end up |
| 12:36:08 | 24 | with something that's closer to 45 people, we really think we |
| 12:36:12 | 25 | should have those fact sheets completed early on in the |

| | | |
|---|---|---|
| 12:36:14 | 1 | litigation. |
| 12:36:15 | 2 | THE COURT:  Yeah.  And Mr. Agneshwar makes a good |
| 12:36:17 | 3 | point.  If you all are -- if we're going to stay at this |
| 12:36:22 | 4 | number, this is fairly comfortable, and so I think full |
| 12:36:27 | 5 | complete fact sheets -- |
| 12:36:29 | 6 | MR. RASMUSSEN:  Two things, Your Honor.  Number one, |
| 12:36:31 | 7 | we're not going to stay at this number, the number is going to |
| 12:36:35 | 8 | increase.  But number two, I think that typically the fact |
| 12:36:39 | 9 | sheets come out of a process that's negotiated and oftentimes |
| 12:36:42 | 10 | agreed to between the parties, and we could is add this to the |
| 12:36:45 | 11 | list of things that you require us to meet and confer, and then |
| 12:36:48 | 12 | let's report back in whatever we submit either jointly or |
| 12:36:51 | 13 | separately to the Court within a week.  And then to the extent |
| 12:36:54 | 14 | that we have disagreements, then we can explain those to the |
| 12:36:58 | 15 | Court, and you can make a ruling then. |
| 12:36:59 | 16 | THE COURT:  But didn't you already do this in New |
| 12:37:01 | 17 | Jersey?  I've seen the plaintiffs and defense facts sheets. |
| 12:37:06 | 18 | MR. AYLSTOCK:  Your Honor, Mr. Wilson's firm did.  We |
| 12:37:09 | 19 | weren't involved in that process.  And similar to the ESI and |
| 12:37:13 | 20 | protective order, we'd just like an opportunity to weigh in and |
| 12:37:15 | 21 | in particular try to negotiate a profile form to give them, |
| 12:37:20 | 22 | maybe not 3 pages, maybe 15 pages, but it's a very lengthy fact |
| 12:37:24 | 23 | sheet that frankly, in my view, that has a lot of wasted time |
| 12:37:28 | 24 | and effort. |
| 12:37:29 | 25 | THE COURT:  You know what would I think really |

12:37:32  1   facilitate the process here is if you all get in touch with

12:37:38  2   your network and your colleagues and encourage them to file

12:37:44  3   their cases if they're going to file cases.

12:37:47  4        MR. AYLSTOCK:  Yes, Your Honor.

12:37:48  5        THE COURT:  That would be helpful.  A lot of this

12:37:55  6   unknown of how many cases we're going to have is really driving

12:37:58  7   this discussion.  Because depending on the number, we're going

12:38:01  8   to go in one direction.  If we're not at that number, then we

12:38:07  9   may go in a completely different direction.  So it's making the

12:38:11  10  discussion a little difficult.

12:38:12  11       And I know that's not completely in your hands, but to

12:38:15  12  the extent you can encourage it, I think that would be helpful

12:38:18  13  to the process.

12:37:48  14       MR. AYLSTOCK:  Yes, Your Honor.

12:38:25  15       THE COURT:  Let me make sure you have those dates

12:38:27  16  again.

12:38:28  17       January 30th for the next case management conference.

12:38:34  18       Science date to be determined.

12:38:40  19       February 22nd, case management conference with the

12:38:44  20  hearing or oral argument on the motion to dismiss.

12:38:48  21       And then March 27th.

12:38:53  22       Somewhere in between the February 22nd and the March

12:38:57  23  27th date I would anticipate -- definitely anticipate fact

12:39:05  24  sheets or some form of a fact sheet.

