UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: ABILIFY (ARIPIPRAZOLE) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Cases | Case No. 3:16-md-2734<br><br>Chief Judge M. Casey Rodgers<br>Magistrate Judge Gary Jones |

## ORDER

A dispute between the parties currently exists regarding the permissible scope of the upcoming deposition of Dr. Mahyar Etminan, the lead author of *Risk of Gambling Disorder and Impulse Control Disorder with Aripiprazole, Pramipexole, and Ropinirole: A Pharmacoepidemiologic Study*, 37(1) Journal of Clinical Psychopharmacology, 102–04 (2017) and a non-testifying consulting expert for Plaintiffs since February 2017. The deposition is currently scheduled for May 16, 2017 in Vancouver, Canada.

Defendants first requested to take Dr. Etminan's deposition during a discovery conference call on April 26, 2017. Defendants explained that Dr. Etminan had previously admitted to methodological flaws in a study he authored regarding the Mirena IUD. Plaintiffs objected and argued that allowing Defendants to depose Dr. Etminan would have a chilling effect on scientific research, citing *In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation*, 249

F.R.D. 8 (D. Mass. 2008). The Court disagreed and found the *Bextra* case distinguishable because it focused on the discoverability of peer review information, whereas here the Defendants did not seek discovery into the confidential peer review process but rather into the researcher's methodology supporting a published scientific study the Plaintiffs intend to rely on in an effort to establish general causation. Given the importance of this study as the only epidemiological study on the relationship between Abilify and compulsive gambling currently in existence in the scientific literature, the Court authorized the deposition.

Defendants subsequently submitted a proposed order for the deposition, which included a duces tecum-type request for all "[d]ocuments reflecting communications [by Dr. Etminan] with attorneys representing U.S. plaintiffs." ECF No. 333-1, at 6. This was the first mention that Defendants were seeking discovery of communications between plaintiffs' counsel and Dr. Etminan. After Plaintiffs objected, Defendants voluntarily submitted a revised version of the proposed order, omitting the document request. The Court entered the Order on April 28, 2017, ECF No. 337. At the Case Management Conference on May 5, 2016, and in the corresponding proposed agenda, the parties debated the propriety of allowing Defendants to ask questions of Dr. Etminan about his communications with

Plaintiffs' counsel.[1] The Court ordered briefing from the parties, which has now been submitted.[2]

Defendants propose to question Dr. Etminan about his communications with Plaintiffs' counsel, in an effort to determine whether the communications influenced the study. Defendants agree to limit their inquiry to Dr. Etminan's communications with Plaintiffs' counsel prior to the study's publication date of December 8, 2016, which was two months before he was retained by Plaintiffs. According to Defendants, prior to Plaintiffs retaining Dr. Etminan as a consulting expert, he was merely a fact witness, and thus any pre-retention communications are fully discoverable. Defendants argue further that even if the communications are entitled to protection, Plaintiffs have voluntarily waived the protection. Plaintiffs object to any discovery into communications between Dr. Etminan and Plaintiffs' counsel on two primary grounds: first, that Fed. R. Civ. P. 26(b)(4)(D) protects informal consultation with experts (which is how Plaintiffs characterize Dr. Etminan), and second that the communications with Dr. Etminan are protected opinion work product under Fed. R. Civ. P. 26(b)(3).

---

[1] As used in this Order, "Plaintiffs' counsel" refers to counsel with cases in the MDL.

[2] The parties also briefed the propriety of allowing Plaintiffs' counsel to represent Dr. Etminan at his deposition and any problems that might pose. Subsequently, on May 12, 2017, Plaintiffs' counsel informed the Court that they no longer intend to represent Dr. Etminan at the deposition.

*In Camera* Email Review

As an initial matter, in order to dispel any suggestion of impropriety, Gary Wilson, Co-Lead Counsel for Plaintiffs requested that the Court review emails between himself and Dr. Etminan *in camera*, which the Court agreed to do. The Court has reviewed the handful emails and finds nothing in them to suggest that Mr. Wilson either attempted to influence Dr. Etminan or that Dr. Etminan voluntarily changed any aspect of the study in response to communications with Mr. Wilson. With that said, the emails reference telephone conversations between Mr. Wilson and Dr. Etminan, the content of which is not contained in the emails.

Informally Consulted Expert

In support of their first argument that the pre-retention communications are protected due to Dr. Etminan's status as an informally consulted expert, Plaintiffs point to Federal Rule of Civil Procedure 26(b)(4)(D), which reads, "Ordinarily, a party may not, by interrogatories or deposition discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" except on a "showing [of] exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D). The 1970 Advisory Committee Notes explain that this section "is concerned only with experts retained or specially

consulted in relation to trial preparation," and, therefore, it "precludes discovery against experts who were informally consulted in preparation for trial, but not retained or specifically employed." Plaintiffs cite two cases to support their argument that Dr. Etminan qualifies as an informally consulted expert within the meaning of Rule 26(b)(4)(D): *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496 (10th Cir. 1980) and *USM Corp. v. Am. Aerosols, Inc.*, 631 F.2d 420 (6th Cir. 1980). The Court is not persuaded by either case.

In *Ager*, a medical malpractice case, the defendants propounded an interrogatory to the plaintiff asking whether she had "contacted any person or persons, whether they are going to testify or not in regard to the care and treatment rendered?" *Id.* at 498. Plaintiff objected to the interrogatory and refused to answer on the basis that "an expert who advises a party that his opinion will not aid the party in the trial of the case falls within the definition of experts informally consulted but not retained or specially employed." *Id.* The *Ager* Court acknowledged that under Rule 26, parties are not entitled to discovery of the "information and opinions developed in anticipation of litigation" or "the identity and other collateral information" related to experts who are informally consulted. *Id.*, at 501. The court cited the following factors as important in deciding whether a witness qualifies for this protection as an informally consulted expert:

> (1) the manner in which the consultation was initiated; (2) the nature, type and extent of information or material provided to, or determined

> by, the expert in connection with his review; (3) the duration and intensity of the consultative relationship; and (4) the terms of the consultation, if any (e.g. payment, confidentiality of test data or opinions, etc.).

