IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: ABILIFY (ARIPIPRAZOLE)
PRODUCTS LIABILITY
LITIGATION

Case No. 3:16-md-2734

Chief Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

This Document Relates to All Cases
_____/

## OMNIBUS ORDER AND AMENDED CASE MANAGEMENT SCHEDULE

The Court held a hearing on September 26, 2017, to discuss the following motions: (1) Defendants' Motion for Leave to Maintain Provisionally Sealed Filings Under Seal (ECF No. 522); (2) Defendants' Motion for Leave to File Under Seal Portions of Defendants' Motion to Compel Discovery From the Trial Pool Plaintiffs and for Relief From September 22, 2017 Deadline to Depose Plaintiffs, Their Family Members, and Their Physicians (ECF No. 534); (3) Defendants' Motion to Compel Discovery From the Trial Pool Plaintiffs and for Relief From September 22, 2017 Deadline to Depose Plaintiffs, Their Family Members, and Their Physicians (ECF No. 535); and (4) Plaintiffs' Motion to Compel Defendants' Discovery Responses (ECF No. 536). For the reasons discussed on the record at the hearing, and as summarized below, Defendants' motion to

maintain provisionally sealed filings under seal is granted in part and

denied in part, Defendants' motion for leave to seal portions of their motion

to compel is granted, Defendants' motion to compel is granted in part and

denied in part, and Plaintiff's motion to compel is granted in part and

denied in part.

## I. Defendants' Motion for Leave to Maintain Provisionally Sealed Filings Under Seal (ECF No. 522)

The Court entered a protective order in this case on February 9,

2017. (ECF No. 185.) Under the protective order a particular document

may be filed under seal only if authorized by statute or on a showing of

good cause, after balancing the public's right of access against the parties'

confidentiality interests." (*Id.* at 2.) The protective order, however, "includes

no findings regarding the confidentiality of any particular document, nor

does it represent a 'good cause' determination under Rule 26 as to any

document." (*Id.*) Instead, "[a] party seeking to file a document under seal

with the Court must comply with this Court's Local Rule 5.5." (*Id.*)

At the Sixth Case Management Conference on June 30, 2017, the

Court provisionally granted the parties leave to file their *Daubert* motions

and certain supporting exhibits under seal. (ECF No. 411.) The parties

thereafter filed their respective *Daubert* motions and certain supporting exhibits under seal.[1] Defendants also filed a motion to compel the production of Plaintiff's employment authorizations, as well as a supporting exhibit under seal.[2]

Following the conclusion of general causation briefing, the Court ordered "the party with the interest in maintaining a document that was filed under seal during the general causation briefing [to] show good cause for sealing the documents." (ECF No. 486 at 1.)

Accordingly, Defendants filed the instant motion for leave to maintain the provisionally sealed filings under seal. (ECF No. 522.) As support for their request to seal documents Defendants submitted declarations of Debra Feldman, M.D., and Vinu George, M.D., for the Court to review *in camera*.

Defendants argue that with the exception of several exhibits,[3] "the provisionally sealed filings and accompanying exhibits contain (1)

---

[1] ECF Nos. 415, 419, 423–28, 452–53, 455–63, 474, 479–84.

[2] ECF Nos. 443-1, 443-2.

[3] ECF Nos. 452-10 (Ex. I), 452-17 (Ex. P), 453-22 (Ex. 22), 457-7 (Ex. 8), 458-2 (Ex. B), 458-2 (Ex. C), 462-8 (Ex. 9), 462-23 (Ex. 30), 463-5 (Ex. 5), 474, 474-2 (Ex. A), 474-3 (Ex. B), 476-7 (Ex. F), 483, and 483-5 (Ex. EE).

confidential clinical case reports containing study subject information and/or adverse event reports containing patient information; (2) confidential internal company documents and analyses including drafts; (3) confidential internal e-mails; (4) correspondence with and submissions to regulatory agencies that are not publicly available; or (5) the parties' confidential expert reports and depositions which reference confidential internal company documents." (*Id.* at 2–4.)

With respect to the internal documents, Defendants contend that disclosure of documents relating to the pharmacovigilance process and analysis could have a negative impact or chilling effect on future internal pharmacovigilance analyses and documentation of that process. Plaintiffs oppose Defendants' request to maintain these documents under seal, arguing that the public's right of access outweighs Defendants' confidentiality interests.

Plaintiffs also request that the Court maintain certain documents under seal. Plaintiffs seek to seal Defendants' unredacted motion to compel production of Plaintiff's Employment Authorizations, (ECF No. 443-2), and Exhibit A, (ECF No. 443-1) pointing out that the unredacted motion to compel and exhibit contain Plaintiff Lyons' highly confidential medical,

financial, and employment information.  Defendants do not oppose this request.

The public has a "common-law right of access to judicial proceedings," which "includes the right to inspect and copy public records and documents." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (quoting *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001)). The right of access, however, does not apply to discovery and may nonetheless be overcome by a showing of good cause. *Id.*

To determine whether a movant has shown good cause to overcome the public's right of access, courts must "balanc[e] the asserting right of access against the other party's interest in keeping the information confidential." *Id.* at 1246. This includes considering,

> among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Id.* (citations omitted).

