**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: ABILIFY (ARIPIPRAZOLE) PRODUCTS LIABILITY LITIGATION | MDL No. 3:16-md-2734 |
| This Document Relates to the Following Cases:<br>*Perez v. Bristol-Myers Squibb Company, et al.*, 3:16-cv-251<br>*Viechec v. Bristol-Myers Squibb Company, et al.*, 3:16-cv-291<br>*Lyons v. Bristol-Myers Squibb Company, et al.*, 3:16-cv-414<br>*Lilly v. Bristol-Myers Squibb Company, et al.*, 3:17-cv-186<br>*Marshall v. Bristol-Myers Squibb Company, et al.*, 3:17-cv-172 | Chief Judge M. Casey Rodgers<br>Magistrate Judge Gary Jones |

**RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION TO COMPEL**
**THE PRODUCTION OF PLAINTIFFS' ONLINE**
**<u>GAMBLING RECORDS AND FOR INSPECTION</u>**

Defendants have moved to compel forensic inspection of Plaintiffs' computers, cellular telephones, and other devices for accessing the internet, purportedly to determine the scope and duration of Plaintiffs' online gambling activities. As justification for this request, they assert that certain bellwether trial Plaintiffs have failed to disclose significant online gambling activity. Wholesale, unfettered access to all data on all of Plaintiffs' electronic devices is the most intrusive invasion of privacy in today's digital age. Defendants' proposal allows

them to create a mirror image of all computers, smart phones, email accounts, other mobile electronic devices (Kindle, iPad, etc.), hard drives, thumb drives and online accounts.[1] It also allows them access to all of the data that is retrieved from these devices, whether or not it is relevant to the issues in this case.[2] Defendants have not sufficiently shown that allowing this level of intrusiveness will provide them with information not readily available from other sources, and absent such a showing, forensic examination by a third party is overly burdensome, not proportional to the needs of the case, and overly intrusive.

## I.    ISSUES APPLICABLE TO ALL PLAINTIFFS

### a.  Applicable Discovery Rules

Federal Rule of Civil Procedure 26(b)(1) requires the production of discovery materials that are non-privileged, relevant to a claim or defense, and proportional to the needs of the case. At issue here is whether Defendants' request for a forensic examination of Plaintiffs' personal computing devices is relevant to a claim of defense and proportional to the needs of the case. Factors to consider, according to Rule 26(b)(1), include the importance of the information sought to the issues at stake in the action, the parties' relative access to the relevant information, the importance of the discovery in the resolution of the litigation, and the burden of

---

[1] *See* Exhibit 1, Defendants' Forensic Preservation and Inspection Protocol.
[2] *Id.*

producing the discovery relative to the benefit. Even when discovery is otherwise allowed by Rule 26, courts have held that the extent of discovery can be limited when the discovery sought is unreasonably cumulative or duplicative or can be obtained from a source or method that is less burdensome.[3]

There are certainly less intrusive ways to obtain the requested information. Under Rule 34(a), a party may request the responding party to produce and permit the requesting party to inspect and copy any designated documents.[4]  Rule 34(a) does not provide unrestricted access to a producing party's electronically stored information.[5]  "[O]n a motion to compel, a responding party need not provide discovery of electronically stored information from sources that the responding party identifies as not reasonably accessible because of undue burden or cost."[6]

The advisory committee notes to the 2006 amendment to Rule 34(a) state that inspection of a responding party's hard drive is not routine, and such unfettered access should be tempered:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should

---

[3] *Hespe v. City of Chicago*, No. 13 C 7998, 2016 WL 7240754, at *3 (N.D. Ill. Dec. 15, 2016).
[4] Fed. R. Civ. P. 34(a).
[5] *In re Ford Motor Co*., 345 F.3d 1315, 1316 (11th Cir. 2003).
[6] *U & I Corp. v. Advanced Med. Design, Inc*., 251 F.R.D. 667, 674 (M.D. Fla. Mar. 26, 2008); Fed. R. Civ. P. 26(b)(2)(B)

guard against undue intrusiveness resulting from inspecting or testing such systems.

