IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: ABILIFY (ARIPIPRAZOLE)          Case No. 3:16-md-2734
PRODUCTS LIABILITY LITIGATION

This Document Relates to All Actions          Chief Judge M. Casey Rodgers
                                              Magistrate Judge Gary Jones

_____/

# O R D E R

Pending before the Court is Plaintiffs' Motion to Compel Production
of Certain Documents on Defendants' Privilege Logs.  ECF No. 562.
Defendants have filed an opposition to the motion. ECF No. 573. The
Defendants also submitted for *in camera* inspection forty-two (42)
documents identified on their privilege logs, which were identified in
Plaintiffs' motion to compel.  After submission of the sample documents the
Defendants then submitted for *in camera* inspection, the remainder of the
documents on their respective privilege logs. The Court has conducted an
*in camera* inspection of all of the documents Defendants submitted.

For the reasons discussed below, the Court concludes that Plaintiffs'
motion to compel is due to be granted as to a limited number of documents
and is due to be denied as to the remaining documents on Defendants'
privilege logs. The Court's ruling with respect to each document on the

privilege logs is contained on the modified privilege logs attached to this order as exhibits A and B, and which have been filed under seal.

## I. INTRODUCTION

Plaintiffs challenge Defendants' assertion of privilege concerning various documents Defendants produced during the general causation phase of discovery. The privileged documents are identified on privilege logs Defendants, Bristol-Myers Squibb. Co. ("BMS") and OAPI served on May 3, 2017. The privilege logs identify each document or set of documents by "Family Bates Range," Location, Privilege Claim Status, Date, Custodian, To/Recipients, From, CC's, BCC's, Legal Personnel (Title), Privilege Basis, and Description.  On the initial privilege logs BMS asserted attorney-client privilege or work product protection on 775 documents and OAPI asserted privilege on 661 documents. Between May 2017 and early October the parties conducted a number of meet and confers in an effort to narrow, clarify and resolve the claims of privilege on the privilege logs. During this period of time Plaintiffs withdrew 227 of their challenges to OAPI's logs and 138 challenges to BMS' logs and BMS has withdrawn 246 claims of protection. In an effort to resolve any remaining disputes concerning privileged documents the Court directed Plaintiffs to

file any motions to compel based upon Defendants' general causation

discovery privilege logs by October 9, 2017. The motion to compel that is

the subject of this order is the motion that seeks to compel the documents

on Defendants' privilege logs.

The present motion is based upon 434 remaining claims of protection

in OAPI's log, and 391 claims of protection in BMS's logs.[1]

In Plaintiffs' motion to compel, Plaintiffs identify approximately 138

documents, which Plaintiffs argue underscore their challenges to

Defendants' claims of attorney-client privilege and work-product protection.

Because the Court had mentioned at a hearing that it may need to conduct

some measure of *in-camera* inspection, Defendant OAPI submitted to the

Court for *in camera* review a binder containing ten (10) categories of

documents and an *ex-parte* Declaration of R. Monica Hennessy, a Senior

Corporate Attorney employed by Otsuka Pharmaceutical Development &

---

[1] Because there was confusion regarding whether Defendants in many instances previously had produced attachments to email threads or instead were independently asserting a claim of privilege regarding the attachment, the Court directed Defendants to provide Plaintiffs with a certification as to which attachments Defendants have or will independently produce. Defendants have done so. After reviewing Defendants' certifications Plaintiffs have withdrawn their challenges to 88 entries on OAP's privilege log and to 100 entries on BMS's privilege logs. The withdrawn challenges are detailed in Plaintiffs' notice. ECF No. 615.

Commercialization, Inc. Ms. Hennessy identifies in her declaration the role

of the third parties identified in some of the documents.

BMS also submitted documents to the Court for *in camera* review.

