## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: ABILIFY (ARIPIPRAZOLE) PRODUCTS LIABILITY LITIGATION | : : : : : : | Case No: 3:16-md-2734 |
| This Document Relates to All Cases | : : : : | Chief Judge M. Casey Rodgers Magistrate Judge Gary Jones |

### PLAINTIFFS' MOTION AND SUPPORTING MEMORANDUM FOR AN ADDITIONAL DAY OF DEPOSITION OF BERIT CARLSON, FOR SANCTIONS AND OTHER RELIEF AGAINST DEFENDANT BRISTOL-MYERS SQUIBB

The Plaintiffs hereby move, pursuant to Federal Rule of Civil Procedure 37 and the inherent power of the Court, for an order imposing sanctions against Defendants Bristol-Myers Squibb, for the pattern of obstructing the discovery process that was employed by Defendants as well as their repeated violations of this Court's discovery orders.

In light of these egregious violations, Plaintiffs respectfully request the following:

1. A complete production of Dr. Berit Carlson's full, unredacted notebooks (subject to a privilege review), dating back to 2003 up to and including

the present day,[1]

2. A full redaction log for all production and/or an audit using TAR ("technology assisted review") to ensure that all relevant documents are being produced for the time periods ordered by the Court.[2]

3. A second deposition of Dr. Carlson, to occur in Philadelphia with Defendants to bear the costs for both the original and second deposition. Given that Dr. Carlson's deposition was noticed in the MDL and cross-noticed in the New Jersey proceedings, Plaintiffs request that Defendants be ordered to comply with New Jersey Rule 4:14-3(f)[3] and ordered not to confer with Dr. Carlson while her deposition remains open.

4. A certification by Defendants, stating that for each custodian in both the general cause and liability phases of the case, Defendants collected non-ESI and produced any documents that were responsive to Plaintiffs'

---

[1] The Court's Order did not allow for redactions for other products. *See* Protective Order, ECF No. 185. In addition, it would seem that many of the redacted notebook entries, when viewed in conjunction with the entries not redacted, would contain relevant information, as discussed in this Motion. Even if the protective order did allow such redactions, Defendants did not comply with it by providing a log of what was redacted. *Id.*

[2] If BMS represented to the Court that there was nothing related to or relevant to the issues in this case, as discussed below, in the notebooks, then neither Plaintiffs nor the Court can rely on that representation for other document productions, particularly in light of the other examples of withheld information that have come to light thus far. The only way to ensure responsive documents were produced is through a full Abilify redaction log and an audit using the TAR process. Further, while Defendants must generally provide a redaction log where there is a redaction for relevance contained within a document, there is currently no provision to provide a log when a whole document is withheld. Given the circumstances here, Plaintiffs ask the Court to expand provision 9.3 of the Protective Order, ECF No. 185, and produce a log of everything withheld on the basis of relevance, including whole documents.

[3] N.J. Rule 4.14(f) states: "Once a deponent has been sworn, there shall be no communication between the deponent and counsel during the course of the deposition while testimony is being taken…"

discovery requests.

5. The full costs of bringing this Motion, and

6. Any other sanction that the Court deems appropriate.[4]

## FACTUAL BACKGROUND

### A. Counsel for BMS Falsely Characterized the Content of the 2009-2012 Notebooks

As the Court may recall, counsel for Plaintiffs informed the Court at the last Case Management Conference that he was unable to complete the deposition of Dr. Berit Carlson (the first liability deposition taken in this MDL) due, in part, to the failure of the Defendants to produce Dr. Carlson's many handwritten notebooks that she had maintained throughout the course of her work for BMS on Abilify. These were revealed by Dr. Carlson during questioning related to her work as a publication planner working with third parties such as Ogilvy who would draft medical manuscripts favorable to Abilify for eventual publication (and in some cases draft full manuscripts of articles before the eventual authors of those articles were ever determined).  In explaining this practice, Dr. Carlson revealed in the deposition that she had kept handwritten notebooks during her entire time working at BMS, and that would likely contain detailed information about this practice, as well as other information relevant to this case.

---

[4] BMS has refused to voluntarily move forward with any of the relief sought in this motion. See Ex. 1, 2/1/2018 Lauren Colton email with Bryan Aylstock.

