IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: ABILIFY (ARIPIPRAZOLE)
PRODUCTS LIABILITY LITIGATION,     Case No. 3:16-md-2734

Chief Judge M. Casey Rodgers
Magistrate Judge Gary Jones

This Document Relates to All Cases
_____/

# **O R D E R**

Pending before the Court is "Plaintiffs' Motion and Incorporated Memorandum of Law to Conduct Limited Additional Discovery Regarding Information Found in Recently Produced Audit Reports, Pursuant to Court Order, ECF No. 831." ECF No. 847. Defendants have filed a memorandum in opposition, ECF No. 856, and the motion is otherwise ripe for review. For the reasons discussed below Plaintiffs' motion is due to be granted to the limited extent discussed in this order.

## **BACKGROUND**

The dispute underlying this motion began after OAPI produced an October 2015 document entitled "Joint Routine PV Audit BMS Audit of Otsuka." The document suggested that joint periodic audits of Otsuka were conducted from 2006 forward. The purpose of the audits was to assess compliance with clinical and safety pharmacovigilance at OAPI, primarily

concerning Abilify.®

The Court first addressed the issue at the February 26, 2018 hearing. As the Court explained then, both sides presented colorable arguments whether the audit reports were or were not within the scope of the requests for production served by Plaintiffs. The Court, however, determined that—at least the October 2015 document provided to the Court—contained information relevant to the issues in the case and therefore should be made available to Plaintiffs.[1]

According to OAPI, the audits were initiated in 2006 and consist of methods for the audit, results of the audit and where appropriate corrective action taken. This audit information is included in one document. On March 1, 2018, after conducting a hearing, the Court granted Plaintiffs' request for production of the audit documents and directed OAPI to produce the audit reports so that Plaintiffs would have the documents available for use at the 30(b)(6) depositions scheduled for March 8 and 9, 2018.[2]  On March 5, 2018, and within the time limits set by the Court, OAPI produced the audit reports.  The March 5, 2018, production of the audits reports, however,

---

[1] ECF No. 767, p. 2.

[2] *Id., p.3.*

was after Plaintiffs had just completed the depositions in Japan of two Otsuka representatives. Consequently, Plaintiffs' counsel was not able to use the audit reports during those depositions.

After production of the audit reports the 30(b)(6) depositions of Defendants' medical affairs representatives went forward. Although Plaintiffs had the audit reports available for the medical affairs 30(b)(6) depositions Plaintiffs were unable to conduct meaningful examination about the audit reports because the medical affairs representatives were not familiar with the audit reports since the audits concerned pharmcovigilance and not medical affairs.

Plaintiffs then raised the issue with the Court at the April 2, 2018 hearing, requesting for the first time, that the Court permit Plaintiffs to conduct additional 30(b)(6) depositions from each Defendant.[3] Because of the nature of the issue the Court directed the parties to brief the issue so that the Court would be able to make a fully informed decision. The parties have now done so.

## DISCUSSION

Plaintiffs' motion presents the issue of whether the Court should

---

[3] ECF No. 831.

permit them to take depositions past the discovery deadline. Central to the Court's determination is whether Plaintiffs have exercised sufficient diligence in pursuing the requested discovery. Because conducting the requested depositions would occur after the deadline for discovery the Court established in the case management and scheduling order, Plaintiffs are required to show due diligence. *See, e.g. Sosa v. Airprint Sys., Inc.,* 133 F. 3d 1417, 1418 (11th Cir. 1998)(good cause requires a showing that the schedule cannot be "met despite the diligence of the party seeking the extension."); *Williams v Blue Cross and Blue Shield of Florida, Inc.,* Case No. 3:09cv225/MCR/MD, 2010 WL 19720, at*1 (N.D. Fla. Aug. 26, 2010). Secondly, if Plaintiffs have shown due diligence the Court must determine whether the discovery is not just relevant but important to the case.

Turning first to Plaintiffs' diligence, Defendants highlight that the existence of audits between BMS and OPC was not an unknown earlier in this case, pointing to scribe notes produced in March 2017, and OPC-BMS PV Agreements produced as early as June 2016, which disclose the existence of audit rights. While these documents certainly make reference to and suggest that OPC and BMS had entered into agreements explicitly authorizing data exchange and the right and obligation to conduct audits,

the PV agreements did not disclose whether the audits were actually conducted nor the results of the audits. Could Plaintiffs had then requested production of the audits? Maybe so. While we are all more informed in hindsight Plaintiffs' failure (or possibly oversight) in not requesting production of the audit reports themselves based simply upon the fact that BMS and OPC had agreed that audits could be conducted does not evidence sufficient lack of diligence to now deprive Plaintiffs of discovery on this issue.