12:39:08  25       And if you all -- if we get some more cases filed in

| | | |
|---|---|---|
| 12:39:12 | 1 | the litigation and you all can come to an agreement on a short |
| 12:39:16 | 2 | form that contains the information that the Court needs and the |
| 12:39:24 | 3 | defense needs, then it may be that we're able to have that |
| 12:39:27 | 4 | discussion with someone from BrownGreer or another firm at the |
| 12:39:34 | 5 | February conference.  If not, then it may be March, and it may |
| 12:39:41 | 6 | be a full fact sheet at that point. |
| 12:39:47 | 7 | All right, I had just a couple of miscellaneous |
| 12:39:51 | 8 | matters.  The *pro se* plaintiff. |
| 12:39:54 | 9 | My understanding, Mr. Campbell or Mr. Connolly, this |
| 12:39:57 | 10 | is being taken care of, right? |
| 12:40:00 | 11 | **MR. CAMPBELL:**  (Indicating affirmatively.) |
| 12:40:02 | 12 | **THE COURT:**  And I know you're different, I just wasn't |
| 12:40:06 | 13 | sure which one was going to address that, so I just called you |
| 12:40:09 | 14 | both. |
| 12:40:09 | 15 | And so the federal state liaison counsel who has yet |
| 12:40:14 | 16 | to be appointed, just as a heads up, I'm going to be asking |
| 12:40:19 | 17 | that attorney and giving him or her the responsibility to |
| 12:40:23 | 18 | provide Judge DeLuca with everything pertinent in the MDL and |
| 12:40:30 | 19 | provide me with everything pertinent in the New Jersey |
| 12:40:34 | 20 | litigation.  Because up until now, it's really been him and I |
| 12:40:39 | 21 | doing that -- him more than me -- doing that, and I'd like to |
| 12:40:44 | 22 | take that burden off of him. |
| 12:40:45 | 23 | I will be inviting him -- and actually, I did invite |
| 12:40:49 | 24 | him to attend today.  I think I was a little late in my |
| 12:40:52 | 25 | invitation.  So I have extended the invitation for any future |

| | | |
|---|---|---|
| 12:40:58 | 1 | case management conferences, and I've invited him to science |
| 12:41:02 | 2 | day, whenever we hold science day. |
| 12:41:05 | 3 | He said he may come.  I don't think he's very familiar |
| 12:41:07 | 4 | with Florida geography, though, because he was hoping it would |
| 12:41:14 | 5 | be in February and he could come to Pensacola and wear his |
| 12:41:19 | 6 | bathing suit.  But I told him, no, it's not all that unlike New |
| 12:41:24 | 7 | Jersey in February here. |
| 12:41:26 | 8 | I believe that's all I had to cover.  So, Mr. Wilson |
| 12:41:32 | 9 | or Mr. Aylstock, Mr. Rasmussen, anything else from you all? |
| 12:41:38 | 10 | MR. AYLSTOCK:  We've covered it, Your Honor. |
| 12:41:40 | 11 | THE COURT:  Very good. |
| 12:41:40 | 12 | Mr. Agneshwar? |
| 12:41:41 | 13 | MR. AGNESHWAR:  Could I just have one minute to |
| 12:41:44 | 14 | consult with my colleagues and make sure? |
| 12:41:46 | 15 | THE COURT:  I tell you what, let's take five minutes |
| 12:41:48 | 16 | recess, and I'll come back in and we'll wrap up.  Maybe |
| 12:41:50 | 17 | something else comes up for the plaintiffs, and you all can |
| 12:41:51 | 18 | address the Court at that time. |
| 12:53:11 | 19 | (Recess taken 12:41 p.m. to 12:53 p.m.) |
| 12:53:11 | 20 | THE COURT:  Mr. Wilson? |
| 12:53:18 | 21 | MR. WILSON:  Thank you, Your Honor.  We had two minor |
| 12:53:22 | 22 | things to add.  I think one solution to the lack of cases being |
| 12:53:30 | 23 | filed now would be for us to meet with the defendants over the |
| 12:53:33 | 24 | next day or two and submit to you what's called a Direct Filing |
| 12:53:38 | 25 | Order.  That allows people who live in other districts to file |

12:53:43   1    directly here, and it will just be an incentive for people to

12:53:47   2    get their cases on suit.

12:53:49   3              THE COURT:  I'm happy to did that.  I think my prior

12:53:51   4    orders spoke to that, but I'll be that happy to consider

12:53:55   5    anything you submit.  And if you think it will help facilitate

12:54:00   6    the filing of cases, then I'm happy to do it.

12:54:03   7              MR. WILSON:  OPC has raised an objection and we'll try

12:54:06   8    to work it out with them.

12:54:10   9              MR. CONNELLY:  That's right, Your Honor, we'll meet

12:54:12   10   and confer.

12:54:12   11             THE COURT:  Before you speak to the second matter,

12:54:14   12   just along those same lines, I'd like to ask you to go ahead

12:54:21   13   and submit your master complaint and a short form within 20

12:54:27   14   days, to get that done, so 11/28.

12:54:33   15             But I also have a question about that, and I think I

12:54:37   16   know the answer, but just to be clear and for the record.  The

12:54:41   17   master complaint would supersede all existing complaints; is

12:54:46   18   that correct?

12:54:46   19             MR. WILSON:  Yes.  It would relate back -- for our

12:54:50   20   complaints that are already failed, the date would relate back.

12:54:56   21             THE COURT:  Okay.  And then I would suggest putting

12:54:58   22   the short form on our website as well.

12:55:02   23             MR. WILSON:  Yes, good idea.  And then the other

12:55:04   24   thing, Your Honor, with respect to the New Jersey documents and

12:55:09   25   the January 21 deadline, counsel pointed out to me we should

| | | |
|---|---|---|
| 12:55:14 | 1 | probably serve document requests tracking the same documents in |
| 12:55:20 | 2 | federal court just so there's a production pursuant to the |
| 12:55:24 | 3 | federal rules with a privileged log, and we would ask that you |
| 12:55:28 | 4 | lift the stay solely for that little purpose. |
| 12:55:34 | 5 | **THE COURT:**  Procedurally that would seem to be |
| 12:55:37 | 6 | technically proper. |
| 12:55:40 | 7 | Mr. Agneshwar? |
| 12:55:43 | 8 | **MR. AGNESHWAR:**  That category of documents has not |
| 12:55:47 | 9 | been -- what we're producing as, quote, "discovery" in New |
| 12:55:51 | 10 | Jersey has not been pursuant to a formal document request.  It |
| 12:55:55 | 11 | has been the subject of negotiation where we were getting |
| 12:55:58 | 12 | emails from Mr. Wilson saying *We think we should have these* |
| 12:56:01 | 13 | *documents,* and we would come back and say, *Well, we think 1, 2,* |
| 12:56:05 | 14 | *6, 8, 9 can be doable, but not the others.*  So I'm not sure |
| 12:56:09 | 15 | what he's really concerned about or referring to. |
| 12:56:12 | 16 | **THE COURT:**  Okay.  Why couldn't I just enter an order |
| 12:56:15 | 17 | in this MDL that requires the production of what you've already |
| 12:56:20 | 18 | agreed to produce in the New Jersey litigation? |
| 12:56:23 | 19 | **MR. AGNESHWAR:**  To be produced here? |
| 12:56:25 | 20 | **THE COURT:**  Yes, to be produced here. |
| 12:56:27 | 21 | **MR. WILSON:**  We could, Your Honor, and those documents |
| 12:56:28 | 22 | are broken up by category in our brief. |
| 12:56:32 | 23 | **THE COURT:**  Right, yes, I saw that.  Thank you.  I |
| 12:56:34 | 24 | will do that promptly. |
| 12:56:36 | 25 | **MR. CAMPBELL:**  Your Honor, one point of issue about |

| | |
|---|---|
| 12:56:38 | 1 |
| 12:56:41 | 2 |
| 12:56:44 | 3 |
| 12:56:47 | 4 |
| 12:56:50 | 5 |
| 12:56:53 | 6 |
| 12:56:57 | 7 |
| 12:57:01 | 8 |
| 12:57:05 | 9 |
| 12:57:07 | 10 |
| 12:57:10 | 11 |
| 12:57:14 | 12 |
| 12:57:14 | 13 |
| 12:57:18 | 14 |
| 12:57:22 | 15 |
| 12:57:28 | 16 |
| 12:57:31 | 17 |
| 12:57:34 | 18 |
| 12:57:37 | 19 |
| 12:57:41 | 20 |
| 12:57:44 | 21 |
| 12:57:47 | 22 |
| 12:57:49 | 23 |
| 12:57:53 | 24 |
| 12:57:56 | 25 |

1   that is I believe the final category -- the description of the
2   final category of marketing documents, I'm not sure that
3   plaintiffs' brief is exactly accurate on the category that
4   Judge DeLuca entered.  That's the only issue.
5          Judge DeLuca was very clear in his oral opinion on
6   this of what he was ordering us to produce is that final kind
7   of contested issue or category for core discovery.  I'm not
8   sure that the list -- and I'm sure it's inadvertent, but I'm
9   not sure that the list that they included was actually accurate
10  on that, and I would just make sure that the order that Your
11  Honor enters reflects what Judge DeLuca is actually ordering in
12  this case.
13         **THE COURT:**  He called me and gave me the categories
14  but, again, this was just over the phone.  And I know marketing
15  materials was one of those categories, but that's pretty broad.
16         **MR. AGNESHWAR:**  What it was is it was marketing plans
17  that were referenced in a particular agreement between
18  Bristol-Myers and Otsuka, which he asked us to produce because
19  he thought they were also relevant to jurisdictional discovery.
20  But we can get with Mr. Wilson and put a list of all the
21  categories of documents, make sure it's exactly accurate and
22  submit it to Your Honor, if that would make sense.
23         **MR. WILSON:**  Yeah, let's focus on the last one that
24  you are objecting to now, but otherwise, I don't think we have
25  a disagreement.  I don't want to reopen the scope of these

12:57:59  1   documents.

12:57:59  2        **MR. AGNESHWAR:**  No.

12:58:00  3        **THE COURT:**  No, I don't want to do that right now

12:58:02  4   either.  But I also -- I only want to enter one order on this.

12:58:08  5   So why don't you all get together, make sure the list is

12:58:11  6   accurate and consistent with what's been ordered in the New

12:58:14  7   Jersey litigation, submit that to me -- can you get it to me

12:58:19  8   by, say, Wednesday or Thursday?

12:58:21  9        **MR. WILSON:**  Yes, we can.

12:58:22  10        **THE COURT:**  That will be fine, just this week get that

12:58:25  11   to me.

12:58:26  12        Mr. Aylstock?

12:58:27  13        **MR. AYLSTOCK:**  Your Honor, one other housekeeping

12:58:29  14   matter in the area about counsel's structure, and Your Honor

12:58:34  15   had indicated a discovery committee, and there was a question

12:58:37  16   about whether those members would be part of the PSC or

12:58:41  17   executive committee or whether they were designed to be

12:58:44  18   entirely separate.  So I wanted to ask a clarification on that.

12:58:49  19        **THE COURT:**  Well, I was thinking separate, but I'm not

12:58:52  20   -- I mean, I was thinking separate.  I think the discovery

12:58:57  21   committee will have a lot of work to do, at least for a period

12:59:03  22   of time sort of up front in the litigation.

12:59:05  23        How do you all feel about it?

12:59:07  24        **MR. AYLSTOCK:**  Typically there's some overlap.  They

12:59:09  25   don't have to be a member of the PSC or executive committee or

| | | |
|---|---|---|
| 12:59:15 | 1 | co-lead, but sometimes there's overlap, so perhaps if folks are |
| 12:59:19 | 2 | interested, they should put that on their application. |
| 12:59:23 | 3 | THE COURT:  Sure, because otherwise I was |
| 12:59:25 | 4 | contemplating three and three.  And I'm trying to create |
| 12:59:30 | 5 | opportunities for some diversity in your leadership structure. |
| 12:59:33 | 6 | I can increase the size of the committee by one or two, so four |
| 12:59:37 | 7 | and four, or -- I was going to say five and three but I don't |
| 12:59:42 | 8 | know how that would go over. |
| 12:59:46 | 9 | You tell me what you think you need.  I mean, this is |
| 12:59:49 | 10 | your litigation, and you know a lot more about it at this point |
| 12:59:53 | 11 | than I do.  What do you need in terms of representation? |
| 12:59:56 | 12 | MR. AYLSTOCK:  I think if we had four or five on our |
| 12:59:58 | 13 | side that might be more helpful, Your Honor. |
| 01:00:01 | 14 | THE COURT:  Okay.  What about you all?  The same? |
| 01:00:03 | 15 | MR. AGNESHWAR:  I don't think we need more than three, |
| 01:00:06 | 16 | maybe up to four. |
| 01:00:09 | 17 | THE COURT:  All right. |
| 01:00:11 | 18 | MR. CAMPBELL:  Thank you, Your Honor. |
| 01:00:12 | 19 | MR. AGNESHWAR:  Nothing else from defendants, and we |
| 01:00:15 | 20 | look to a hearing before Your Honor and working with plaintiffs |
| 01:00:19 | 21 | on this issue. |
| 01:00:19 | 22 | THE COURT:  Thank you.  I have a couple of final -- |
| 01:00:21 | 23 | whenever you take a break something always comes up, but that's |
| 01:00:28 | 24 | because Ms. Bills is paying very close attention and taking |
| 01:00:31 | 25 | very good notes. |

| 01:00:32 | 1 | The briefs -- we talked about some legal briefs on |

discovery and the scope of discovery in connection with science

day and general causation.  Could you have those submitted,

please, by the 28th?

You were going to get together, I think, and confer on

this as well.  But to the extent one side thinks custodial

documents are relevant and one thinks not relevant, I would

like you to submit something to me if there are some case law

out there on it.

MR. AGNESHWAR:  That's fine, Your Honor.  Do you want

to impose a page limit or leave that to our discretion?

THE COURT:  Do I need to?

MR. AYLSTOCK:  Not under the local rules, Your Honor.

THE COURT:  Okay.  And then, lastly, I mentioned

earlier wanting to post transcripts of these conferences for

the benefit of all on the website.  Do you all intend -- or do

you want an official transcript?  Have you had a chance to even

think about that?

MR. AYLSTOCK:  I think we would, Your Honor.  That

would be helpful.

THE COURT:  All right.  Well, you all then please get

with Ms. Boland.  I would expect you all to share the expense

of that.  If you would get with Ms. Boland in that regard and

she can talk to you about arrangements for that.  As soon as

it's available, I'll post it on the website.

The timestamps on left: 01:00:32, 01:00:36, 01:00:38, 01:00:43, 01:00:45, 01:00:48, 01:00:55, 01:01:00, 01:01:03, 01:01:05, 01:01:07, 01:01:10, 01:01:12, 01:01:14, 01:01:19, 01:01:21, 01:01:26, 01:01:30, 01:01:30, 01:01:33, 01:01:33, 01:01:35, 01:01:39, 01:01:44, 01:01:50

|  |  |
|---|---|
| 01:01:54 | 1 |
| 01:02:01 | 2 |
| 01:02:03 | 3 |
| 01:02:06 | 4 |
| 01:02:09 | 5 |
| 01:02:14 | 6 |
| 01:02:18 | 7 |
| 01:02:18 | 8 |
| 01:02:18 | 9 |
| 01:58:33 | 10 |
| 01:58:33 | 11 |

1   So 11/28 for your master complaint and short form,

2   11/28 for your briefs on discovery in connection with the

3   general causation.  Those were the last two things that I had.

4   Well, I really appreciate this.  It was very helpful

5   to me, and I look forward to helping you all in this

6   litigation, however it may conclude.  And I will get an order

7   out in the next day or two.

8   MR. WILSON:  Thank you, Your Honor.

9   MR. AGNESHWAR:  Thank you, Your Honor.

10  MR. AYLSTOCK:  Thank you, Your Honor.

12  *(Proceedings concluded at 1:58 p.m.)*

13  --------------------

14  *I certify that the foregoing is a correct transcript from the*
15  *record of proceedings in the above-entitled matter.  Any*
    *redaction of personal data identifiers pursuant to the Judicial*
    *Conference Policy on Privacy are noted within the transcript.*

16

17  *Donna L Boland*
    *Donna L. Boland, RPR, FCRR*                11-30-2016
18  *Official Court Reporter*                   Date

19
20
21
22
23
24
25