*Id.*, at 501. The court found that those factors had not been considered by the district court and remanded the case. In *USM Corp.*, Positive Chemical Corporation was notified that the marketer and distributer of its product intended to hold the company liable for defects in the product. Shortly after this notification, Positive Chemical contacted Joseph Marchbank and requested an evaluation of the product defect, which Marchbank provided. The court ruled that the communications were not discoverable because Marchbank was "informally consulted in anticipation of litigation." *Id.*, at 425. Among other things, the court considered that Marchbank received no compensation for his services and "express[ed] his unwillingness to become involved in the . . . dispute." *Id.*

Both *Ager* and *USM Corp.* are readily distinguishable, in that, neither case addresses the propriety of discovery for an informally consulted expert who is later formally retained, which is the case with Dr. Etminan. Additionally, although Plaintiffs rely on *Ager*, they have not provided anywhere near the level of factual detail necessary to address the four factors identified by the Tenth Circuit as being important to this issue. The undersigned has limited understanding of the communications between Dr. Etminan and Plaintiffs' Co-Lead Counsel Gary Wilson and no information at all of communications between Dr. Etminan and other

Case No. 3:16-md-2734

Plaintiffs' counsel. The emails between Dr. Etminan and Mr. Wilson provide little information, certainly not enough for the undersigned to decide the "nature, type and extent of information or material provided to, or determined by, [Dr. Etminan] in connection with his review," or the duration, intensity, or terms of the relationship prior to Dr. Etminan being retained. *See*, *Ager*, 622 F.2d at 501. in the MDL to have had contact with Dr. Etminan. Therefore, the undersigned cannot find that Dr. Etminan was an informally consulted expert prior to being retained by Plaintiffs.

<u>Opinion Work Product</u>

Plaintiffs also argue that, regardless of Dr. Etminan's status, their counsels' communications with him are protected as opinion work product. Rule 26(b)(3) provides that when discovery into trial preparation materials is allowed, the court "must protect against disclosure of mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). This is a fundamental protection grounded in public policy. "Our adversarial system of justice cannot function properly unless an attorney is given a zone of privacy within which to prepare the client's case and plan strategy, without undue interference." *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1014 (1st Cir. 1988). Indeed, "opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and

extraordinary circumstances." *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994) (quoting *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977).

The Court finds that this protection applies to Plaintiffs' counsels' communications with Dr. Etminan, even prior to retention. Defendants argue, however, that Plaintiffs have voluntarily waived the privilege because, "the work-product doctrine does not address situations where a lawyer has input into a published study on which he intends to rely." ECF No. 349, at 6. According to Defendants, Plaintiffs "should not be allowed" to "assert that the [s]tudy is peer-reviewed and independent" without allowing Defendants to test it. *Id.*, at 8.

The undersigned agrees, in part, and finds that Defendants should be allowed to inquire of Dr. Etminan whether his communications with any plaintiffs' counsel influenced the study in some way. With that said, the undersigned does not agree that this necessarily entitles Defendants to discover the mental impressions and litigation strategies of the Plaintiffs' counsel in this MDL. Such a view, if adopted, would implicitly assume that published, peer-reviewed, scientific research is biased unless it can be proven otherwise. The undersigned is not willing to adopt such a skeptical view of research. Skepticism of a research study, even when supported by prior questionable research practices by the researcher, does not constitute the type of extraordinary circumstances required to discover opinion work product. The undersigned is unwilling to find that Plaintiffs waive such a strong protection

without any support that counsel actually had input into the study. At this time, there are no facts to suggest that Plaintiffs' counsel in this MDL in any way affected Dr. Etminan's study, and therefore, Defendants may not inquire into the opinion work product of Plaintiffs' counsel when questioning him.[3] With that said, should it become apparent during the deposition that Plaintiffs' counsel had input into the study or Dr. Etminan's methodology, then the parties may contact Judge Jones or the undersigned for a ruling on whether that input constitutes a waiver of the privilege.

Deposition Scope

Dr. Etminan's deposition was permitted so that Defendants could inquire into any methodological flaws, or author bias, that might exist in connection with the study. To the extent the study was influenced by communications with any plaintiffs' counsel, the communications are relevant and may be inquired into, unless the communications relate to the opinion work product of Plaintiffs' counsel [in this

---

[3] To clarify, Defendants' counsel are permitted to inquire whether Dr. Etminan made any changes to the timing, methodology, or other relevant aspect of the study following communications with Plaintiffs' counsel. To the extent that Dr. Etminan initiated contact with Plaintiffs' counsel, Defendants are free to inquire into his motive and the timing of such contact. However, Defendants may not inquire regarding any opinions or case strategies shared by Plaintiffs' counsel, or any other inquires made by Plaintiffs' counsel that relate to the preparation of their case absent leave of Court, and Plaintiffs' counsel may object if counsel believes the answer will reveal opinion work product.

Case No. 3:16-md-2734

MDL], in which case the parties should seek a ruling from the Court on whether the privilege has been waived.

The parties are notified that any objections raised before 3:00 p.m. (CDT), should be addressed to Magistrate Judge Jones. Any objections after that time should be addressed to the undersigned.[4]

**DONE** and **ORDERED** on this 15th day of May, 2017.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[4] The undersigned will be in a jury trial on the day of the deposition and therefore may not be in a position to take the call immediately but will make every effort to address the matter as quickly as possible.