"A party's privacy or proprietary interest in information sometimes

overcomes the interest of the public in accessing the information." *Id.*

(citations omitted). "[C]ourts have found that 'a company's interest in the

privacy of its financial records and the terms of confidential agreements . . .

often outweigh the public right of access.'" *MEDai, Inc. v. Quantros, Inc.*,

No. 6:12-cv-840-Orl-37GJK, 2012 WL 2512007, at *2 (M.D. Fla. June 29,

2012) (quoting *Graphic Packaging, Int'l v. C.W. Zumbiel*, No. 3:10-cv-891,

2010 WL 6790538, at *2 (M.D. Fla. Oct. 28, 2010)). Conclusory

statements, however, "concerning the need for confidentiality do not

establish good cause to seal court documents." *Chemence Med. Prods.,*

*Inc. v. Medline Indus., Inc.*, No. 1:13-CV-500-TWT, 2015 WL 149984, at *2

(N.D. Ga. Jan. 12, 2015) (citing *Romero*, 480 F.3d at 1247).

Turning first to Defendants' request to maintain the confidential

clinical case reports (which contain study subject information) and/or

adverse event reports (which contain patient information) under seal, the

Court agrees that the public has no compelling interest in private patient

information which outweighs an individual's interest in maintaining the

privacy of his or her personal and medical information. Accordingly, any

provisionally sealed documents that contain patient information[4] will remain under seal. The parties are directed, however, to review the documents that were provisionally sealed on the basis of patient information to ensure that they do in fact contain private patient information.

Turning next to Defendants' request to maintain confidential internal company documents and analyses including drafts, confidential internal emails, and correspondence with and submissions to regulatory agencies that are not publicly available, the Court finds that these documents should remain under seal. According to Defendants, this information includes their confidential standard operating procedures, nonpublic regulatory submissions analyzing safety issues, drafts of regulatory submissions discussing safety issues, and internal company documents related to analyzing safety issues such as contemporaneously written emails. Standard operating procedures are developed by the company at considerable expense and time and are proprietary to the company. Furthermore, the public does not have a compelling interest in a company's standard operating procedures and disclosure of these procedures could

---

[4] ECF Nos. 457, 457-12 (Ex. 17), 460, 460-13 (Ex. O), 484, 484-3 (Ex. F), and 484-3 (Ex. G).

(and likely would) provide other companies with a competitive advantage.

Additionally, when balancing the public's need to know and a drug manufacturer's obligation to conduct frank, open, and honest conversations as part of the ongoing pharmacovigilance process, there is a serious need to keep those conversations under seal. Disclosure of such information arguably would have a chilling effect on the pharmacovigilance process. The Court therefore concludes there is good cause to keep these documents under seal.

Accordingly, to the extent the provisionally sealed documents relate to Defendants' standard operating procedures, non-public regulatory submissions, drafts of non-public regulatory submissions, or internal communications regarding the pharmacovigilance process, those documents[5] shall remain under seal.

With respect to Defendants' request to maintain under seal the parties' confidential expert reports and deposition testimony, as well as

---

[5] ECF Nos. 415, 415-6 (Ex. 4), 419, 419-33 (Ex. EE), 428, 428-22 (Ex. Y), 428-22 (Ex. Z), 428-22 (Ex. AA), 428-22 (Ex. AB), 452, 452-14 (Ex. M), 452-19 (Ex. R), 453, 453-9 (Ex. 9), 453-23 (Ex. 23), 457, 457-4 (Ex. 5), 457-7 (Ex. 9), 457-12 (Ex. 14), 457-12 (Ex. 15), 457-12 (Ex. 16), 457-12 (Ex. 18), 459, 459-9 (Ex. 12), 459-11 (Ex. 14), 459-13 (Ex. 16), 459-18 (Ex. 21), 462, 462-11 (Ex. 12), 462-11 (Ex. 13), 462-11 (Ex. 14), 462-11 (Ex. 15), 462-15 (Ex. 19), 462-20 (Ex. 24), 462-23 (Ex. 28), 462-23 (Ex. 29), 463, 463-7 (Ex. 7), 479, and 479-5 (Ex. E).

expert testimony at the *Daubert* hearing, which reference confidential internal company documents, Defendants' request is denied subject to sealing any references to documents or information, which the Court has ordered remain under seal.

Plaintiff says that to the extent any documents were presented in open court at the *Daubert* hearing, any confidentiality was waived and therefore the documents cannot now be sealed. The Court disagrees. While there was not a specific request to seal the evidence submitted at the *Daubert* hearing Defendants previously requested and the Court provisionally sealed the motions. The provisional seal arguably extended to the presentation of the motions in open court.

Even though Defendants did not waive confidentiality by presenting sealed information at the *Daubert* hearing the Court concludes that the public has an overriding interest in the opinions of the experts in this case and therefore Defendants have not shown sufficient good cause for a blanket seal on expert reports, expert depositions and expert testimony at the *Daubert* hearing. Further, in view of the minimal references in the expert reports, deposition testimony, and *Daubert* hearing testimony to confidential internal documents, sealing the entirety of each expert's report,

deposition testimony, and *Daubert* hearing testimony is not the least onerous way to maintain the confidentiality of the referenced confidential information. Defendants' request to maintain these documents[6] under seal is therefore denied.

Nevertheless, to the extent there are any specific references in an experts' report, deposition testimony or testimony a the *Daubert* hearing to documents or information referencing information sealed in this order the specific reference in the testimony may be sealed by redacting those portions of the testimony on the public docket. Defendants are directed to obtain the transcript of the testimony of their experts at the *Daubert* hearing and redact any portion(s) of testimony which contains references to sealed information. Defendants shall then provide Plaintiffs with the suggested

---

[6] ECF Nos. 415, 415-5 (Ex. 3), 419, 419-3 (Ex. A), 419-4 (Ex. B), 423, 423-1 (Ex. A), 423-1 (Ex. B), 423-1 (Ex. C), 423-1 (Ex. D), 423-6 (Ex. I), 424, 424-1 (Ex. A), 424-1 (Ex. B), 424-3 (Ex. D), 424-3 (Ex. E), 424-13 (Ex. O), 425, 425-1 (Ex. A), 425-1 (Ex. B), 425-1 (Ex. C), 425-1 (Ex. D), 426, 426-1 (Ex. A), 426-1 (Ex. D). 426-5 (Ex. F), 426-13 (Ex. N), 426-13 (Ex. O), 427, 427-1 (Ex. A), 427-1 (Ex. B), 427-1 (Ex. C), 427-14 (Ex. P), 428, 428-2 (Ex. B), 428-2 (Ex. C), 428-2 (Ex. D), 428-2 (Ex. E), 428-24 (Ex. AD), 452, 452-18 (Ex. Q), 453, 453-1 (Ex. 1), 453-28 (Ex. 28), 455, 455-2 (Ex. B), 455-2 (Ex. C), 455-3 (Ex. D), 455-4 (Ex. E), 455-4 (Ex. F), 455-4 (Ex. G), 455-6 (Ex. I), 456, 456-4 (Ex. D), 456-4 (Ex. E), 456-4 (Ex. F), 457, 457-1 (Ex. 1), 457-1 (Ex. 2), 458, 458-4 (Ex. E), 458-4 (Ex. F), 458-4 (Ex. G), 459, 459-1 (Ex. 1), 459-1 (Ex. 2), 459-3 (Ex. 4), 459-9 (Ex. 10), 459-9 (Ex. 11), 460, 460-1 (Ex. A), 460-1 (Ex. B), 460-1 (Ex. C), 460-6 (Ex. H), 460-8 (Ex. J), 460-13 (Ex. P), 460-13 (Ex. Q), 460-15 (Ex. S), 460-23 (Ex. AA), 461, 461-1 (Ex. A), 461-2 (Ex. B), 461-3 (Ex. C), 461-4 (Ex. D), 462, 462-1 (Ex. 1), 462-1 (Ex. 2), 462-6 (Ex. 7), 462-23 (Ex. 27), 463, 463-2 (Ex. 2), 476, 476-6 (Ex. E), 479, 479-1 (Ex. A), 479-2 (Ex. B), 480, 480-1 (Ex. A), 480-1 (Ex. B), 481, 481-2 (Ex. B), 482, 482-1 (Ex. A), 484, 484-3 (Ex. C), 484-3 (Ex. D), and 484-3 (Ex. E).

redactions.  If Plaintiffs agree to the redactions Defendants must file the redacted testimony and reports. If Plaintiffs do not agree to the redactions Defendants may present the redactions to the Court for *in camera* review so the Court can determine whether the redactions should be sealed.

Finally, Defendants represented at the hearing that they do not oppose Plaintiffs' request to maintain Defendants' unredacted motion to compel production of Plaintiff's Employment Authorizations, (ECF No. 443-2), and Exhibit A, (ECF No. 443-1), under seal. The Court agrees that this information implicates privacy concerns and overcomes any interest in public access. Accordingly, Plaintiffs' request to maintain these documents[7] under seal is granted.

## II.   Defendants' Motion for Leave to File Under Seal Portions of Defendants' Motion to Compel Discovery From the Trial Pool Plaintiffs and for Relief From September 22, 2017 Deadline to Depose Plaintiffs, Their Family Members, and Their Physicians (ECF No. 534)

Defendants seek leave to file portions of their motion to compel discovery from the trial pool Plaintiffs under seal. Specifically, Defendants' motion to compel references information relating to Plaintiffs contained in fact sheets and discovery responses. Although Plaintiffs did not file a

---

[7] ECF Nos. 443-1 (Ex. A), and 443-2.

response to Defendants' motion for leave to file portions of their motion to compel under seal, Plaintiffs represented at the hearing that they do not object to the request.

The Court agrees that good cause exists to file portions of the motion to compel under seal because the motion references confidential personal information, which the public has no interest in accessing. Accordingly, Defendants' motion for leave to file portions of their motion to compel discovery from the trial pool Plaintiffs under seal is granted.

## III.   Defendants' Motion to Compel Discovery From the Trial Pool Plaintiffs and for Relief From September 22, 2017 Deadline to Depose Plaintiffs, Their Family Members, and Their Physicians (ECF No. 535)

Defendants request the Court to enter an order compelling discovery from four of the five trial pool Plaintiffs. In light of outstanding discovery deficiencies, Defendants also request relief from the September 22, 2017 deadline to depose Plaintiffs, their family members, and their physicians.

Turning first to the September 22, 2017 deadline, Defendants argue that the records from doctors, banks, and casinos are vital to have prior to deposing the trial pool Plaintiffs because the Plaintiffs' facts sheets only provide minimal information. Notably, at the hearing Defendants represented that there were approximately 164 outstanding requests for

records. Defendants estimate that it will take approximately two more months to obtain the necessary records, which then need to be processed, followed by scheduling depositions with Plaintiffs and the third-party family members and physicians. Defendants therefore request the Court to extend the deadline to depose the five trial pool Plaintiffs, their family members, and their physicians until February 16, 2018. Plaintiffs do not oppose the extension.

The Court finds that Defendants have shown good cause for the extension of the deposition deadline. Accordingly, Defendants' motion is granted to the extent it seeks relief from the September 22, 2017 deadline. Defendants shall have until February 16, 2018, to depose the five trial pool Plaintiffs, their family members, and their physicians.

With regard to Defendants' motion to compel discovery from four of the five trial pool Plaintiffs, Defendants request the Court to order Plaintiffs Perez, Viechec, Lilly, and Marshall to provide supplemental responses to various discovery requests and the information in their fact sheets.

With regard to Plaintiff Marshall the parties represented at the hearing that the discovery deficiencies were resolved. Accordingly, Defendants motion to compel seeking supplementation of Plaintiff Marshall's responses is denied as moot.

With respect to Plaintiffs Lilly, Perez, and Viechec, Defendants argue that Plaintiffs Lilly, Perez, and Viechec did not provide substantive information in response to various sections of the fact sheets and instead represented they would supplement their responses.

With respect to Plaintiff Lilly, the parties represented at the hearing that Plaintiff Lilly recently supplemented her responses to the best of her ability, with the exception of sections V.A. and V.D.

Likewise, Plaintiff Perez has not yet supplemented her responses to sections V.A. and V.D. Similarly, Plaintiff Viechec has not yet supplemented his responses to sections V.D., V.E., or VI.

Accordingly, Plaintiffs Lilly and Perez are directed to supplement their responses to sections V.A. and V.D. of the fact sheets within seven days. Plaintiff Viechec is directed to supplement his responses to sections V.D., V.E., and VI within seven days.

## IV. Plaintiffs' Motion to Compel Defendants' Discovery Responses (ECF No. 536)

Plaintiffs seek to compel supplemental responses from Defendants in response to their First Set of General Liability Requests for Production. Plaintiffs' discovery disputes can be separated into two categories: general discovery disputes and specific discovery disputes. The Court will address

each category in turn. For the following reasons, the Court finds that

Plaintiffs' motion to compel is due to be granted in part.

## A. General Discovery Disputes

*1. General objections.* Plaintiffs argue that Defendants improperly

asserted "catch all" boilerplate objections to each request for production

using such phrases as the request is overly broad, not proportional, and

that the burden of producing outweighs any benefit without providing any

specificity. Defendant's responses to 109 of 121 of the requests for

production are nearly identical which thwarts Plaintiffs' ability to obtain

straightforward answers. Plaintiffs therefore requested that Defendants

certify under oath that they are not withholding any documents on the basis

of any objection in their written responses to requests for production.

Rule 34 of the Federal Rules of Civil Procedure requires a response

to a request for production to "state with specificity the grounds for

objecting to the request, including the reason." Fed. R. Civ. P. 34(b)(2)(B).

"An objection must [also] state whether the responsive materials are being

withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).

Similarly, Local Rule 26.1(C) states, "[a]n objection to [a] . . . production

request . . . must be set out specifically for the individual . . . production

request . . . [and] cannot be set out generally for an entire set of discovery

requests. Boilerplate objections are strongly disfavored."

General boilerplate objections are improper and not compliant with Rule 34 or Local Rule 26.1(C). Accordingly, to the extent Plaintiffs challenge the boilerplate objections, Plaintiffs' objection is sustained and the Court will deem the boilerplate objections to be a nullity.

*2. Objections based upon privilege.* Defendants also asserted a privilege objection in response to almost every request for production. To date, however, Defendants have not produced a privilege log as required by Fed. R. Civ. P. 26(b)(5). Consequently, Plaintiffs are unable to evaluate Defendants' privilege claims. Plaintiffs request that the Court require Defendants to produce privilege logs concurrently with their document productions so the privilege claims can be evaluated expeditiously.

At the hearing, Defendants represented that they are currently preparing a privilege log but that concurrently producing privilege logs with the rolling document production would make production of the documents within the time constraints set by the Court extremely difficult and substantially slow down the review process.

While Defendants have not provided privilege logs yet Defendants have not waived any privilege. The Court has considered the parties' respective positions regarding the timing of the production of privilege logs.

While production of privilege logs on a rolling basis would expedite Plaintiffs' review of privilege challenges, requiring Defendants to submit a privilege log in conjunction with each set of documents produced on a rolling basis would negatively impact the efficiency of Defendant's review process which in turn would delay the production of documents on a rolling basis. Ultimately, requiring simultaneous production of privilege logs with each rolling production of documents would in the Court's view make the current deadline for substantial completion not realistic.

The Court also recognizes that a delay in submission of privilege logs until after production is substantially complete would cause a delay in Plaintiff's review for privilege challenges which in turn could delay the commencement of depositions by Plaintiffs. To avoid the submission of a privilege log after substantial completion the Court determines that Defendants' proposal of providing an initial privilege log on December 1, 2017, makes sense and would enable Plaintiffs to begin its privilege review for challenges much sooner. Also, as a practical matter the nature and categories for privilege challenges should be more narrowed and focused by that date because the parties will by then have the benefit of the Court's rulings on privilege challenges to the documents produced during general causation discovery.

Accordingly, Defendants must produce their initial privilege log by December 1, 2017, covering all documents produced and withheld through November 22, 2017.  Plaintiffs must serve objections to the privilege log by December 15, 2017.  Defendants must produce their final privilege log by December 22, 2017 with objections by Plaintiffs due December 29, 2017.  Plaintiff's motion to compel relating to privileged documents must be filed by January 5, 2018.  Defendants must respond by January 12, 2018.

With respect to challenges to documents produced during general causation discovery and designated by Defendants on their privilege log the deadline to meet and confer is October 3, 2017.  Plaintiffs' motion to compel any challenges to the documents on the general causation privilege log must be filed by October 9, 2017. Defendants' response must be filed by October 16, 2017.

**B.    *Specific Discovery Disputes***

*1.  Insurance, Indemnity, Shared Liability, Patents and Licensing.*
Defendants objected to Plaintiffs' requests for production regarding insurance, reservation of rights, and indemnity agreements. Defendant Bristol-Myers Squibb Company ("BMS") represents that it maintains self-insured retentions sufficient to cover any award of compensatory damages. Plaintiffs argue that because Defendants have shared, but unequal liability

production of any indemnity agreements is essential with respect to

settlement decisions.

Under Rule 26(a), parties must disclose any insurance policies that

might provide coverage for any of the claims in the case. Fed. R. Civ. P.

26(a)(1)(iv). Rule 26(a), however, only requires the production of actual

insurance policies with insurance businesses. *See In re Zicam Cold*

*Remedy Mktg., Sales Practices, and Prod. Liab. Litig.*, 2010 WL 4715951,

at *1 (D. Ariz. Nov. 15, 2010) (holding that "[b]ecause no insurance

business is party to the agreement, [Rule 26] does not require its automatic

disclosure"). This view is confirmed in the advisory committee's note to

Rule 26(b)(2), which explicitly states that "the provision does not cover the

business concern that creates a reserve fund for purposes of self-

insurance." Fed. R. Civ. P. 26(b)(2) advisory committee's note. The

advisory committee's note also provides that the Rule's requirements do

not extend to cover "the ordinary business concern that enters into a

contract of indemnification." *Id.*

At the hearing Defendants represented that they produced all of the

insurance agreements that exist and are not withholding any insurance

policies, including excess policies.. Defendants also confirmed that BMS is

100 percent self-insured and does not have an umbrella insurance policy.

Otsuka confirmed that is has agreed to produce any insurance agreements.

Lastly, as to indemnity agreements Otsuka and BMS represented that they have produced all agreements which contain indemnity provisions. Accordingly, Plaintiff's motion to compel in this regard is due to be denied.

*2. Refusal to produce because general causation discovery is closed and core discovery has been completed.* Defendants claim in a number of responses that responsive documents already were produced in response to core discovery or general causation discovery. Plaintiffs argue, however, that the parties are still negotiating additional custodians and search terms for liability discovery. Plaintiffs therefore contend that additional responsive documents could exist and be located through the additional custodians and search terms.

The Court discussed with the parties at the hearing the number of custodians and the collection and review process for producing the documents. Defendants explained that in addition to what already has been produced, Defendants are producing all relevant ESI from 55 custodians consistent with the search terms agreed to by the parties. These 55 custodians include the sales representatives who detailed the

health care providers for the pooled Plaintiffs as well as each of the Vice-Presidents for the departments involved in the sale and marketing of Abilify. Thus, Defendants are collecting, reviewing and producing responsive documents from custodians at the low end of the hierarchy and at the top level, where arguably higher level policy decisions are made. In the Court's view while this approach is reasonable it does not include any custodians at the mid-level in the hierarchy, which might possess responsive documents. For this reason the Court directed BMS to include—in addition to the 55 custodians—at least an additional three (3) mid-level employee positions so that Plaintiffs will be able to determine whether there are responsive documents for this class of mid-level employees.

Plaintiffs requested that as part of the rolling production, Defendants should be directed to produce the documents on a custodian-by-custodian basis rather than by batching, the method Defendants are currently utilizing. According to Plaintiffs, production on a custodian-by-custodian basis would permit Plaintiffs to begin depositions before the deadline for substantial completion.

Defendants argued, however, and the Court agrees, that production on a custodian-by-custodian basis for 58 custodians would severely impact

the efficiency of Defendant's review process and could place the current

deadline for substantial completion in jeopardy.

As a compromise and so that Plaintiffs may begin deposing

individuals before substantial completion, Plaintiffs may identify five (5)

priority BMS custodians.[8]  Defendants are required to produce responsive

documents for these custodians on a custodian-by-custodial basis. This

will allow Plaintiffs to review those documents and conduct depositions of

these five (5) priority custodians within a reasonable time frame.

   *3.  Document retention.* Plaintiffs requested production of

Defendants' document retention policies to evaluate any gaps in

Defendants' document production. Defendants object pointing out that at

this juncture there are no allegations or any showing that there has been a

deficiency in production or any spoliation issues.

The Court agrees that in the absence of any suggestion of spoliation

Defendants' document retention policies are not relevant. *See Cableview*

*Commc'ns of Jacksonville, Inc. v. Time Warner Cable Southeast, LLC*, No.

3:13-CV-306-J-34JRK, 2015 WL 12838175, at *6 (M.D. Fla. May 4, 2015)

("[T]he discoverability of document retention policies hinges on whether

spoliation is actually at issue."). Moreover, despite Plaintiffs' contention that

---

[8] Plaintiffs already have identified Dr. McQuade as one of the priority custodians.

the document retention policies would be a minimal burden for Defendants

to produce, the Court recognizes that large pharmaceutical companies'

retention policies likely far exceed a mere few pages. Accordingly,

Plaintiffs' request to compel Defendants to produce their document

retention policies is denied.

*4. Dopamine agonists and similar drugs.* Plaintiffs requested

Defendants to produce information pertaining to other dopamine agonist

drugs, contending that the other drugs are relevant in light of what

Defendants knew about other drugs with similar mechanisms of action.

Defendants objected to these requests arguing that the other drugs are

irrelevant and not proportional to the needs of this case. At the hearing,

Defendants also noted that information regarding the comparisons

between these drugs already has been produced.

As explained at the hearing, in the Court's view information regarding

other drugs is irrelevant and not proportional to the needs of this case. *See*

Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case"). Information regarding second-

generation drugs (while of interest) would not be relevant to any liability

issues regarding Abilify. While other dopamine agonist drugs, such as

Rexulti, might have some of the same general mechanisms of action, the drug was developed ten years after Abilify, has different chemical structures and different indications. Thus, on balance because other dopamine agonist drugs would have marginal relevance at best, production of this information is not proportional to the needs of this case. Plaintiffs' request to produce information regarding other drugs is therefore denied.

5. *Financial reports.* Plaintiffs request production of documents and information related to Defendants' financial reports. Defendants objected because they already have produced documents responsive to these requests. At the hearing, Defendants agreed to supplement their responses to provide Bates numbers identifying which previously produced documents are responsive to these requests. Accordingly, this issue is moot.

6. *Financial incentives.* Defendants objected to Plaintiffs' requests to produce documents pertaining to payments or other financial incentives given to third parties, such as sales representatives, physicians, consultants, or other third-party entities. Defendants contend that this information is not proportional to the needs of this case. Nonetheless, Defendants state that responsive documents contained in the files of agreed-upon custodians already have been produced.

As explained at the hearing, as written the request is overbroad. Plaintiffs, however, may narrow their request to include only the providers of the five trial pool Plaintiffs and related sales representatives. The Court agrees that this information would be relevant, as it pertains directly to physicians who treated the five trial pool Plaintiffs and any sales representatives who may have detailed Abilify to those physicians. The Court notes, however, that the agreed-upon search terms would (and should) include responsive documents related to any financial incentives paid to the sales representatives with regard to the trial pool Plaintiffs.

To the extent Plaintiffs request information related to incentives provided to physicians and consultants who authored articles, Plaintiffs may provide Defendants with no more than five authors or articles. Defendants are the required to search their payment system and produce any responsive documents regarding financial incentives provided to physicians, consultants, or third-parties who authored articles.

7. *Trial pool limitations.* In response to various requests for production, Defendants limited their document productions to documents pertaining to the five trial pool Plaintiffs. Plaintiffs say that Defendants should provide all responsive documents—including documents pertaining to Plaintiffs not included in the trial pool—to shed light on the merits of their

claims. Defendants argue that at this juncture documents responsive to Plaintiffs outside of the trial pool are irrelevant and not proportional to the needs of the case.

The Court agrees that liability discovery at this point should be limited to the five trial pool Plaintiffs. Expanding the scope to all Plaintiffs would be a Herculean task and impossible to complete in the time frame set by the Court. Accordingly, Plaintiffs' request to compel discovery related to other Plaintiffs is denied without prejudice. Plaintiffs will have the right to request additional discovery related to additional Plaintiffs after the trial pool cases have been tried. The Court notes, however, that a majority of the discovery produced at this juncture will nonetheless be applicable to all Plaintiffs.

8. *Internal financial, sales, and marketing documents.* Plaintiffs seek to compel Defendants to produce documents responsive to requests for internal financial information about revenues generated from Abilify sales, as well as requests seeking internal sales and marketing documents. Defendants objected to Plaintiffs' requests arguing that these documents are neither relevant nor proportional and that the requests for production are overbroad. Defendants nonetheless assert that they already have produced documents responsive to these requests.

At the hearing, Defendants agreed to supplement their responses to

these requests for production and provide specific Bates numbers of documents already produced that are responsive to these requests. Plaintiffs also agreed to draft more precise requests pertaining to internal sales and marketing documents.

The Court agrees that internal sales and marketing information, such as historical sales reports and data projections that are used in determining what course of conduct or what marketing to pursue in the future, would be relevant to the claims in this case. Defendants will therefore be required to produce responsive documents pertaining to internal sales and marketing data once Plaintiffs have drafted more precise requests. Thus, to this extent, Plaintiffs' motion to compel is granted.

*9. United States documents only limitation.* Plaintiffs propounded a number of requests for production, to which Defendants responded that they only would produce documents pertaining to the United States. Plaintiffs argue that documents relating to label changes in other countries are relevant given that the label changes in Europe and Canada preceded the label changes in the United States. Plaintiffs therefore seek to compel Defendants to produce documents related to all label changes outside of the United States. Defendants point out that they already have produced documents relating to Europe and Canada, including regulatory filings and

communications, and have agreed to search for and produce documents

relating to any label changes in France and Switzerland.

In light of Defendants' representations at the hearing, Plaintiffs

requested that Defendants certify in writing that there are no other

responsive documents to any label changes in any other foreign countries

relating to impulse control disorders or pathological gambling. To this

extent, Plaintiffs' request is granted. Defendants must produce any

regulatory documents related to label changes in Europe, Canada, France,

and Switzerland concerning impulse control disorders or pathological

gambling that have not already been produced. Defendants must also

provide written assurance that there are no other regulatory documents

related to label changes in other countries that have not been provided to

Plaintiffs.

10. *Other lawsuits and inquiries.* Plaintiffs requested production of

documents related to other lawsuits filed against Defendants, including

claims for improper marketing practices. Specifically, Plaintiffs point to a

December 2016 settlement between BMS and various State Attorney

Generals in a case involving the use of allegedly inappropriate sales and

marketing practices for Abilify. ("AG Case.") (ECF No. 536-3.) Plaintiffs

argue that information related to the AG Case is highly relevant to the

claims in this case, specifically, what allegations led to settlement.

Defendants object arguing that the AG settlement agreement related to off-label marketing practices and specifically excludes impulse control disorders and pathological gambling. Consequently, Defendants claim that the settlement agreement in the AG Case is irrelevant to the issues in this case.

The complaint and the settlement agreement in the AG Case are public. While these documents suggest that the AG settlement may have related to practices and uses that have nothing to do with this case, the Court cannot not make that determination solely based upon review of these documents. So that the Court can resolve whether the AG Case has any relevance to this case Defendants are directed to provide the Court for *in camera* review with copies of the communications between BMS and the AG's concerning the nature of the case and the settlement. After conducting an *in camera* review the Court will then rule on this request.

*11. Non-party employee and sales representative data.* Defendants objected to Plaintiffs' requests for production of documents regarding Defendants' sales force, asserting that the documents are not relevant to this case and not proportional to the needs of this case. Plaintiffs contend, however, that Defendants' sales force is the most critical group of

witnesses relating to the issue of sales and marketing. At the hearing,

Plaintiffs clarified that they are only seeking responsive documents

regarding performance evaluations, bonuses, talking points, and

communications.

As discussed at the hearing, to the extent Plaintiffs request the

production of the entire personnel file for a sales representative,

Defendants' objection is sustained. Wholesale production of personnel files

is not proportional to the needs of the case and most certainly would

contain highly confidential personal information and health information.

However, information concerning financial incentives sales representatives

received and communications between sales representatives and

providers, is relevant and discoverable, whether it is located in a personnel

file or not. Based upon the discussion with counsel at the hearing, this

information appears to be within the scope of the search terms and

custodians to be searched and therefore is subject to production.

12. *Regulatory inquiries and foreign evidence.* As discussed at the

hearing, Defendants already have produced documents responsive to

Plaintiffs' requests for production of documents relating to United States

and foreign regulatory inquiries. As previously discussed, Defendants are

directed to certify in writing that there are no other documents responsive

to these requests, which have not been produced already.

13. *OPC custodians.* At the hearing, Plaintiffs also raised an issue regarding the number of Otsuka Pharmaceutical Company ("OPC") custodians. Plaintiffs say that OPC originally agreed to designate twelve custodians, but are now only agreeing to designate five custodians. Defendants represented that because Plaintiffs only recently inquired about OPC custodians, in light of the short time frame for discovery OPC has identified five of the most relevant OPC custodians.

Because the Court cannot evaluate whether five or twelve custodians is appropriate without knowing their responsibilities and positions within the company the parties should meet and confer to identify the most relevant custodians. OPC should explain to Plaintiffs the reasons for selecting the five custodians and the reasons for discarding the remaining seven, who are no longer included. Plaintiffs may then designate two more OPC custodians (in addition to the five custodians). Plaintiffs may also choose to replace one or more of the five custodians if necessary. The parties are directed to finalize the OPC custodians within five days. In the event the parties are unable to agree the parties may present the issue to the Court for resolution.

## V.  Amended Case Management Schedule

After discussing the scheduling order with the parties at the hearing, the Court and the parties agreed that the case management schedule (ECF No. 273) should be modified, and that consistent with the following schedule, the parties will be able to produce documents, complete depositions, and prepare for trial. Accordingly, the case management schedule for the five trial pool Plaintiffs is amended as follows:

December 18, 2017:  Substantial completion of Defendants' document production.

January 31, 2018:  Plaintiffs' expert report(s).

February 16, 2018:  Deadline to complete depositions of Plaintiffs, their family members, and their treating physicians, and close of fact discovery.

March 9, 2018:  Defendants' expert report(s).

March 16, 2018:  Rebuttal expert report(s).

April 6, 2018:  Deadline to complete depositions of experts.

April 27, 2018:  *Daubert*/dispositive motions.

May 11, 2018:  Oppositions to *Daubert*/dispositive motions.

May 18, 2018:  Replies, if any, limited to new matters not addressed in the original supporting

memorandum.

May 21, 2018:          Target date for *Daubert* hearing.

June 2008:             Pretrial conference and first trial.[9]

## VI.  Conclusion

Accordingly, upon due consideration, it is **ORDERED:**

1.   Defendants' Motion for Leave to Maintain Provisionally Sealed Filings Under Seal, ECF No. 522, is **GRANTED** in part and **DENIED** in part. ECF Nos. 415-6 (Ex. 4), 415-20, 419-33 (Ex. EE), 419-36, 428-22 (Ex. Y), 428-22 (Ex. Z), 428-22 (Ex. AA), 428-22 (Ex. AB), 428-26, 443-1 (Ex. A), 443-2, 452-14 (Ex. M), 452-19 (Ex. R), 452-25, 453-9 (Ex. 9), 453-23 (Ex. 23), 453-32, 457-4 (Ex. 5) 457-7 (Ex. 9), 457-12 (Ex. 14), 457-12 (Ex. 15), 457-12 (Ex. 16), 457-12 (Ex. 17), 457-12 (Ex. 18), 457-13, 459-9 (Ex. 12), 459-11 (Ex. 14), 459-13 (Ex. 16), 459-18 (Ex. 21), 459-19, 460-13 (Ex. O), 460-26, 462-11 (Ex. 12), 462-11 (Ex. 13), 462-11 (Ex. 14), 462-11 (Ex. 15), 462-15 (Ex. 19), 462-20 (Ex. 24), 462-23 (Ex. 28), 462-23 (Ex. 29), 462-25, 463-7 (Ex. 7), 463-8, 479-5 (Ex. E), 479-8, 484-3 (Ex. F), 484-3 (Ex. G), and 484-4 shall remain under seal. With regard to expert reports, expert deposition testimony, and expert *Daubert* hearing testimony the motion is **DENIED**, except as to those specific portions of testimony which concerns sealed information specified in this order. To the extent that these matters are currently under provisional seal, they shall remain under seal until Defendants have provided copies with redactions as to matters that the Court has deemed subject to seal. Defendants shall provide redacted copies to place on the docket within twenty (20) days.

2.   Defendants' Motion for Leave to File Under Seal Portions of Defendants' Motion to Compel Discovery From the Trial Pool

---

[9] The schedule for the pretrial conference and a date certain for trial will be set by the Court via separate order.

Plaintiffs and for Relief From September 22, 2017 Deadline to Depose Plaintiffs, Their Family Members, and Their Physicians, ECF No. 534, is **GRANTED**. ECF Nos. 535-2, (Ex. B), 535-3 (Ex. C), 535-4 (Ex. D), 535-5 (Ex. E), 535-6 (Ex. F), 535-7 (Ex. G), 535-8 (Ex. H), 535-9 (Ex. I), 535-10 (Ex. J), 535-11 (Ex. K), 535-12 (Ex. L), 535-13 (Ex. M), and 535-14 shall remain under seal.

3.     Defendants' Motion to Compel Discovery From the Trial Pool Plaintiffs and for Relief From September 22, 2017 Deadline to Depose Plaintiffs, Their Family Members, and Their Physicians, ECF No. 535, is **GRANTED** in part and **DENIED** in part.

4.     Plaintiffs' Motion to Compel Defendants' Discovery Responses, ECF No. 536, is **GRANTED** in part and **DENIED** in part.

5.     The Stipulated Order Establishing Case Management Schedule, ECF No. 273, is **AMENDED** as provided in this order.

**DONE AND ORDERED** this 29th day of September 2017.

_s/Gary R. Jones_
GARY R. JONES
United States Magistrate Judge