It follows that "[t]he failure to produce discovery as requested or ordered will rarely warrant unfettered access to a party's computer system."[7]

Mirror imaging of Plaintiffs' electronic devices, as sought in Defendants' proposed protocol, will provide unrestricted access to Plaintiffs' accounts. "[W]hen weighing the propriety of mirror imaging, a court should consider such factors as (1) the needs of the case, (2) the amount in controversy, (3) the importance of the issues at stake, (4) the potential for finding relevant material, and (5) the importance of the proposed discovery in resolving the issues."[8]

Defendants cite *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 687 (S.D. Fla. Mar. 5, 2012) in support of their request for forensic examination of Plaintiffs' electronic devices. This reliance is misplaced. In *Wynmoor*, unlike the current case, the plaintiffs were "either unwilling or unable to conduct a search of their computer systems for documents responsive to Defendant's discovery requests."[9] Additionally, the plaintiffs in *Wynmoor* claimed that the hard drive containing electronic copies of work orders had crashed during

---

[7] *Bennett v. Martin*, 928 N.E.2d 763, 776 (Ohio 10th DCA, Nov. 24, 2009) (citing *Bank of Mongolia v. M & P Global Fin. Serv's., Inc.*, 2009 WL 1117312, at *6 (S.D. Fla. Apr. 24, 2009) (courts usually order the appointment of an independent expert to retrieve any responsive files from the producing party's computers).

[8] *In re American Med. Sys., Inc.*, 2016 WL 6666890, at *4–5 (S.D.W. Va. Nov. 10, 2016) (citing *United Factory Furniture Corp. v. Alterwitz*, 2012 WL 1155741, at *3–5 (D. Nev. Apr. 6, 2012).

[9] 280 F.R.D. at 687.

a hurricane and made no efforts to recover the work order data.[10]  The facts of *Wynmoor* bear no resemblance to the facts here where Plaintiffs are willing and capable of performing an ESI search upon instruction and with assistance of counsel and their consultants.

Direct access to another party's databases and devices may be warranted in some circumstances, such as non-compliance with discovery rules, but is not warranted if a party is simply engaging in a "fishing expedition."[11]

### b. <u>The records currently available to Defendants are sufficient to defend against Plaintiffs' claims, and the request is unreasonably cumulative and duplicative.</u>

Before permitting an invasive forensic examination, the Court must look at whether the information Defendants seek is known to exist, and if it does exist, whether that information can be obtained from another source.[12] Where "it is highly probable, if not certain, that the discovery sought [through a forensic examination of a computer system] would be cumulative or duplicative of what has already been obtained," Defendants cannot establish "good cause" as required under Rule 26.[13]

---

[10] *Id.*
[11] *Balfour Beatty Rail, Inc. v. Vaccarello* at *3.
[12] *Bradfield v. Mid-Continental Cas. Co.*, 2014 WL 4626864, at * 4 (M.D. Fl. Sept. 15, 2014).
[13] *Id.*

5

According to Defendants' Motion to Compel, the primary purpose of the proposed forensic inspection of Plaintiffs personal devices is to search for evidence that Plaintiffs engaged in gambling activity before they started or after they discontinued treatment with Abilify. The timing of Plaintiffs' compulsive gambling generally (not internet gambling specifically) is relevant to the issue of specific causation. A secondary purpose, according to Defendants, is to obtain information relevant to the calculation of damages.

Defendants have not demonstrated that they are likely to find any evidence that Plaintiffs engaged in internet gambling over a different time period than they engaged in other forms of gambling, such as casino gambling, for which records have been produced. More importantly, any evidence Defendants obtain through the intrusive protocol they have proposed is likely to be duplicative or cumulative of information already provided by Plaintiffs, including financial records and casino gambling records. In fact, in their motion, Defendants cite to medical and financial records that they claim indicate Plaintiffs were gambling prior to and/or after taking Abilify, and such records are sufficient to raise a specific causation defense. To the extent that Defendants argue that they are seeking information relevant to damages, that is Plaintiffs' burden, and therefore, of no consequence to Defendants. Presumably, Plaintiffs' strongest evidence will be evidence of

financial losses caused by gambling and the onus will be on them to collect and present this evidence.

Further, unlike physical gambling, internet gambling simply cannot be done with cash. Rather, internet gambling requires an electronic financial transaction using credit cards, debit cards, wire or ACH transfers from bank accounts, etc. All of these types of electronic financial transactions already appear in the financial records plaintiffs have produced or provided authorizations for Defendants to obtain. Plaintiffs can, if the Court believes necessary, lengthen the time period covered by such financial records, to address Defendants' concerns both with regard to the time period at which Plaintiffs began or ended their gambling activity, and the dollar amounts of such gambling activity, without the need for the type of intrusive and burdensome search and production of Plaintiffs' devices asked for by Defendants.[14]

### c. Defendants Have Failed to Show that a Forensic Inspection of Personal Devices is Necessary and Proportional to the Needs of the Case.

In determining whether a request for forensic inspection of personal computers and devices is proportional, privacy and confidentiality interests are

---

[14] To bolster their argument for obtaining internet gambling records, Defendants argue that Plaintiffs' financial records indicate payments to many different gambling sites. However, the fact that financial records show transfers of funds to many different web-based addresses is not indicative that Plaintiffs actually gambled on that number of gambling sites. It is very common for a single portal site to use multiple back-end sites and financial transaction processors in order to avoid scrutiny/shutdown by United States authorities.

factors to consider when weighing the burden.[15] Defendants seek to duplicate and inspect individuals' personal computers, phones, and cloud storage, all of which contain vast amounts of private information concerning both the Plaintiffs and other people not party to this suit; such an exercise is not proportional to the needs of the case. "This is not a case in which the information is unavailable from another source. . . Defense counsel simply believes there is something more to find. Moreover, this is not a case in which the particular information sought is known to actually exist."[16]

As noted above, according to Defendants' Motion to Compel, the primary purpose of the proposed forensic inspection of Plaintiffs personal devices is to search for evidence that Plaintiffs engaged in internet gambling activity before they started or after they discontinued Abilify. In support of the necessity of performing a forensic inspection, however, Defendants state only that certain Plaintiffs failed to fully disclose participation in internet gambling, without pointing to any evidence that Plaintiffs have been untruthful or evasive about the timing of the onset or cessation of their compulsive gambling. As discussed in more detail below with regard to each individual Plaintiff, Defendants' allegation has no merit.

---

[15] *John B. v. Goetz,* 531 F. 3d 448, 460 (6th Cir. 2008) ("the district court's compelled forensic imaging orders here fail to account properly for the significant privacy and confidentiality concerns present in this case."); *Hespe v. City of Chicago,* at *4 (citing the Advisory Committee's Notes to Rule 34, which states, in part, "Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.").

[16] *Bradfield v. Mid-Continental Cas. Co.*, 2014 WL 4626864, at * 4 (M.D. Fl. Sept. 15, 2014).

It appears that Defendants do not suspect, but merely hope, that some of the internet gambling in which Plaintiffs engaged will have occurred outside of the time period during which they used Abilify and/or engaged in other forms of compulsive gambling and for which they do not currently have financial records. As one court noted when faced with a similar request: "defendants essentially seek a warrant to search plaintiff's devices for statements with which to impeach her."[17] That court denied the request. Similarly, in a Florida case, the court held that direct access to another party's databases and devices is not warranted if a party is simply engaging in a "fishing expedition."[18] The information Defendants purport to need is available from other sources, and they point to no evidence that they will find internet gambling inconsistent with the timeline established by other gambling records. Defendants are simply on a fishing expedition.

Although Plaintiffs believe that financial and other records will provide sufficient evidence to regarding the relevant issues, Plaintiffs also believe there is a more proportional, less invasive way to conduct a computer and device search, if the Court believes that a search of personal devices is warranted. Plaintiffs are willing to voluntarily produce the information sought regarding online casino activity, to the extent that it exists and remains in their custody and control.

---

[17] *Hespe v City of Chicago,* at *5.
[18] *Balfour Beatty Rail, Inc. v. Vaccarello,* at *3.

Defendants argue that a forensic inspection is warranted based upon Plaintiffs' past failure to produce the ESI discovery they sought. With regard to this issue, the Court should consider the extent to which their failure to satisfy Defendants "is due to an innocent lack of sophistication in retrieving responsive ESI" rather than negligence or intentional manipulation of evidence.[19] There is no evidence in this litigation that Plaintiffs "have intentionally destroyed relevant ESI in the past. . . [or] are unwilling, or will refuse, to preserve and produce all relevant ESI in the future."[20]

Plaintiffs in this litigation have not, to date, been given any coaching or instructions on searching their electronic devices for evidence of internet gambling. If Defendants feel a more thorough search of computers, electronic devices, and cloud-based storage is warranted, Plaintiffs should be provided the opportunity to voluntarily apply a protocol and conduct a search of their own computers, phones, and other devices, as well as cloud-based storage, under the direction of or with technical support from an ESI consultant retained by Plaintiffs if necessary.

### d. **The Protocol proposed by defendants is overbroad, overreaching and overly invasive.**

Defendants' proposed protocol is disproportionate and overreaching to address any perceived discovery needs of Defendants. Rather than restate the

---

[19] *Hespe v. City of Chicago,* at *5.
[20] *John B. v. Goetz* at 460.

specific shortcomings of Defendants' proposed protocol, Plaintiffs refer the Court

to the Declaration of Jonathan Jaffe, attached hereto as Exhibit 2 and the proposed

alternative staged discovery plan contained therein if the Court believes that

additional production of Plaintiffs' records is necessary.

### e.  Unfettered access to Plaintiffs' data is contrary to the discovery precedent requested and set by Defendants.

While asking for something completely different from Plaintiffs in their Motion

to Compel, Defendants have taken exactly the same position with regard to

Defendants' own production in response to Plaintiffs' requests for production as

Plaintiffs take here.  Defendants have been allowed to limit the custodians

searched, make their own selection of the sources of data for each custodian, have

conducted their own search of that data using agreed to search terms, have

produced those records only after manual review for relevance and privilege, and

have produced those records in the non-native format pursuant to the ESI protocol

entered into in this litigation.

Further, even in the limited instances that Plaintiffs' sought native production of

data to Plaintiffs' ESI expert, as, for example, in the case of the Defendants'

adverse event databases, Defendants strenuously objected to Plaintiffs request.

Defendants vehemently opposed a complete production of Defendants' adverse

event database with regard to Abilify to Plaintiffs' ESI consultant in native format,

instead, asking this Court to narrowly limit the data produced.  In final form,

Defendants were only required to search their database for specific search terms,

followed by Defendants' manual review and redaction of records, followed by

production in non-native B2B format, rather than native format.  There is no reason

why a different standard should apply to the search, review, and production of

Plaintiffs' records as that applied to Defendants' records.

**f.  <u>Any Order entered by the Court with regard to this issue should be limited to Plaintiffs Lilly and Marshall.[21]</u>**

Defendants have requested that this Court apply any relief granted to all future

cases in this litigation. Plaintiffs oppose this request because the question of

whether a forensic examination is relevant to the needs of a case is an

individualized inquiry and Defendants are required to show good cause for any

such relief on a case-by-case basis.

Defendants also request that Plaintiffs Viechec and Lyons "certify that they did

not use electronic devices to gamble at any time."  There is simply no basis to

request this type of certification.  There is nothing in the record to suggest that

Plaintiffs Viechec and Lyons have withheld any information about online

gambling.  Furthermore, Judge Jones already denied Defendants' request for Ms.

Lyons cell phone number and cell phone service provider because "there is no

---

[21] While Defendants' Motion also addressed Plaintiff Perez, the Perez case is in the process of being dismissed, so Defendants' issues as to her inconsistencies are now moot.

claim that she used her phone to gamble" and the information is "not relevant and proportional to the needs of the case."  ECF 575, pgs. 9-10.

## II.    <u>JENNIFER LILLY</u>

In addition to the general reasons stated above, Plaintiff Jennifer Lilly opposes this motion for several reasons: 1) contrary to Defendants' assertion, Ms. Lilly did disclose online gambling activity to Defendants, in 145 pages of bank statements attached as exhibits to her Plaintiff Fact Sheets; 2) the requested forensic inspection would, in her case, provide an incomplete picture of her online gambling activity, as she no longer owns the computer on which most of her online gambling was conducted; 3) other, more complete, sources of information about online gambling activity, such as financial records indicating transfers of funds to and from online gambling sites, are available; and 4) Ms. Lilly is willing to voluntarily conduct, with the help of Plaintiffs' ESI consultant, her own searches for relevant internet gambling records, and produce any relevant, non-privileged, records found. For these reasons, a forensic inspection of her personal computers, phones, and other devices according to Defendants' proposed protocol is not proportional to the needs of the case.

### a.  <u>Jennifer Lilly Did Disclose Internet Gambling Activity</u>

Defendants are incorrect in stating that "Lilly has not disclosed any online gambling activity to Defendants."[22] Attached to her Plaintiff's Fact Sheet and Amended Fact Sheet, Ms. Lilly voluntarily produced to Defendants five years of monthly bank statements (2010-2014), Bates stamped NCS000001-NCS000145. On each bank statement, she circled the funds transferred to online casinos, and at the top of each bank statement which included a transfer to one or more online casinos, ***Ms. Lilly hand-wrote "online gambling."*** Contrary to Defendants' assertion that Ms. Lilly did not voluntarily disclose any online gambling in her original Fact Sheet and answers to interrogatories, the documentation provided to Defendants in conjunction with her Fact Sheets clearly demonstrates that Ms. Lilly did not overlook or conceal her online gambling history; she both disclosed it and provided evidence that she had transferred funds to internet gambling websites.

Plaintiffs note that the Plaintiff's Fact Sheet contains a single question (question IV.J) which asks Plaintiffs to "identify the frequency with which you gambled, where you gambled, dates of gambling, type of gambling, and any gambling winnings or debts." The Fact Sheet does not ask specifically about internet gambling. In answering this question, Ms. Lilly focused her response on scratch off lottery tickets (her primary form of gambling after she moved to Florida), and listed a raceway and two casinos (her primary form of gambling

---

[22] Motion to Compel at 5.

when she lived in Connecticut). Although she accidentally omitted listing online

gambling in her narrative response to this question, her history of internet

gambling, including the dates, amount spent, and billing web addresses of internet

gambling sites, was unambiguously provided in the bank statements attached to the

Fact Sheet as Bates NCS000001-NCS000145. As described above, hand-written

notes specifically alerted Defendants to the internet gambling activity documented

in those statements, and funds transferred to internet casinos by bank debit were

circled. In response to Interrogatory Nos. 5, 6, and 7, which ask Plaintiffs to

identify each "establishment, website, online application, or other location at which

you gambled," Ms. Lilly answers by reference to her "Plaintiff's Profile Form,

Plaintiff's Fact Sheet, and any Amendments thereto." There was no intent to

conceal her history of internet gambling, which was documented in the

attachments to her Fact Sheet.

In addition, Defendants assert that Ms. Lilly failed to disclose the existence

of a PayPal account, which they speculate may have been used for internet

gambling. However, Ms. Lilly's PayPal account is linked to her primary bank

account, and therefore any transfers of funds using PayPal are reflected in the bank

records with Bates numbers NCS000001-NCS000145, which were provided to

Defendants with the Fact Sheets. The bank statements indicate both "PayPal" and

the entity to which funds were transferred using the PayPal service. Ms. Lilly does

not recall using her PayPal account for gambling. However, her bank statements, which list any transfers using her PayPal account, were provided to Defendants with the Plaintiff's Fact Sheet and Amended Fact Sheet.

### b. Forensic Inspection of the Devices Currently in Plaintiff Lilly's Possession and Control Would not Provide Complete Information

The proposed protocol drafted by Defendants requires, among other things, certification that the devices provided to the forensic examiner "are the only Devices owned or possessed or used by Plaintiff wherein any alleged gaming information existed or may exist or be stored, or were used to access gambling providers."[23] Ms. Lilly cannot so certify because the computer she used for online gambling beginning in late 2003 or early 2004 was discarded sometime around 2014.[24] She has owned a second computer since 2012, which she also used for online gambling while taking Abilify, but Plaintiffs believe that the bank records Ms. Lilly has provided are a better source of information about her online gambling than that computer.

Ms. Lilly also reports that her iPhone 6 crashed during a software update approximately one month ago, and was reset when she took it for repair. Her data was not backed up to cloud storage before being reset.

---

[23] See Ex. 1 at 1.
[24] Ms. Lilly believes she began taking Abilify in or around December 2003.

Because her devices will not provide a complete record of her internet gambling, whereas her bank records will provide complete documentary evidence of her history of internet gambling, the request for a forensic examination of her devices should be denied.

c. **<u>Defendants Have Failed to Show that a Forensic Inspection of Personal Devices is Necessary and Proportional to the Needs of the Case</u>**

As noted previously, Florida Courts have held that the Court must weigh privacy concerns against the potential utility of a search such as the forensic examination proposed by Defendants.[25] Balancing Ms. Lilly's privacy concerns against the Defendants' discovery concerns, it is clear that her privacy concerns outweigh any need to apply the proposed protocol to her personal computer and devices. Ms. Lilly has consistently complied with discovery requests, she has provided bank records and other evidence of all forms of gambling in which she engaged, and she has not expressed unwillingness or inability to search her personal devices for the requested information. She has demonstrated no deliberate non-compliance with discovery rules.[26] Thus, her conduct in this litigation does not

---

[25] 2009 WL 10670333, at *1

[26] *See Balfour Beatty Rail, Inc. v. Vaccarello*, 2007 WL 169628 (M.D. Fla. Jan. 18, 2007). Her failure to specifically mention internet gambling in her narrative response to PFS question IV.J was merely an oversight, and instances of internet gambling were clearly pointed out to Defendants in the attachments to the PFS.

suggest any attempt to conceal relevant information and Defendants demonstrate no need for an invasive forensic search of her personal computers and devices.

Moreover, where "it is highly probable, if not certain, that the discovery sought [through a forensic examination of a computer system] would be cumulative or duplicative of what has already been obtained," Defendants cannot establish "good cause" as required under Rule 26.[27] According to Defendants' Motion to Compel, the primary purpose of the proposed forensic inspection of Plaintiffs personal devices is to search for evidence that Plaintiffs engaged in gambling activity before they started or after they discontinued Abilify. In support of the necessity of performing a forensic inspection of Ms. Lilly's devices, however, Defendants fail to point to any evidence that Ms. Lilly has been untruthful or evasive about the timing of the onset or cessation of her compulsive gambling. Furthermore, Defendants do not demonstrate that a review of the financial transactions and other evidence of participation in gambling which Ms. Lilly has produced is insufficient to establish the time frame in which she gambled. Because the invasive protocol is unnecessary and likely to provide only cumulative and duplicative evidence, Defendants' Motion should be denied.

Defendants also argue that the relationship between Plaintiffs' claims and their computers is indisputable. Ms. Lilly disagrees. The claims in this case involve

---

[27] *Bradfield v. Mid-Continental Cas. Co.*, 2014 WL 4626864, at *4 (M.D. Fla. Sept. 15, 2014).

a pharmaceutical, Abilify, causing an injury, compulsive gambling. Gambling takes many forms. For Ms. Lilly, the most powerful compulsions involved casino gambling and scratch-off lottery cards. No evidence of these compulsions will be found on her computers or personal devices. She did, at times, also engage in internet gambling, as she has disclosed, but a neutral forensic inspection of her computer is not necessary to obtain information about her internet gambling practices.

If the Court believes that further disclosure of information stored on personal computers and devices is warranted, Ms. Lilly is willing to voluntarily apply a protocol and conduct a search of her own computer and phone under the direction of or with technical support from an ESI consultant retained by Plaintiffs if necessary. It is possible for Ms. Lilly to produce relevant documents, such as emails indicating registration with online gambling websites, account statements, and other pertinent information, such as screen shots of gambling applications, without giving Defendants access to her online accounts or resorting to use of a neutral forensic examiner and the invasive examination protocol Defendants have proposed. While Plaintiffs continue to believe that even this is not necessary, given the financial records already produced, Plaintiffs are willing to do so if required by the Court. The burden and invasion of privacy involved in a neutral forensic examiner's search of personal computers, smart phones, and other devices,

however, is certainly not necessary to obtain the information sought, and such an exercise would not be proportional to the needs of the case.

## III.   BRYAN MARSHALL

In addition to the general reasons stated above, Plaintiff Bryan Marshall opposes Defendants' Motion for several reasons: (1) contrary to Defendants' assertion, Mr. Marshall did not omit the names of online gambling websites, as evidenced in his Plaintiff Fact Sheet and 340 pages of bank statements produced on RecordTrak; (2) such an inspection would, in his case, provide an incomplete picture of his online gambling activity, as he no longer owns the computers and cell phones on which most of his online gambling was conducted; (3) other, more complete sources of information about online gambling activity, such as bank records indicating transfers of funds to and from online gambling sites are available, and (4) Mr. Marshall has committed to  conducting his own searches for relevant internet gambling records.  Thus, a forensic inspection of personal computers, phones, and other devices is not proportional to the needs of the case.

### a.   **Bryan Marshall previously disclosed his internet gambling activity.**

Defendants are incorrect in stating that Plaintiff Marshall "omitted" the names of online gambling websites.[28]  Plaintiff Marshall provided information regarding online gambling websites he recalled in Section IV.K of the Plaintiff

---

[28] Motion to Compel at 7.

Fact Sheet.  Also, Mr. Marshall produced approximately 760 pages of bank

statements which include the transfer information for online gambling websites.

Many of these transactions took place in 2009.  With respect to the recent

transactions in 2017, Plaintiff will supplement his Fact Sheet.  The mere fact that

Plaintiff has recent gambling activity does not justify the invasive protocol

proposed by Defendants.  Indeed, recent gambling activity seems something that is

more appropriately explored during Plaintiff's deposition *and should come as no*

*surprise as continued gambling was noted Section IV.L of Plaintiff's Fact Sheet.*

In response to the Plaintiff Fact Sheet, Mr. Marshall provided the name of a

casino and four online gambling websites.  Although he may have overlooked

other online gambling websites (e.g. Playtika and bldcard.com), his history of

online gambling, including the dates, amount spent, and billing web addresses of

the internet gambling sites, ***was unambiguously provided to Defendants in the***

***bank statements produced*** on RecordTrak (specifically from Academy Bank and

Campus USA Credit Union).

Notwithstanding, Defendants suggest that Mr. Marshall breached a duty to

preserve relevant data which, according to Defendants, was triggered in December

2014.[29]  However, this premise is based on the flawed assumption that Mr.

Marshall was aware or should have been aware of a potential claim and/or had

---

[29] Motion to Compel at 11.

reason to believe that such a claim existed.  Mr. Marshall did not retain counsel
with respect to his Abilify claim until late 2016 and had no reason to be aware that
he had a potential claim against Defendants until that time.  A party's duty to
preserve evidence arises once the party can reasonably anticipate that the particular
issue will be the subject of future litigation.[30]  In Mr. Marshall's case, this did not
occur until late 2016.

### b. Forensic Inspection of the Devices Currently in Plaintiff Marshall's Possession and Control Would Not Provide Complete Information.

As a threshold matter, absent a "[f]actual finding of some non-compliance
with [the] discovery rules," direct access to a party's computer is unwarranted.[31]  In
the present case, there has been no non-compliance that would justify direct access
to Mr. Marshall's devices.  Moreover, Mr. Marshall does not have possession of
the computers used for online gambling.  Indeed, he sold his prior computer to a
pawn shop in approximately 2013.[32]  Mr. Marshall does not possess electronic or
physical copies of documentation regarding the purchases and sales of this

---

[30] *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F.Supp.2d 1317, 1326-27 (S.D.
Fla. Aug. 23, 2010) (citing *Southeastern Mech. Serv's., Inc. v. Brody*, 2009 WL 2242395, at *2
(M.D. Fla. July 24, 2009) (noting that "[o]nce a party files suit or reasonably anticipates doing
so…it has an obligation to make a conscientious effort to preserve electronically stored
information that would be relevant to the dispute.")).

[31] *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003).   *See also John B. v. Goetz*, 531
F.3d 446, 459–60 (6th Cir. 2008) (*citing McCurdy Group, LLC v. Am. Biomedical Group, Inc.*, 9
Fed. Appx. 822, 831 (10th Cir. 2001))( "[M]ere skepticism that an opposing party has not
produced all relevant information is not sufficient to warrant drastic electronic discovery
measures.).

[32] Mr. Marshall began taking Abilify in December 2007.

computer - nor does he recall the names of the pawn shops where the computer was purchased or sold.

More recently, Mr. Marshall accessed a work-issued computer that belongs to a third party. Mr. Marshall used this computer to access his iCloud e-mail account.  Plaintiff does not have control over this computer nor does it belong to him.  To the extent that responsive email exists on the iCloud, they have or will be produced.  Plaintiff submits that the bank records he has provided, in addition to his voluntary search of his iCloud e-mail account, are an appropriate source of information and discovery regarding Plaintiff's online gambling.   Indeed, a protocol that implicates a third-party raises additional privacy and data concerns that are neither appropriately addressed in Defendants' proposed protocol nor justified in the current case.[33]

With respect to cell phone data and/or imaging, Plaintiff Marshall is no longer in possession of his prior cell phones.  One phone was destroyed during a psychotic episode and other phones were returned to the cellular device retailers when Mr. Marshall received upgrades for new cell phones. With respect to Plaintiff's current phone, Mr. Marshall has had this phone for over a year and

---

[33] *See, Med. Components, Inc. v. Classical Med., Inc.*, 210 F.R.D. 175, 180 n. 9 (M.D.N.C. Sept. 27, 2002) ("The current generally prevailing view is that the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a non-party, and that the court should give special weight to the unwanted burden thrust upon non-parties when evaluating the balance of competing needs.").

previously provided Defendants with his cell phone number and carrier, as well as his prior carrier and telephone numbers based on Defendants' representation that the carrier and telephone numbers would be used to identify online gambling activity.  As such, any suggestion that the Mr. Marshall has failed to disclosed relevant information or that his cell phone was not properly preserved is misplaced.[34]

In sum, Plaintiff Marshall has endeavored to provide accurate information through his Fact Sheet and supplemental discovery responses that demonstrate his online gambling activities.  Indeed, volumes of information have been produced through the bank and other documents that are in Defendants' possession. Defendants have not demonstrated a legitimate need to conduct a forensic examination of Plaintiff's device (or that of the Third Party).    Mr. Marshall's bank and other records, which have been produced, provide the best and most complete source of documentary evidence of Plaintiff's online gambling. Defendants' request for a forensic examination of these devices should be denied.

## <u>CONCLUSION</u>

---

[34] Plaintiff previously disclosed (on his Plaintiff Fact Sheet) that he accessed the "Bodog" gambling website.  (Plaintiff accessed "Bodog" during his January 2016 treatment admission). Plaintiff has also access online games called the World Series of Poker and Zynga.  Plaintiff will supplement his earlier discovery response to include these online sites.

For the forgoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Compel.

**Respectfully submitted on this 1st day of December, 2017.**

By: */s/ B. Kristian W. Rasmussen*

B. Kristian W. Rasmussen
FL Bar #:0229430
Cory Watson Attorneys
2131 Magnolia Avenue, Suite 200
Birmingham, AL 35205
krasmussen@corywatson.com
(205) 328-2200

Marlene J. Goldenberg
Goldenberg Law, PLLC
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
mjgoldenberg@goldenberglaw.com
(612) 333-4662

Gary L. Wilson
Robins Kaplan LLP
800 LaSalle Avenue, 2800 LaSalle Plaza
Minneapolis, MN 55402-2015
gwilson@robinskaplan.com
(612) 349-8500

Bryan F. Aylstock (FL Bar No. 78263)
Aylstock, Witkin, Kreis & Overholtz
17 E. Main Street, Suite 200
Pensacola, FL 32502
baylstock@awkolaw.com
(850) 202-1010
*Attorneys for Plaintiff Lilly*

Counsel for Plaintiffs

Behram V. Parekh
Kirtland & Packard LLP
2041 Rosecrans Ave., Third Floor
El Segundo, CA 90245
bvp@kirtlandpackard.com
(310) 536-1000

George T. Williamson
Farr, Farr, Emerich, Hackett, Carr & Holmes
99 Nesbit Street
Punta Gorda, FL 33950
(941) 639-1158
gwilliamson@farr.com

Lexi Hazam
Leif Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
(415) 956-1000
lhazam@lchb.com

Yvonne M. Flaherty
Lockridge Grindal Nauen, P.L.L.P
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401
(612) 339-6900
ymflaherty@locklaw.com
*Attorneys for Plaintiff Marshall*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

I HEREBY CERTIFY that this brief complies with the word limit of Local Rule 7.1(F) and contains 5810 words, excluding the parts exempted by that Rule.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY this 1st day of December, 2017, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via e-mail notification to all registered counsel of record.

*/s/ B. Kristian Rasmussen*
B. Kristian Rasmussen