BMS submitted eleven (11) documents or document families for *in camera*

inspection. All of the sample documents OAPI and BMS submitted for *in*

*camera* review were documents listed on Defendants' privilege logs and

cited in Plaintiffs' Motion to Compel. After submission of the sample of

documents, at Plaintiffs' request, the Court permitted Plaintiffs to select an

additional twenty-one documents and directed Defendants to provide those

documents to the Court for *in camera* inspection. The Court thereafter

elected to review all of the documents on Defendants' privilege logs to

ensure that every document withheld was based upon the valid assertion

of a privilege. The Court has now received and reviewed those additional

documents[2] and (as requested by the Court) further affidavits of counsel

---

[2] The documents submitted by BMS for *in camera* review consist of three volumes containing hard copies of documents in both redacted and unredacted form. BMS also submitted 12 Microsoft Excel files on a flash drive. OAPI submitted nine volumes containing hard copies of documents in both redacted and unredacted form. OAPI also submitted a USB drive containing Microsoft Excel files, which are referenced as Vol. X. Tabs 395-407.

detailing pending or threatened legal proceedings.[3]

## II. DISCUSSION

As a general proposition claims of attorney-client privilege and work product protection should be fairly straightforward in application. But, as is the situation in most complex cases litigated in federal court, disputes arise frequently concerning whether documents are privileged. Raising claims of privilege and resolving these claims require the parties to incur great expense and expend extensive time reviewing, identifying and litigating claims of privilege. This case is certainly no different.

Defendants primarily raise two types of privilege claims—attorney-client and work product. While both doctrines protect from disclosure documents and other information, there are differences between the two. With regard to attorney-client privilege the underlying purpose of the doctrine is to encourage the client to communicate freely with the attorney. Work product protection on the other hand encourages careful and thorough preparation by the attorney.  And sometimes both doctrines may

---

[3] The affidavits include the Declaration of Lauren S. Colton, dated November 30, 2017, and the Declaration of Matthew A. Campbell, dated December 1, 2017. The Court also previously received the Declaration of R. Monica Hennessy, a Senior Corporate Attorney for Otsuka in support of Defendants' opposition to Plaintiffs' Motion to Compel.

apply to a single communication. An email or memo may contain confidential legal discussions between client and lawyer and at the same time disclose the preparation by the attorney in anticipation of legal proceedings. But even though a party claims both privileges or protections as to the same document the Court must analyze the applicability of each privilege or protection separately.

In this case, Plaintiffs challenge as a threshold argument the sufficiencies of Defendants' logs. Plaintiffs say that Defendants' logs are so inadequate that the logs as a whole are legally insufficient to raise claims of privilege. Alternatively, Plaintiffs argue that nine specific categories of objections are suspect or insufficient to support Defendants' claims of privilege. The Court will first address the sufficiency of Defendants' logs and then resolve whether Defendants' claims of privilege as to specific categories of documents are well supported.

## I.

### A. Defendants' privilege logs are adequate to assess the claims of privilege.

Plaintiffs argue that the log descriptions are so inadequate that it constitutes a waiver of Defendants' claims of privilege or simply are

insufficient to meet Defendants' burden of establishing that the documents

on the privilege logs are privileged. The Court disagrees for at least two

reasons.

First, the privilege logs contain the information required in the Court's

February 7, 2017, Order for Preservation and Production of Documents,

Electronically Stored Information, and Privileged Documents. (The "ESI

Order.") ECF No. 183. The Court's ESI Order required Defendants to

include on their logs: the nature of the privilege; the factual basis for the

privilege; the date of the document; the name of the author and all

recipients and whether any person identified is an attorney or an employee

of the Defendants' legal department; a description of the general subject

matter contained in the document and the type of document sufficient to

allow Plaintiffs to assess the claimed Privilege and to allow the Court to

rule on the claimed Privilege; the location of the document; and the

custodian. ECF No. 183, ¶ 1.2.  BMS's and OAPI's logs contain this

information.

The privilege logs are consistent with the mandate of Rule 26(b)(5) of

the Federal Rules of Civil Procedure. The Rule requires a party to provide

a document index when a claim of privilege is asserted. The index must

"describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

The information required by the ESI Order is the type of information most courts require a party to include in a privilege log and it is generally accepted practice that this type of information is sufficient for purposes of satisfying Rule 26(b)(5). Other courts, as well, have recognized that a privilege log with the categories of information Defendants included is a proper privilege log. *See, e.g. In re Denture Cream Products Liability Litigation,* case no. 09-2051-MD, 2012 WL 5057844, *9 (S. D. Fla. Oct. 18, 2012; *Arthex, Inc. v. Parcus Medical, LLC,* case no. 2:11-cv-694-FtM-29SPC, 2012 WL 3778981 (M.D. Fla. Aug. 31, 2012)("[a] proper privilege log should contain ... (1) the name and job title or capacity of the author ...; (2) the name ... of each recipient ... ; (3) the date the document was prepared ... and the date(s) on which it was sent to or shared with persons other than the author(s); (4) the title and description of the document; (5) the subject matter addressed in the document; and (6) the specific basis for the claim that it is privileged.")

Although more detail could have been provided in Defendants' privilege logs concerning the description of the documents being withheld, the Court concludes that the descriptions in conjunction with the other information disclosed is sufficient to make Defendants' privilege logs proper for purposes of challenging the privilege asserted.

Even though more information could have been provided in the description portion of the privilege logs, any shortcoming does not impact the determination of whether the privilege has been asserted validly to any particular document because the Court has reviewed *in camera* every document listed on Defendants' privilege logs. Therefore, to the extent Plaintiffs complain that the descriptions are not adequate for Plaintiffs to challenge Defendants' assertion of privilege the Court's *in camera* inspection as a practical matter has remedied any shortcoming about which Plaintiffs complain.[4]

---

[4] While *in camera* inspection should not be a substitute for a properly prepared privilege log, the Court concluded in this case that an *in camera* inspection was the best method of testing the validity of the privilege assertions. The Court initially conducted an *in camera* inspection of a sampling of documents. Although this process was informative and helpful to the Court a full review was necessary to make sure that the privileges asserted were valid. Ultimately, while the privilege logs were better prepared than most privilege logs the Court has reviewed, because of the descriptions of the documents, *in camera* review turned out to be a better and more complete option for reviewing the claims of privilege. *In camera* review also assisted the Court in understanding the context in which documents were generated and enabled the Court

## B.  Defendants' privilege logs are not deficient because Defendants did not identify specific litigation.

Plaintiffs also argue that the privilege logs are deficient because Defendants did not identify specific litigation in order to invoke the work-product protection. This argument fails to take into account that the Court expressly directed Defendants to provide the Court (*in camera*) with a detailed description and chronology of potential, pending and threatened legal proceedings for which Defendants asserted claims of work product protection. The Defendants submitted declarations providing the Court with the requested information, which the Court has utilized in analyzing whether Defendants have asserted the work product protection validly with regard to documents on the privilege logs.

These other legal proceedings include personal injury claims, other product liability claims, marketing claims, patent litigation, regulatory investigations (both domestic and foreign), claims involving other drugs, and challenges to regulatory listings and other contested regulatory

---

to review the documents in the chronological order in which they were generated, all of which was of assistance in determining the applicability of the asserted privileges. Privilege logs are not useless, as other judges have remarked, *see, Marshall v District of Columbia Water & Sewage Authority,* 214 F.R.D. 23, 25 n. 4 (D.D.C. 2003), but rather are an essential tool for determining whether a privilege applies. Sometimes, supplementation is necessary to better understand the assertion of the privilege. This case was one that required further inquiry.

proceedings.

Relying upon cases like *Burlington Industries, Inc. v. Rossville Yarn, Inc.,* case no. CIV.A-495-CV-0401-H, 1997 WL 404319 (N.D. Ga. June 3, 1997), Plaintiffs advance the argument that work product only applies to litigation that is "closely related."  This view is the minority view and is not in keeping with the more accepted view that "[d]ocuments produced in anticipation of litigating one case remain protected in a subsequent case [ ] if they were created by or for a party to the subsequent litigation." *Doe v. United States,* 2015 WL 4077440, at *6 (S.D. Fla. July 6, 2015); *Bituminous Cas. Corp. v. Tonka Corp,* 140 F.R.D. 381, 388 (D. Minn. 1992)("It is the law of this Circuit that the work product doctrine extends to documents prepared in anticipation of or for previous litigation, regardless of whether the previous litigation was related or unrelated to the case in which discovery is sought."); *U.S. v. Leggett & Platt, Inc.,* 542 F. 2d 655, 660 (6th Cir. 1976)(The work product doctrine protects material produced in anticipation of other litigation.); *In re Grand Jury Proceedings,* 43 F. 3d 966 (5th Cir. 1994);

This view is based upon the approach taken by the Supreme Court in *F.T.C. v Grolier Inc.,* 462 U.S. 19, 26 (1983). In *Grolier* the Court held that for purposes of requests under the Freedom of Information Act, protection

exists with respect to subsequent litigation whether or not the latter case was "related" to the case for which the material was originally prepared.

The view that work product extends to other litigation—whether related or not—makes the most sense. It is consistent with the Rule, which does not include any language limiting work-product to materials prepared in the litigation in which the privilege is asserted. Rather, Rule 26(b)(3) broadly states that documents are not discoverable "[t]hat are prepared in anticipation of litigation or for trial by or for another party ... " By its express terms work product should apply to any litigation.

This view is also consistent with the primary purpose of the work product privilege, which is "to assure that an attorney is not inhibited in his representation of this client by the fear that his files will be open to scrutiny upon demand of an opposing party." *In re Murphy,* 560 F. 2d 326, 334 (8th Cir. 1977).

Accordingly, for these reasons, the work product protection is not limited only to "closely related" litigation and applies to any litigation so long as the materials were prepared by or for a party to the subsequent litigation. Defendants' identification of other litigation (in conjunction with their declarations detailing the "other litigation") is sufficient to invoke the work-product doctrine.

**C.    Defendants sufficiently identified counsel on the privilege logs.**

In support of their argument that Defendants' privilege logs are deficient, Plaintiffs argue that for many entries Defendants identified an attorney as the basis for the privilege even though no attorney is identified as an author, addressee, or copyee of the document.  Plaintiffs also point to several documents as deficient because the document only identifies "legal department" or "outside counsel."

Although these complaints have superficial appeal, after *in camera* inspection of the documents the Court concludes that these "deficiencies" neither invalidate the privilege nor establish that the attorney-client privilege or the work product protection does not apply. Many of the documents about which Plaintiffs complain are email communications between corporate employees communicating legal advice from either in-house or outside counsel or contain requests for information from in-house or outside counsel that employees are compiling or obtaining for counsel to provide legal advice or assist in preparation for anticipated (or in many cases) on-going litigation.

Management level employees within complex organizations such as BMS and OAPI are permitted to discuss legal advice sought and given

without losing the privilege. *Long v. Anderson University,* 204 F.R.D. 129 (S.D. Ind. 2001)(email communications between one university employee and another regarding communications they had with university counsel and the legal advice given were privileged.); *In re Vioxx Prod. Liab. Litig.,* 501 F. Supp. 2d 789, 796 (E.D. La. 2007)( privilege extends to "communications between corporate employees in which prior advice received is being transmitted to those who have a need to know in the scope of their corporate responsibilities."). This is so even where the attorney is not identified as an author or addressee of a communication. *Samtrade, Ltd. v. General Elec. Co.,* 150 F.R.D. 539, 545 (E.D. N.C. 1993)("[a] document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds ... In instances where the client is a corporation, documents subject to the privilege may be transmitted between non-attorneys to relay information requested by attorneys.")

With regard to those instances where a specific name is not identified, this is not fatal to the assertion of privilege so long as it is evident that the information being compiled or discussed by corporate employees was information requested by or generated by an attorney. Indeed, it is not uncommon within a complex organization that when a

request for information is made by outside counsel communications among corporate employees transmitting the request for information frequently will simply refer to the request as coming from outside counsel as opposed to a specific attorney or law firm. The important inquiry from a privilege perspective is the nature of the communication and the context in which it is made and not necessarily the precise identification of the source of the request for information. In any event, because the Court has conducted an *in camera* inspection of each of the documents, the Court has been able to examine the context of those documents where the source of the legal request or legal advice is identified as legal department or outside counsel and make a determination as to whether the document is privileged under the attorney client privilege because the document transmits or requests legal advice or the document contains a request by an attorney for information to be used in threatened litigation or ongoing litigation.

## II.

### A.   Plaintiffs' challenges to attachments are largely moot.

Plaintiffs understandably complain that Defendants' logs fail to identify separately the basis of the assertion of a privilege for attachments to emails.

The parties have a different view of how attachments should be

logged on the privilege logs. Plaintiffs say the law requires a party withholding an attachment on the basis of privilege to provide a separate log entry for the attachment. *See, Pensacola Beach Cmty, United Church, Inc. V. Nat'l Union Fire Ins. Co,* 2007 U.S. Dist. LEXIS 16002, at *10 (N.D. Fla. Mar. 7, 2007). Defendants say that the method of logging attachments to emails is specifically addressed in the ESI Order. Under the ESI Order a party is required only to log attachments separately when the attachments are withheld on the basis of privilege. But where a party withholds the attachment as a single privileged communication the party is permitted to log the group of documents as a single entry.

Because it was evident to the Court that there may have been some confusion concerning the logging of attachments and whether a privilege was being raised independently as to the attachment, the Court directed Defendants to provide a certification to Plaintiffs of any attachments noted on the privilege logs that Defendants have produced or will produce. Defendants have now done so.

Thus, the only attachments remaining in dispute on the privilege logs are those attachments to emails, which Defendants contend they do not have to disclose because identification of the attachment would itself disclose the nature of the privileged information. Defendants are correct

that the itemization of attachments that are part of a privileged communication may tend to reveal privileged information. *See, Rhoads Indus., Inc. v. Bldg. Materials Corp of Am.,* 254 F.R.D. 238, 240 (E.D. Pa. 2008).

For example, several of the documents submitted for *in camera* review reflect that certain documents or information is being transmitted to counsel at counsel's request. The document standing alone is not privileged but the fact that a particular document has been requested by an attorney or that a particular document is being transmitted to an attorney at his or her request is subject to the work product privilege. On the other hand, there may be a document that is an attachment but the document was specifically prepared at the request of an attorney and therefore the document is independently subject to the work product privilege, assuming the document was created in anticipation of or incident to on going legal proceedings.

The difference between these two types of scenarios has now been resolved. With regard to documents for which Defendants are not asserting independently a privilege, Defendants have certified that those documents have been or will be produced to Plaintiffs. With regard to the remaining attachments, where disclosure of the attachment would invade the work

product privilege (and in some cases the attorney client privilege) the Court has examined these attachments as part of the *in camera* inspection and determined whether disclosure of the attachment would itself invade the work product privilege. The Court's ruling on attachments therefore has taken this into account.

**B.    Factual material contained in attorney-client emails may be privileged depending upon the context.**

Plaintiffs argue that Defendants improperly have included documents on the privilege logs, which contain factual material prepared by non-attorneys, which is then transmitted to or copied to attorneys. Plaintiffs say that these emails are not subject to the attorney-client privilege because the privilege only protects disclosure of communications and not disclosure of the underlying facts by those who communicated with the attorney. Plaintiffs statement of the law on this issue is generally correct. Simply because factual information has been transmitted to an attorney does not make the underlying factual information privileged.

On the other hand, there is little question that where a client (or agent of the client) submits information to an attorney for legal advice the attorney-client privilege protects the communication from disclosure. *See, Johnson v. Ford Motor Co.,* 2015 WL 5193568, at *3 (S.D. W. Va. Sept. 3,

2015). This applies as well to information gathered by non-attorneys for transmission to an attorney for the attorney to provide legal advice on an issue or to provide legal advice regarding the document or information gathered by the non-attorney employee of the client. *Sky Angel US, LLC v. Discovery Commc'ns, LLC,* 28 F. Supp. 3d 465, 486 (D. Md. 2014)("intracorporate communications concerning information requested by a lawyer for the purposes of rendering legal advice can be protected by the attorney-client privilege."). Thus, "information communicated to an attorney in connection with obtaining or rendering legal advice is properly subject to a claim of privilege, even if the information standing alone would not otherwise be subject to a claim of privilege." *Gen. Elec. Co. V United States,* 2015 WL 5443479, at *1 (D. Conn. Sept. 15, 2015).

Consequently, those emails generated by BMS or OAPI employees transmitting information to in-house counsel charged with the responsibility for the legal proceedings and requesting or receiving legal advice on the matter transmitted are protected from disclosure under the attorney-client privilege. The same applies to emails from BMS or OAPI's counsel requesting information to assist the attorney in providing legal advice. The Court has utilized these principles in its *in camera* review of the documents.

**C.** **It is not necessary that attorneys are copied on or are recipients of emails for the attorney-client privilege to apply.**

There are a number of emails where attorneys are one of a number of recipients merely copied on the communications. As to these emails Plaintiffs argue that the document should not be protected by the attorney-client privilege because the widespread distribution evidences the communication was not prepared primarily to seek legal advice. Plaintiffs suggest these types of emails widely distributed to a number of recipients constitute communications that serve both business and legal purposes and therefore are not privileged.

Defendants point out that the focus of the inquiry is not on whether the attorney is a direct or copied recipient of an email but rather upon whether the email was made for the purpose of securing legal advice or legal services, or conveying legal advice. The number of lawyers or non-lawyers to whom a communication is disseminated is not dispositive of whether the attorney-client privilege applies. *In re Vioxx,* 510 F. Supp. 2d 789, 799 (E.D. La. 2007). In corporate environments involving drug manufacturers—who frequently are involved in product liability litigation and adversarial challenges by regulatory authorities—in-house counsel are involved in coordinating the company's legal position, responding to issues

from outside counsel and advising the company on legal strategies and actions that should or should not be taken with regard to both business and legal issues. The involvement of attorneys with business teams consisting of non-legal personnel is the norm in many corporations. The key question as to whether emails distributed among a business team are subject to the attorney-client privilege is dependent upon whether the attorney is providing legal advice even though the attorney may be a copyee of an email that also contains business advice.

By way of example, drug manufacturers as part of their business deal with regulatory authorities concerning labeling issues for their drug products. Although labeling issues may involve a number of business issues, none of which would be protected by the attorney-client privilege, the request to an attorney and the attorney's advice concerning the legal ramifications of a decision regarding the label of a drug—particularly where the drug manufacturer faces threatened or ongoing litigation—would be subject to the attorney-client privilege. The bottom line is that simply because emails involve multiple recipients or even because some emails circulated among a business team may contain business advice, does not mean that legal advice requested and provided to the corporate decision makers is not privileged. It depends. In conducting the *in camera*

inspection of the documents the Court has utilized these principles in

determining whether an email is subject to the attorney-client privilege.

### D.    Third Party Waiver

 Plaintiffs also challenge a number of privilege log entries because

the emails reflect that the emails were copied to third parties. As a general

proposition, divulgement of privileged materials constitutes a waiver of the

privilege. *See, e.g. St. Andrews Park, Inc. v. United States Dep't of the*

*Army Corps of Engineers,* 299 F. Supp. 2d 1264, 1272 (S.D. Fla. 2003).

Some of the third party entities copied on emails include: a public

relations firm, a marketing firm, communications from Lundbeck, a

pharmaceutical firm and communications to a third-party agency that touts

its ability to craft scientific narratives.

With regard to communications with public relations firms Plaintiffs

argue that communications with public relations firms are not privileged.

*See, e.g. In re Grand Jury Subpoenas,* 179 F. Supp. 2d 270, 291 (S.D.

N.Y. 2001). Although as a general proposition communications with public

relations consultants about non-legal issues might not be privileged, where

the public relations firm is retained to assist the corporation and its

attorneys in responding to anticipated litigation or threatened or ongoing

government investigations the privilege is not lost. *In re Copper Mkt.*

*Antitrust Litig.,* 200 F.R.D. 213, 219 (S.D.N.Y. 2001). As the Court in

*Copper Mkt.* observed when a public relations firm has been retained to

assist the corporate client and its counsel with an ongoing investigation the

public relations firm stands in the same shoes as the corporate client with

regard to communications between the public relations firm and counsel for

the corporate client, or between the public relations firm and the corporate

client "that were made for the purpose of facilitating the rendition of legal

services to the corporate client." *Id.* at 219.

The same principles apply to marketing firms (e.g. W2 Group, Twist

Marketing), retained by Defendants. To the extent these firms were

retained to assist Otsuka's in-house legal departments in monitoring and

analyzing media coverage as part of in-house counsel's strategies and

legal advice relating to threatened and ongoing litigation and actions by

regulatory agencies, the consultants would stand in the shoes of an Otsuka

corporate employee. The key is not whether the entity is a consultant but

rather whether the function performed by the consultant related to assisting

legal counsel in providing legal advice and strategy concerning the legal

position of Otsuka in the media coverage concerning the litigation. In the

world today—where a drug manufacturer may face liability in the hundreds

of millions of dollars in a product liability suit—it is not only common but

necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions. So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries. The Court has utilized these principles in making its *in camera* review.

Lastly, as to Lundbeck, a pharmaceutical company, there is sufficient information provided to the Court *in camera* in the Declaration of Monica Hennessey to establish a common relationship between Otsuka and Lunbeck so that communications between Otsuka and Lundbeck would not constitute a waiver of any privilege that may apply to attorney-client communications.

### E.    Primary Purpose

Plaintiffs also raise a number of challenges to documents on Defendants' privilege logs arguing that the documents are not privileged because the primary purpose of the document relates to Science and Product Promotion, Business Records, Regulatory and Product Labeling and Publicity and Promotion. Again, as a general proposition Plaintiffs are correct that documents generated for the primary purpose of dealing with

business issues and with issues relating to scientific and product safety issues are not privileged even if a lawyer is involved. Where the lawyer is performing a function primarily performed by a corporate employee the communication does not magically become privileged simply because a lawyer is involved.

Conversely, simply because a lawyer is involved with a business related issue does not necessarily mean the communication is not privileged. Regardless of the subject matter of the communication the test "is whether counsel was participating in the communications primarily for the purpose of rendering legal advice or assistance." *In re Vioxx,* 501 F. Supp. 2d at 798.  This applies whether the legal advice is rendered in conjunction with regulatory challenges involving the FDA, global safety issues, pharmacovigilance issues or threatened litigation (whether foreign or in the United States).

Because the determination of the primary purpose of the document in the Court's view is very fact and document specific—and in many cases must be discerned by viewing a chronology of documents—the Court concluded that it must conduct an *in camera inspection* of each of the documents on the Defendants' privilege logs. Although the process was very labor intensive and time consuming, the Court concluded that an *in*

*camera* review of each of the documents was the best available method of

determining whether an email or email thread was privileged because it

related to the request for or the provision of legal advice or whether the

primary purpose of the document was other than for obtaining or providing

legal advice. The Court has conducted its review with these principles in

mind.

Accordingly, to the extent that Plaintiffs have requested the Court to

conduct an *in camera* review of the documents on Defendants' privilege

logs, the request has been granted.

The Court's ruling as to each contested document on the privilege

log is detailed in Exhibits A and B attached to this order. Exhibit A is a

modified version of BMS' privilege log, which includes several, but not all of

the fields on the privilege log BMS submitted *in camera* to the Court.

Exhibit B is a modified version of OAPI's privilege log, which includes

several, but not all of the fields on the privilege log OAPI submitted *in*

*camera* to the Court. The Court's ruling is contained in the last field in each

of the exhibits.[5]

Accordingly, for these reasons, it is **ORDERED**:

---

[5] The notation "MTC" refers to Plaintiffs' motion to compel. The notation "A/C" refers to attorney-client privilege. The notation "W/P" refers to the work product protection.

1.   Plaintiffs' Motion to Compel Production of Certain Documents on Defendants' Privilege Logs,  ECF No. 562, is **GRANTED** to the extent designated on Exhibits A and B and is **DENIED** in all other respects.

2.   Consistent with the Court's November 22, 2017, order, ECF No. 605, Defendants shall have seven (7) days[6] to file *ex parte* and under seal any additional factual information Defendants want the Court to consider with regard to the assertion of privilege. The Court will then issue a further order advising whether its ruling regarding a particular document has changed based upon the additional factual information provided.

3.   In the event Defendants elect not to file additional factual information in further support of their assertion of privilege, Defendants must provide Plaintiffs with all documents on Defendants' privilege logs challenged by Plaintiffs in which  the Court has granted the motion to compel and denied the claimed privilege. Defendants must provide the documents within ten (10) days of the date of this order.

**DONE AND ORDERED** this 29th day of December 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

---

[6] Recognizing that this order was entered shortly before the New Years' holiday, Defendants shall have until **January 8, 2018** in which to provide any further factual information.