During the Court's Case Management Conference on January 18, 2018, Lauren Colton, counsel for Defendants, was asked by the Court to address why Dr. Carlson's notebooks were not produced prior to the deposition, and why, following the deposition, BMS was still refusing to produce the notebooks. In response, Ms. Colton told the Court the following:

> [W]e had collected **and reviewed** her notebooks in accordance with the time period for which she was designated and which the parties agreed, and that was 2009 to 2012, and there were not -- *none of the issues in this case that we agreed to address in discovery that Judge Jones ordered us to address in his order came up* during that time period [2009 – 2012].

*See* Ex. 2, Case Management Conference Hearing, Jan. 18, 2018, Tr. at pg. 64, ¶¶ 12–18. (emphasis added). Ms. Colton also stated: "We reviewed her notebooks for anything Abilify-related, **and the issues in there were not responsive or relevant** to what we had to produce pursuant to the request in Judge Jones's order." Id. at ¶¶ 22–25 (emphasis added).[5]

Ms. Colton's statements to the Court were patently false.  These notebooks are replete with Abilify related documents, and ones which were clearly responsive to the Plaintiffs' discovery requests and relevant to the issues in this MDL.  Indeed, the back cover of each notebook produced during the 2009 to 2012 time period contains a large Abilify logo with a statement about warnings as pictured below, one that clearly would have

---

[5] This is exactly what Ms. Colton had represented to counsel previously. *See* Ex. 3, 1/16/2018 Email exchange between Ms. Colton and Bryan Aylstock.

4

tipped off any attorney who was seeking to comply with a Court-ordered discovery request that these notebooks were likely to contain Abilify-related information.



Far from containing nothing "Abilify-related," as was represented by counsel for BMS, these wrongfully withheld notebooks contain critical Abilify-related material that was unavailable to Plaintiffs' counsel at Dr. Carlson's deposition. For example, the September 2008 – February 2009 notebook, includes the following notes: "███████████████████

███████████████████████████████████████████

███████████████████," *See* Ex. 4, BMS_0005605435. Multiple references were also made to Dr. John Tsai and "███████████."

See Ex. Composite 5, BMS_005604703 & BMS_005604454.  Dr. Tsai's peer-reviewed publication, attached hereto as Ex. 6, was highly critical of Abilify and was the subject of an entire line of questioning for Dr. Carlson at her first deposition, given her role in "███████████████" following its publication.  See Ex. 7, Carlson Ex. 43 to her deposition.

Dr. Carlson also records multiple notes about Abilify's mechanism of action ("MOA"), including notes about a "████████████████████ ████████████████████,"[6] (See Ex. 8; BMS_0005604821) and notes involving Dr. Blier (one of Defendant's proffered general causation experts) and the "████████████" at play for various indications for Abilify. See Composite Ex. 9 BMS_0005604591 & 0005605432 ("████████████ ████████████████").  See also Ex. 10 BMS_0005604940 (████████ ██████████████████████████████).    At her deposition, Dr. Carlson was asked about Dr. Blier and she was questioned specifically on Dr. Blier and questioned specifically on Dr. Blier's MOA slide deck (which described Abilify as a D3 agonist), that was in her custodial file.  There is also a note that says "████████████████ ████████████████████████████ ████████████████" *See,* Ex. 11 BMS_0005604643.  Further,

---

[6] Plaintiffs have searched BMS's production to determine whether these MOA videos have been produced, but to date have been unable to identify them.  Had these notebooks been produced prior to her deposition, this issue could have been further explored with Dr. Carlson by counsel.  To the extent the videos have not been produced, they should be produced immediately.

Carlson's notes state "████████████████████████████

████" *See*, Ex. 12, BMS_0005604589.

Also wrongfully withheld is a handwritten note from July 10, 2010,



██████████████████████████" See Ex. 13, BMS_0005604490.  She goes in

her notes from that day to make note of "████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████"[7]  See Ex. 14, BMS_0005604745.

These are but a few examples of notes from the notebooks that clearly

should have been produced prior to her deposition.  Had Plaintiffs' counsel

not asked the right questions at the deposition – or Dr. Carlson not

mentioned them in an attempt to explain away the claim of ghostwritten

Abilify articles – or had the Court not ordered them produced at the last case

---

[7] It is not clear what Dr. Carlson is referring to in this note but because the notebook was wrongfully withheld and Plaintiffs' counsel was denied the opportunity to ask the question.

management conference over BMS's objection – these materials would have never seen the light of day.

Fortunately, and fortuitously, the right questions were asked, and Dr. Carlson revealed them in her deposition: "All of my Abilify notes I have still and they were -- they were copied, all the -- all my Abilify notebooks. No, those -- those notebooks I've always kept with me, because of the legal hold, so they've always been with me even as I've gone to new – other roles." *See,* Ex. 15, Deposition of Berit Carlson, Jan. 12, 2018, pg. 86 ¶¶ 9–16. It is indisputable that these notebooks contained vital information related to Abilify during the 2009–2012 time period.[8]

Of further concern, Dr. Carlson was also a custodian in the general causation phase of discovery, and her notebook was not produced then by BMS, and therefore plaintiffs' counsel had no knowledge of it during that phase. Given her notes about ███████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████, these notebooks should have been produced many moons ago in the general causation phase of this case. Indeed, had the Court decided differently in its

---

[8] For clarification, these quotes are not from the 2003-04 notebooks, which Ms. Colton claimed at the hearing were outside of the period when materials were supposed to be produced. Although these notebooks are also replete with Abilify-related notes, Plaintiffs have limited the documents referenced in this motion to the 2009 – 2012 notebooks that were undeniably part of the discovery ordered by Judge Jones, and unquestionably should have been produced under any fair reading of Plaintiffs' discovery requests served in this case as well as pursuant to the deposition notice *duces tecum.*

Daubert decision, these documents – wrongly withheld – would never have seen the light of day.

In light of their prior conduct, this Court ordered Defendants to produce the entire notebooks, subject only to a privilege review. Despite this Order, BMS chose to produce the notebooks with significant redactions, including redactions labeled "Personal." Even a cursory review of these redactions would lead one to conclude that relevant information is still being withheld and/or redacted. Abilify-related content is mixed in with pages and pages of redactions, and is clearly only understandable in the context of what BMS chose to redact. *See e.g.* Ex. 16, BMS_0005604805. On this page, there is a note in the lower middle part of the page that states: "███████

████████████████████████████████████████

█████████████████. But the entirety of the three pages prior and the two pages following are completely redacted.

Then, a few pages following, there is another stray note surrounded by redactions that states: "████████████████████████

██████████████" *See,* Ex. 17, BMS_0005604809. Given that BMS's counsel previously made representations about the content of these notebooks that have now been proven false, Plaintiffs should not be required to rely upon counsel's statements about what is or what is not "relevant," particularly where the Court's order to produce these notebooks only

9

permitted a privilege review.[9]   Importantly, the statements of counsel to this Court regarding the notebooks were deliberate and considered statements. Indeed, these statements were made to the Court and to Plaintiffs' counsel prior to the court argument (*See* Ex. 3, 1/16/2018 Email Conversation from Lauren Colton), *and* <u>after</u> counsel had looked into the issue and reviewed the notebooks themselves for Abilify-related material.  Then, upon realizing at the hearing that the Court was likely to order BMS to produce all the notebooks (subject only to privilege review), counsel for BMS asked the Court to further brief the issues which, if granted, would have further delayed the production of these materials and pushed the production ever closer to the discovery deadline for the trial pool cases.

And to be clear, Plaintiffs discovery requests clearly encompassed this information, as evidenced by Requests for Production Nos. 2, 5, 7, 11, 12, 19, Plaintiff's First Set of Merits Discovery - Requests for Production of Documents and Electronically Stored Information served December 12, 2016 and Request for Production Nos. 13, 18, 19, 20, 21, 26, 31, 32, Plaintiffs' First Set of General Liability Requests for Production of Documents and Other Tangible Things, served July 27, 2017, *See,* Composite Ex. 18.

---

[9] Further, to the extent that these notebooks do contain information about other drugs, they are all stamped confidential and subject to this Court's protective and confidentiality orders in any event.

**B. Counsel for BMS Confused the Issues by Falsely Representing that Ms. Carlson Was a Publication Planner <u>Only</u> During the Years 2003 and 2004.**

In her attempt to justify the withholding of Dr. Carlson's notebooks, Ms. Colton stated:

> This time period during which Ms. Carlson held the position Mr. Aylstock referred to as, quote, "the publication planner," that's not an official title, but that's -- she did work with publication planning, but that was a position she held in 2003 to 2004, a time period for which she was not designated the custodian and not part of the review.

*See* Ex. 2, Case Management Conference Hearing, Jan. 18, 2018, Tr. at pg. 64, ¶¶ 5–11.  Unfortunately, this statement was also misleading, and as a result the Court was misled into only ordering the production of notebooks during a time period that Dr. Carlson was mostly working as a Medical Safety Liaison (MSL), and not during many of the critical years when she was a publication planner.

Notably, Dr. Carlson's CV states that from 2003–2004, Carlson served as a Medical Science Liaison. *See* Ex. 19, Berit Carlson CV.  From 2004-2006 she served as Manager, US Neuroscience Medical Strategy.  It was in this position that Dr. Carlson began to serve in the role of a publication planner.  This is consistent with her sworn testimony where she stated that she first assumed the role of publication planner "around 2005." *See* Ex. 20, Deposition of Berit Carlson, Jan. 12, 2018, pg. 118 ¶¶ 1–10; *see*

11

*also* Ex. 21, BMS__005448920 (dated 9/21/05),[10] ███████████

███████████████████████████████████████

███████████████████████████████████████

███████.

Later, in 2006, Dr. Carlson moved into the role of Associate Director of US Neuroscience Medical Strategy. *See* Ex. 19, Berit Carlson CV. Clearly Medical Strategy is the division of BMS that oversees the publication of scientific articles about Abilify, and clearly Dr. Carlson served in Medical Strategy positions from 2004 through 2012, not only from 2003 to 2004 as was represented to the Court at the CMC.

Based upon this misstatement, this Court in its written order required these notebooks to be produced only for the years 2003 to 2004. Under any fair reading of the transcript of the hearing, this Court intended to require BMS to produce the notebooks for all periods of time when Dr. Carlson acted as a publication planner. Yet, when asked by Plaintiffs' counsel to produce the notebooks for the missing years, BMS flatly refused. *See* Ex. 1, 2/1/2018 Email Conversation from Lauren Colton.

These notebooks, which BMS is still refusing to produce, clearly contain relevant information that would be responsive to the Plaintiffs'

---

[10]  Tellingly, this document was one of the more than two thousand documents produced just a few days prior to Dr. Carlson's deposition and providing Plaintiffs' counsel no opportunity to question Dr. Carlson about it.

discovery requests.  They should have been produced during the general causation phase, but were not.  They should have been produced during the liability phase, but were not.  Then they should have been produced prior to her deposition, for the deposition notice contained a *duces tecum* that clearly encompassed such documents.  See Ex. 22, Notice and Email confirmation that Notice was Served (requesting Dr. Carlson to bring to the deposition, among other things, "All DOCUMENTS in YOUR possession, custody or control regarding "Abilify (Aripiprazole))."

Unfortunately, Dr. Carlson was never even shown the notice by her counsel and thus failed to bring any of the notebooks with her to the deposition.  *See* Ex. 23, Deposition of Berit Carlson, Jan. 12, 2018, pgs. 27-29. And to make matters worse, BMS's counsel reviewed these documents, and by their own admission, deliberately withheld them.  In light of the misrepresentations made to the Court at the hearing, BMS should be required to produce all of Dr. Carlson's handwritten notebooks for all times periods in which she worked on Abilify.

## C. BMS's Discovery Violations Are Indicative of a Pattern of Conduct

Plaintiffs do not believe these notebooks to be an isolated incidence of Defendant's counsel withholding relevant documents based upon their own subjective (and wrong) determination of what is "relevant" to this case.  Although

13

liability depositions have only recently commenced, Plaintiffs have already identified a number of concerning examples.  For example, Altaf Shamji testified that he kept handwritten notes and that he memorialized those notes in e-mails, PowerPoints, and Microsoft Word documents. Mr. Shamji further testified that he kept a drawer full of documents that he left at BMS when he stopped working on Abilify. *See* Ex. 24, Deposition of Altaf Shamji, pages 311–313, 344–346.  Like Carlson,[11] Shamji properly preserved his documents pursuant to the litigation hold put in place by BMS, and all of his documents were left in his office when he went out on medical leave, leaving them exclusively in BMS's possession.  *See*, Ex. 24, Deposition of Altaf Shamji, pages 345:22-346:10.  Despite this fact, Plaintiffs have conducted a thorough search and have not located any of these documents in BMS's production.  Plaintiffs e-mailed Defense counsel asking if this information had been produced and received answers that skirted Plaintiffs' questions each time.  Ex.27, E-mail correspondence between Plaintiffs' counsel Marlene Goldenberg and Defense counsel Lauren Colton.

Similarly, Juliana Puckett testified that it was her practice to take handwritten notes on the presentation handouts at the meetings she attended. *See* Ex. 28, Deposition of Juliana Puckett, pages 22–23, 204–205, 213–215. Further, she testified that she turned over all of her handwritten notes to Iron Mountain

---

[11] Carlson testified that she received notice of BMS's litigation hold letters early in her tenure after she started her job at BMS in 2003 (*see*, Ex. 25, Deposition of Berit Carlson, page 32, ¶¶ 2-12) and pursuant to that litigation hold maintained her handwritten notes and had them copied and sent to Iron Mountain (*see*, Ex. 26 Deposition of Berit Carlson, pages 39:22-40:6)

when she stopped working on Abilify. *Id.* Once again, Plaintiffs have conducted a thorough search and received no documents with handwriting that would fit the description of Puckett's testimony.

## **LEGAL SUPPORT**

Rule 37(b)(2) of the Federal Rules of Civil Procedure governs the imposition of sanctions for failing to comply with a discovery order. The Court has great latitude to formulate appropriate sanctions, and the Rule specifically states they may include:

i.   directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

ii.   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

iii.   striking pleadings in whole or in part;

iv.   staying further proceedings until the order is obeyed;

v.   dismissing the action or proceeding in whole or in part;

vi.   rendering a default judgment against the disobedient party; or

vii.   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37.

The most drastic sanction the Court can enter for a discovery violation is an entry of default judgment. *See Wellness International Network, Ltd. v. Sharif*, 2013 WL 4441926 at * 23 (7th Cir., Aug. 21, 2013). To place a defendant in default as a discovery sanction, the Court "must find by clear and convincing evidence that the party against whom the sanction is imposed displayed willfulness, bad faith, or fault." *Id*.

The Court has wide latitude to fashion a host of other sanctions under Rule 37, even in the absence of willfulness, bad faith or fault. *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994). The Court can also enter sanctions for discovery abuses, as it sees fit, pursuant to its inherent powers. *See Barnhill v. U.S.*, 11 F.3d 1360, 1367 (7th Cir. 1993); *Jones v. Bremen High School District 228*, 2010 WL 2106640 (N.D. Ill. May 25, 2010). The touchstone of a Rule 37 sanction is proportionality, that is, the sanction should be proportional to the discovery violation. A district court has broad discretion in fashioning a sanction in order to punish serial discovery misconduct that involves both violation of a court order and fault (willfulness or contumacious disregard is not required) on behalf of the noncompliant party. *Patterson v. Coca-Cola Bottling Co. Cairo-Sikeston, Inc.,* 852 F.2d 280, 283 (7th Cir. 1988). The district court must consider the gravity of the misconduct, the prejudice if any to the opponent, and whether the non-compliant party's position (on the merits) has any possible merit. *Bolt v. Loy*, 227 F.3d 854, 856-57 (7th Cir. 2000). No single factor is dispositive,

or even necessary. Thus, by way of example, a district court's authority to dismiss a case is not dependent on a showing of prejudice. *Daniels v. Brennan*, 887 F.2d 783, 788 (7th Cir. 1989).

Further, Rule 37 permits a court to grant sanctions if there is noncompliance with a court order, "notwithstanding a lack of willfulness or bad faith, although such factors 'are relevant ... to the sanction to be imposed for the failure.'" *In re Seroquel Prod. Liab. Litig.*, 244 F.R.D. 650, 656 (M.D. Fla. 2007) (citing 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE & PROCEDURE § 2283, at 608 (2d ed.1994)); *see also Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 671 (7th Cir.1996) ("Bad faith ... is not required for a district court to sanction a party for discovery abuses. Sanctions are proper upon a finding of willfulness, bad faith, or fault on the part of the noncomplying litigant."); *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 78, 88 (D.D.C.1998) ("In making the determination of whether to impose sanctions, Rule 37(b)(2) does not require a showing of willfulness or bad faith as a prerequisite to the imposition of sanctions upon a party." (citations omitted)). Overall, the district court has broad discretion to fashion appropriate sanctions for the violation of discovery orders.

In *In Re Pradaxa Products Liability Litigation*, the defendants committed various discovery abuses, which Judge Herndon stated were "egregious in the eyes of the Court." *See* Ex. 29, 3:12-md-02385, ECF No. 441. In response to the

Plaintiffs' Motion for Sanctions, the Court directed the Plaintiffs to rent office space in Amsterdam so that certain depositions could be retaken. The Court also ordered the Defendants to pay the costs of the office space, in addition to all the costs of the depositions, and the court fined both defendants, jointly and severally for $931,500.00. Judge Herndon noted that the sanctions were "designed to let the defendants know that the Court's order and the Court deserve respect." *Id.* at page 6. He also stated that "[i]f a somewhat forceful reminder of those tenants in the law must be sent to defendants for their misdeeds which demonstrate something to the contrary, so be it. Never should such reminders shock any one's conscience. Here, the first one was quite modest indeed." *Id.*

Here, Plaintiffs have learned of a number of items, including notebooks and handwritten notes that were not produced by Defendants, in violation of the Court's Discovery Orders. Defendants have misled Plaintiffs and the Court about the contents of the notebooks, and even though the notebooks clearly contain relevant information, Defendants have thrown up one roadblock after another to deny and then delay their production.   Sanctions are warranted because of Defendants' repeated disregard for the Court's Orders. This behavior cannot be tolerated. The integrity of the MDL process is at stake.

## CONCLUSION

Plaintiffs move, pursuant to Federal Rule of Civil Procedure 37 and the inherent power of the Court, for an Order imposing sanctions against Defendants,

as a result of a pattern of obstruction employed during discovery by Defendants and repeated violations of the Court's discovery Orders by Defendants. Plaintiffs request: full, unredacted notebooks, for all years discussed, full redaction log for all production and/or an audit using TAR to ensure that all relevant documents are being produced in accordance with the Court's Orders and the Plaintiffs' discovery requests, a second deposition of Dr. Carlson to be conducted in Philadelphia, including costs for both depositions, the full costs of bringing this Motion, and any other appropriate sanction that the Court deems appropriate.

Respectfully submitted this __ day of February 2018.

By: **/s/ *Bryan F. Aylstock***
Bryan F. Aylstock (FL Bar No. 78263)
Aylstock, Witkin, Kreis & Overholtz
17 E. Main Street, Suite 200
Pensacola, FL 32502
baylstock@awkolaw.com
(850) 202-1010

B. Kristian W. Rasmussen
FL Bar # 0229430
Cory Watson Attorneys
2131 Magnolia Avenue, Suite 200
Birmingham, AL 35205
krasmussen@corywatson.com
(205) 328-2200

Jennifer R. Liakos
Napoli Shkolnik, PLLC
525 South Douglas St., Ste. 260
El Segundo, CA 90245
jliakos@napolilaw.com
(310) 331-8224

Gary L. Wilson
Robins Kaplan LLP
800 LaSalle Avenue, 2800 LaSalle Plaza
Minneapolis, MN 55402-2015
gwilson@robinskaplan.com
(612) 349-8500

Behram V. Parekh
Kirtland & Packard LLP
2041 Rosecrans Ave., Third Floor
El Segundo, CA 90245
bvp@kirtlandpackard.com
(310) 536-1000

George T. Williamson
Farr, Farr, Emerich, Hackett, Carr & Holmes
99 Nesbit Street
Punta Gorda, FL 33950
(941) 639-1158
gwilliamson@farr.com

Lexi Hazam
Leif Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
(415) 956-1000
lhazam@lchb.com

Marlene J. Goldenberg
Goldenberg Law, PLLC
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
mjgoldenberg@goldenberglaw.com
(612) 333-4662

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

Pursuant to Local Rule 7.1(B), counsel for Plaintiffs certify that on January 31, 2018, counsel for Plaintiffs contacted Defendants' counsel regarding the relief requested in the foregoing motion. Defendants do not consent to the relief requested.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I hereby certify that this brief complies with the word limit of Local Rule 7.1(F) and contains 4,451 words, excluding the parts exempted by that Rule.

## CERTIFICATE OF SERVICE

I, hereby certify that on February 12, 2018, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*s/ Bryan F. Aylstock*

Bryan F. Aylstock