Defendants say there was more that should have placed Plaintiffs on notice that there were audit reports disclosing information relating to pharmocvigilance reporting between OPC and BMS. Defendants point to PV audit reports for 2015, 2016 and 2014 Defendants produced in February and April 2017,[4] as evidence that Plaintiffs were not diligent in pursuing the requested discovery. Granted these documents disclosed the actual results and corrective actions taken during the audits. But these audits were limited to 2014-2016, a finite period of time. The audit reports covering the years 2006 to 2013 were not produced until March 6, 2018, after the issue was raised with the Court for the first time on February 26,

---

[4] ECF No. 856, Exs, I, J, K, L, and M.

2018. Notably, when the issue was first raised with the Court the fact discovery deadline had not yet expired. Certainly, in retrospect it would have been better if Plaintiffs requested 30(b)(6) depositions concerning the audit reports in February before the expiration of the discovery deadline. Although Plaintiffs did not do so at that time, it is not unreasonable to assume that Plaintiffs believed once they received the audits reports (which they did on March 6, 2018) Plaintiffs could use them in the case, including using them to examine the medical affairs representatives at their 30(b)(6) depositions. As it turned out the medical affairs representatives did not have a clue about the audit reports because the audit reports primarily related to pharmacovigilance issues.

  Defendants say Plaintiffs should have known that medical affairs representatives would not have knowledge about audits so the failure to obtain deposition discovery concerning the audits is Plaintiffs' fault. Probably so. But Plaintiffs' failure to anticipate this is different from a lack of diligence. Once Plaintiffs understood that the audits might be relevant to pharmacovigilance issues in this case, Plaintiffs promptly requested production of the audits, received the documents and attempted to bring this issue to the Court's attention before the final close of fact discovery.

In the Court's view while Defendants' argument in opposition might show that Plaintiffs could have raised this issue sooner it does not evidence that there was a complete lack of diligence on Plaintiffs' part. The Court, therefore, concludes that Plaintiffs have shown sufficient good cause under Rule 16 for modifying the Court's scheduling order to the extent that Plaintiffs wish to conduct two depositions after the close of discovery.

Plaintiffs, of course, must show more than simply the exercise of diligence to obtain the requested discovery. Plaintiffs must also show that the requested discovery is not duplicative and is relevant to the claims in the case and proportional to the needs of the case. *See,* Fed. R. Civ. P. 26(b)(1). In authorizing any discovery in a case—whether conducted during the discovery period of the case or conducted with the Court's permission after the close of discovery—the Court is required to consider among other factors "[t]he importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* In short, the Court must consider whether the requested discovery is important enough to have a possible effect on the outcome of any issues in the case.

Defendants advance several arguments, which have superficial appeal, in support of their view that conducting two more 30(b)(6) depositions at this late stage of the case—and on the eve of trial preparation—should not be permitted.

First, Defendants suggest that because Plaintiffs have the audit reports the reports speak for themselves, thus implying that there is no need for further deposition testimony to explain what the audit reports show. While the reports disclose some failures to follow pharamacovigilance reporting procedures, such failures alone are not sufficient to establish a causal link between the decision to change or not to change the warning on a label. More most be shown, including how deficiencies, if any, in the audit reports impacted the warnings on the label.

Moreover, as Plaintiffs point out, one of the critical issues in the case concerns whether there were sufficient events of pathological gambling to reflect a potential drug-event association. Consideration of this issue by the Defendants guided their decision making concerning whether label changes were necessary. Potential under reporting or incorrect reporting of adverse events could impact the statistical analysis of the potential drug-event association between Abilify® and pathological gambling. The audit

reports very well might not evidence that any deficiencies in reporting reflect serious pharmacovigilance deficiencies. But, without deposing a representative concerning the audit reports Plaintiffs cannot simply rely upon the audit reports to know the answer to this question. For this reason simply requiring Plaintiffs to rely upon the audit reports by themselves without the opportunity to flesh-out the meaning of the reports and what actions, if any, were taken, is not appropriate. The requested discovery from a proportionality perspective is, therefore, important to resolving the issues in the case.

Defendants understandably also point to the burden of preparing witnesses at this late stage of the case. The Court is fully cognizant that the parties are involved in trial preparation at this point and would be required to divert their attention away from these issues to prepare witnesses for deposition. Defendants are well represented by not one but a number of experienced attorneys, who should be able to apportion resources to prepare witnesses and at the same time prepare for trial. The Court therefore concludes that the burden of preparing and defending witnesses for deposition does not outweigh the likely benefits of the discovery.

In sum, the Court concludes that Plaintiffs should be permitted to conduct 30(b)(6) depositions of a representative of BMS and a representative of OAPI. The depositions, however, are not intended to reopen discovery nor are the depositions intended to be a re-do of the 30(b)(6) depositions concerning phamocovigilance, which were conducted during causation discovery. The 30(b)(6) depositions must be limited to examination concerning the audit reports, their purpose and meaning and what actions, if any, the defendants took in response to the information contained in the audit reports. The parties are directed to meet and confer concerning mutually available dates and locations for the depositions. The depositions should , however, be scheduled and completed no later than May 11, 2018.

**DONE AND ORDERED** this 18th day of April 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge