IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: ABILIFY (ARIPIPRAZOLE)
PRODUCTS LIABILITY LITIGATION,                    Case No. 3:16-md-2734

                                                  Chief Judge M. Casey Rodgers
                                                  Magistrate Judge Gary Jones

This Document Relates to All Cases

_____/

# O R D E R

Pending before the Court is Plaintiffs' Spoliation and Rule 37 Motion
for Sanctions Against Defendant Otsuka America Pharmaceutical, Inc.
ECF No. 719 . Defendant Otsuka America Pharmaceutical, Inc. has filed a
memorandum of law in opposition to Plaintiffs' motion. ECF No. 752. With
the Court's permission Plaintiffs have filed a reply memorandum in support
of their motion. ECF No. 766. The matter is otherwise ripe for resolution.[1]
For the reasons discussed below, Plaintiffs' motion is due to be denied.

---

[1] Plaintiffs' motion was filed in February 2018. The Court did not address the
motion previously, however, because under the Court's Global Settlement Order No. 1,
ECF No. 881, the Court granted the parties until September 1, 2018 to finalize a
framework for a global settlement. In September 2018, after a global mediation did not
result in a framework for a global settlement, the Court advised the parties at Case
Management Conference No. 15, on September 13, 2018, that the Court would begin
to address all outstanding discovery motions. This motion was one of the outstanding
discovery motions tabled by the Court while the parties engaged in extensive global
mediation.

## INTRODUCTION

Plaintiffs' spoliation motion was prompted when counsel for Otsuka

America Pharmaceutical, Inc. ("OAPI") in early January 2018, informed

Plaintiffs that OAPI could not produce emails for three custodians created

between 2002 and 2006 because OAPI could not locate any emails during

the relevant period of time. OAPI advised that it could not locate emails

between 2002 and 2006 because before April 2007 OAPI maintained a 60-

day retention policy for emails under which emails older than 60 days were

automatically deleted.[2]

Plaintiffs contend that OAPI's destruction of emails and other

---

[2] The evidence of OAPI's document retention policies during the relevant periods of time is somewhat incomplete. The relevant policies, however, are documented in the record in the January 19, 2018, Declaration of James Grafmyre. ECF No. 719, Ex. 9. According to Mr. Grafmyre, the Senior Director of Infrastructure and Operation Services for OAPI, OAPI had separate written retention policies for email and corporate records. Regarding retention of emails before 2004 OAPI did not have an email retention policy. In 2004 OAPI adopted a policy in which "emails stored in individual email accounts, inboxes or any related email system folder will be automatically and permanently purged 60 days after receipt or transmission." *Id.* at ¶8. Further, under the 2004 email policy, "all emails 60 days or older as well as all email archives will be permanently deleted. Thereafter, electronically stored email older than 60 days will no longer be retained in the system." *Id*. at ¶9. In essence on April 1, 2004, all emails from prior years were permanently deleted and from 2004 through the end of 2006 all emails were deleted after 60 days. In 2007 OAPI instituted a new practice to permanently retain a copy of any email sent from or received by any user of the company's email system. While OAPI was unable to locate any written email policy that covered the period of time prior to April 2004, the fact of the matter is that in April 2004 all emails prior to that date were permanently deleted.

documents covering the time period from 2002-2006 constitutes spoliation of evidence, entitling Plaintiffs to sanctions under the Court's inherent authority and under Rule 37(e) of the Federal Rules of Civil Procedure. Plaintiffs request an adverse inference instruction at trial regarding the destroyed documents. Alternatively, Plaintiffs request that the Court prohibit OAPI from raising the lack of early notice or using the lack of earlier evidence in any way to challenge Plaintiffs' claims. Additionally, as a further alternative sanction, Plaintiffs request permission to introduce evidence at trial regarding the circumstances surrounding OAPI's failure to retain and produce the documents. Lastly, Plaintiffs request leave to add a spoliation cause of action for Plaintiffs from those states that recognize a first-party cause of action for spoliation.

While Plaintiffs make reference to other documents, the primary dispute here relates to the destruction of emails and other electronic documents for three custodians covering the time period from 2002 to 2006. The determination of whether OAPI spoliated evidence, or under Rule 37(e) of the Federal Rules of Civil Procedure whether Plaintiffs are entitled to sanctions for spoliation of electronically stored information

("ESI"), begins and ends with resolution of whether OAPI had a duty to preserve emails from 2002-2006. Because as a threshold matter OAPI did not have a duty to preserve emails Plaintiffs are not entitled to sanctions under Rule 37(e) or under the Court's inherent authority.

## DISCUSSION

The law applicable to destruction of emails and other ESI is now controlled by Rule 37(e) of the Federal Rules of Civil Procedure. The new Rule 37(e) authorizes courts to impose sanctions for destruction of ESI where four conditions are met. First, the ESI should have been preserved in the anticipation or conduct of the litigation. Second, the ESI is lost or destroyed. Third, the loss of the ESI is due to the party's failure to take reasonable steps to preserve the ESI. Last, the ESI cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e).  Where, the "[a]nswer to any of [the] questions ... is 'no,' ... a motion for spoliation sanctions or curative measures must be denied." *Living Color Enters., Inc. v. New Era Aquaculture, Ltd,* case no. 14-cv-62216-Marra/Mattthewman, 2016 WL 1105297, at *4-5 (S.D. Fla. Mar. 22, 2016). Thus, the threshold question is whether OAPI had a duty to preserve the ESI.[3]

---

[3] Because Rule 37(e) does not establish a new standard for preservation and does not alter existing federal law as to whether evidence should have been preserved

The Eleventh Circuit has made clear that a duty to preserve documents only "arises once litigation is pending or reasonably foreseeable." *Graff v. Baja Marine Corp.,* 310 Fed. Appx. 298, 310 (11th Cir. 2009). "To be reasonably forseeable, litigation must have been contemplated—mere awareness of potential liability is insufficient to trigger a duty to preserve evidence." *Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC,* 845 F. Supp. 2d 1342, 1358 (N.D. Ga. 2011). Simply put, "[T]he duty to preserve evidence ... arises when a party reasonably anticipates litigation and thereafter requires that party to suspend its routine document retention or destruction policies and institute a litigation hold to ensure the party properly preserves relevant documents." *McBride v. Coca-Cola Refreshments, USA, Inc.,* case no. 8:12-cv-275-T-AEP, 2012 WL 12915435 (M.D. Fla. June 20, 2012).

Relevant to the duty to preserve is the view taken by the *Sedona Conference*. The principles developed by *The Sedona Conference Commentary* provide that a "reasonable anticipation of litigation" arises

---

or when the duty to preserve attaches, *see The Advisory Committee Notes* to Rule 37(e) for the 2015 amendments, the law and the analysis of whether there was a duty to preserve is the same for ESI under Rule 37(e) and for non-ESI. Consequently, if there was no duty to preserve Plaintiffs are not entitled to sanctions under Rule 37(e) and are not entitled to sanctions for non-ESI under the Court's inherent authority.

only when "an organization is on notice of a credible probability that it will become involved in litigation, seriously contemplates litigation, or when it takes specific actions to commence litigation." *The Sedona Conference Commentary on Legal Holds: The Trigger & The Process,* 11 Sedona Conf. J. at 269.

Plaintiffs argue that OAPI's duty to preserve was triggered by statute, contract, and other litigation and not simply when OAPI had a reasonable "anticipation of litigation." OAPI counters that it had no duty to preserve generated by statute or contract and that it could not have anticipated litigation in 2006 and certainly not in 2002, before Abilify® came on the market.

### A. OAPI did not reasonably anticipate litigation and therefore had no duty to preserve emails from 2002 to 2006.

Plaintiffs advance a very broad argument in support of their position that foreseeable litigation required OAPI to preserve emails and other documents between 2002 and 2006. According to Plaintiffs, the duty to preserve can be triggered by industry-wide events, regardless of the status of individual litigation. As a basic proposition, however, there are problems with this position. First, as recognized by Judge Goodman in *Point Blank*

*Sols., Inc. v. Toyobo Am., Inc.,* case no. 09-61166-CIV-Seitz/Goodman,

2011 WL 1456029, at *26 (S.D. Fla. April 5, 2011), the Eleventh Circuit has

never adopted the industry-wide theory of an evidence-preservation duty.

Although such a duty was recognized in *Livingston v. Isuzu Motors, Ltd.,*

910 F. Supp. 1473, 1494 (D. Mont. 1995), the court there addressed the

issue in the context of whether the court improperly admitted evidence and

not in the context of whether the destruction of data was sufficient to

establish spoliation of evidence. In *Livingston,* the trial court admitted

evidence regarding a car manufacturer's (Isuzu) practice of not retaining all

of its raw data.  The *Livingston* court concluded that evidence of this

practice was admissible because Isuzu was well aware of the rollover

problem in the auto industry involving narrow truck utility vehicles, a

situation fairly far afield from the situation in this case.

The industry-wide theory is also highly problematic because it

improperly places too much emphasis upon events other than those

generated by the plaintiff or those who are similarly situated to the plaintiff.

Ultimately, however, applying the reasonable foreseeability standard and

pinpointing the trigger date when the duty to preserve arises is highly case

specific and fact dependent. *See, In re Ethicon, Inc.*, 299 F.R.D. 502, 512

(S.D. W.Va. 2014).

Certainly, nothing Plaintiffs did before these cases were filed or anything that any of Plaintiffs' respective counsel did before these cases were filed evidence that OAPI could have or should have reasonably anticipated litigation in the 2002 to 2006 time frame. Plaintiffs' counsel did not begin advertising for plaintiffs in this litigation until 2013 and did not threaten OAPI with litigation until October 2014, more than a decade after the emails were deleted. Indeed, the first lawsuit involving Abilify® was not filed until January 2016. Thus, the earliest date OAPI should have reasonably anticipated litigation is when it first learned that claims might be filed, either as early as 2013, but not later than October 2014, when OAPI was threatened with litigation. Normally, that would end the inquiry. Plaintiffs, however, say that OAPI should have reasonably anticipated litigation long before that because of information disclosed in publications, other lawsuits concerning other drugs and based upon information OAPI received in adverse event reports.

Plaintiffs point to early scientific literature drawing a connection between alterations in the dopamine reward pathway and pathological gambling as evidence that OAPI was on notice, as early as 1995,

regarding a threat of litigation.[4] Plaintiffs say that OAPI was aware that Abilify® was in the same class of drugs because of its D3 agonistic features. Based upon this literature Plaintiffs conclude that OAPI should have anticipated potential litigation involving Abilify®, a D3 drug and therefore should have preserved evidence for that purpose.

Putting aside whether industry wide events are sufficient to trigger a duty to preserve, the state of the professional and medical literature prior to 2007 falls woefully short of placing OAPI on notice that it was going to be sued ten years later. While the scientific literature Plaintiffs point to may be probative of their theory in this case, the parties' experts diverge on whether Abilify® has a different mechanism of action from the Parkinson's drugs referenced in the literature.

Furthermore, whether the presence of this information in the scientific literature was sufficient to place OAPI on notice in 2002-2006 that Abilify®

---

[4] Plaintiffs specifically point to the following literature: Blum K. Et al., *Dopamine D2 receptor gene variants: association and linkage studies in impulsive-addictive-compulsive behaviour,* 5 *PHARMACOGENETICS* 121; Comings DE et al., *A study of the dopamine D2 receptor gene in pathological gambling,* 6(3) *PHARMACOGENETICS* 223-234 (1996); Molina J, et al., *Pathologic gambling in Parkinson's disease: A behavioral manifestation of pharmacologic treatment?,* 14 *MOVEMENT DISORDERS* 869-872 (2000); Seedat S, et al., *Pathological gambling behavior: Emergence secondary to treatment of Parkinson's disease with dopaminergic agents,* 11 *DEPRESSION & ANXIETY* 185-86 (2000).

may cause compulsive gambling is and continues to be a hotly contested issue in this case.

Accordingly, even under Plaintiffs broad industry-wide events argument, it is a quantum leap to conclude that OAPI had a duty to preserve all of its emails and other documents simply because there may have been some scientific literature published in the late 1990's and early 2000's that addressed D3 drugs and a possible link to compulsive gambling.

Plaintiffs' argument regarding the "dopamine-gambling litigation" does not fair any better. Plaintiffs point to nationwide litigation in 2004 involving Miraplex, a dopamine agonist, in which the plaintiffs there claimed that the drug caused them to compulsively gamble, as evidence that OAPI should have reasonably anticipated it would be sued more than a decade later. In addition to the fact that it is disputed whether Abilify® may have a different mechanism of action, the drugs are prescribed for different conditions. These other drugs are prescribed for Parkinson's while Abilify® has never been approved to treat Parkinson's.

The Court is not aware of any case law, which requires a drug manufacturer to preserve all of its documents where the manufacturer has

not received any notice of the potential threat of litigation other than simply

knowledge that there was other litigation involving a different drug

prescribed for different conditions that may fall within the very broad

category of dopaminergic drugs.[5] Such an overly broad view of the duty of

preservation would impose on every drug manufacturer a duty to preserve

all of its documents, without regard to subject matter or time frame. That is

at odds with the requirement that a party must preserve documents when it

reasonably anticipates litigation. Reasonable anticipation means

something much more than a "mere possibility of litigation. See, *Cache La*

*Poudre Feeds*, *LLP v. Land O'Lakes, Inc.,* 244 F.R.D. 614, 621 (D. Colo.

2007). Accordingly, the fact that other litigation was initiated claiming that

other unrelated dopaminergic drugs cause compulsive gambling is

insufficient to trigger OAPI's duty to preserve.

Plaintiffs also suggest that adverse events reported during clinical

trials and post marketing placed OAPI on notice between 2002 and 2006 of

---

[5] As OAPI correctly points out, Plaintiffs reference to two of OAPI's documents to suggest that OAPI knew that dopamine-agonist litigation implicated Abilify® fail to support this assertion. One of the documents was prepared by a third party and the other document is a PowerPoint comparing the mechanism of action of Abilify® and Parkinson's drugs. (See, Pls' Exs. 15 & 20). Notably, the documents were created in 2015 and 2016 long after OAPI was threatened with this litigation. The documents have no relevance to whether OAPI should have reasonably anticipated litigation in 2002-2006.

this litigation. This argument ignores the substance of many of the adverse events reports and the fact that the statistical results of the clinical trials were woefully insufficient to place OAPI on notice of threatened litigation. An examination of a number of the reports of problems by physicians noted that the patient's adverse events were not connected to Abilify®.

As to the results of the clinical trials, the evidence suggests (at least by one expert) that there was no statistically significant difference in the rate of pathological gambling, or impulse-control disorders between patients taking Abilify® and those taking placebo or active comparator drugs.[6] It follows because the adverse event reports, standing alone, fail to demonstrate that OAPI knew or should have known that Abilify® caused compulsive gambling the duty to preserve was not triggered.

Lastly, Plaintiffs say that ongoing litigation with the Department of Justice is further evidence OAPI was on notice that litigation was reasonably foreseeable. Plaintiffs point to a 1995 suit by the DOJ against Bristol-Myers Squibb ("BMS") involving claims of false marketing and an

---

[6] *See,* June 28, 2017, Deposition of Dr. David Madigan, ECF 427-1, Ex. C, at 255:22-256:8 in which Dr. Madigan stated "[w]hen I'm looking at the totality of the evidence and arriving at a conclusion, that – those[clinical] studies don't contribute anything to that one way or another."

August 24, 2005 subpoena to OPC as evidence that the DOJ's investigation then shifted to Otsuka's marketing of Abilify.® As the Court has previously observed, the DOJ investigation and the subpoena on OPC concerned claims involving off-label promotion of Abilify® and had nothing whatsoever to do with safety information or compulsive gambling.

Plaintiffs also point to a litigation hold instituted by BMS in 2007 as support for their claim that OAPI had a duty to preserve the documents. Putting aside that the hold was placed by BMS and not by OAPI, the fact remains that the litigation hold was placed in 2007 *after* OAPI instituted its 2004 email policy, requiring the deletion of all emails before 2004 and the deletion of all emails older than 60 days. Consequently, all of the 2002 to 2006 emails already would have been automatically deleted even if OAPI had placed a litigation hold in 2007.

The fatal flaw, however, to Plaintiffs' argument concerning the DOJ investigation is that other courts addressing the same shifting duty argument have rejected it. Judge Goodman rejected this argument in *Point Blank Solutions,* 2011 WL 1456029, at *24-25, partly in reliance upon *In re Delta/Air Tran Baggage Fee Antitrust Litigation,* 770 F. Supp. 2d 1299 (N.D. Ga. 2011).

In *Delta/Tran* the court considered whether a demand by the Department of Justice triggered a duty by Delta to preserve evidence for use in later multidistrict litigation filed by passengers who were charged illegal first-bag fees. The court there explicitly rejected plaintiffs' argument that the "duty to preserve documents is a duty that does not attach to any party," and instead found that the duty to preserve evidence ran only to the DOJ and not to the plaintiffs. The same applies here. OAPI's duty to preserve evidence, if any, applied to the DOJ and the claims in that case involving off-label promotion and does not apply in this case to Plaintiffs in a case that concerns compulsive gambling.

**B. OAPI did not have a statutory or contractual duty to preserve documents.**

Plaintiffs argue that FDA regulations required OAPI to preserve emails from 2002 to 2006.

Under 21 C.F.R. §314.80(j), drug manufacturers are required to "maintain for a period of 10 years records of all adverse drug experiences known to the applicant, including raw data and any correspondence relating to adverse drug experiences." Consequently, under this regulation, OAPI was required to keep records relevant to adverse drug experiences.

The parties do not dispute OAPI had this obligation. Plaintiffs argue, however, that despite this obligation OAPI has not produced any communications or documents from the two custodians in question.

As a threshold argument, OAPI argues that there is no evidence the custodians in issue ever received or sent any "correspondence relating to the adverse events at issue in this litigation." Although OAPI's statement is accurate, Plaintiffs obviously cannot identify documents that were never received and have been deleted. Nonetheless, Plaintiffs should have at least provided the Court with some evidence or argument why these particualar custodians would have had information in their custodial files relating to adverse events. The Court, however, need not resolve whether Plaintiffs have met their burden of showing that there were relevant documents deleted because even if they had Plaintiff's duty shifting argument fails because failure to comply with a regulatory obligation does not create a duty to preserve for purposes of a spoliation motion.

The obligation under § 314.80 runs to the FDA and not to the plaintiffs in this case. This unremarkable proposition was recognized by the court in *In re Delta/Tran Baggage Fee Antitrust Litig., supra.* As discussed above in *Delta/Tran* the Court rejected a very similar argument. The

plaintiffs there argued that Delta had a duty to preserve documents because the DOJ had made a civil investigative demand to Delta to produce a variety of records relating to fees charged for checked baggage. In later filed multidistrict litigation Plaintiffs claimed that Delta was subject to sanctions for deleting relevant documents and emails by failing to suspend its electronic document destruction policy after receipt of the DOJ demand.  The court rejected this argument and found that the duty to preserve documents ran to the DOJ and not to the plaintiffs.

The same reasoning applies here. Even assuming that OAPI failed to maintain adverse event records for 10 years, such a failure relates to a duty OAPI owed to the FDA and not a duty OAPI owed to the Plaintiffs. The duty to preserve OAPI owed to Plaintiffs is the duty to reasonably preserve documents once litigation becomes foreseeable. As discussed above there is simply no evidence that litigation by the Plaintiffs in this case was reasonably foreseeable in 2002-2006, more than a decade before plaintiffs filed suit in this case.

And even if the trigger date for preservation was in 2014 when Plaintiffs first threatened litigation, and even assuming emails relating to adverse events did exist in the files of the custodians in question, emails

prior to the 2004 policy were deleted in 2004 and then continuing thereafter every 60 days until OAPI initiated the 2007 policy to retain all emails. Thus, if any emails existed in the files of the custodians in issue the emails were long gone a decade before OAPI owed a duty to these plaintiffs (as opposed to the FDA) to preserve documents.

The cases Plaintiffs cite do not persuade the Court that the result should be any different. *Austrum v. Fed. Cleaning Contractors, Inc.,* 149 F. Supp. 3d 1343 (S.D. Fla. 2016) involved an employment discrimination suit. Under EEOC regulations the employer was required to keep employment applications for one year. The court found that the employer should have retained the plaintiff employee's application because the record keeping requirement placed the defendant "on notice of the application's importance to potential employment discrimination litigation and the need to preserve it." *Austrum* is a far different scenario from this case. There is little dispute that an employment application is critical in any employment discrimination case and is critical to a plaintiff proving his or her case. On the other hand, the FDA regulation relied upon by Plaintiffs in this case is necessary for the FDA to properly regulate and monitor drug safety. It is not a requirement for preserving evidence for potential litigants,

who may bring product liability claims decades later.

     *Latimore v. Citibank Fed. Sav. Bank,* 151 F. 3d 712, 716 (7th Cir. 1998), the other case Plaintiffs cite, simply stands for the unremarkable proposition that the violation of a record retention regulation creates a presumption that the missing record contained evidence adverse to the violator.

     To be sure the dispute in this case is not that OAPI destroyed adverse event reports or databases containing adverse event reporting. Rather, the narrow claim is that because emails of three custodians were deleted, OAPI did not produce any correspondence from these custodians concerning adverse event reporting. Notably, the record does not contain any evidence that the three custodians' emails even fell within the scope of the FDA preservation obligations.

     Accordingly, for these reasons, the Court declines to find that under these circumstances the FDA regulation created separately a duty to preserve the documents contained in the custodial files of three custodians for the time period from 2002 to 2006.

     Last, Plaintiffs argue that an agreement between OPC and BMS created a duty by OAPI to preserve emails from 2002 to 2006 in the files of

three custodians.

As OAPI points out, the contractual provision between OPC and BMS did not require OAPI to retain emails. The obligation in the 2002 Pharmacovigilance Agreement between OPC and BMS, upon which Plaintiffs rely, provides that the parties will "keep on file ... a complete copy of its safety related correspondence with the other party concerning Aripiprazole." The logical and plain meaning of this requirement was that BMS and OPC were required to maintain adverse event information so that the information would be available to both parties. We know from the extensive discovery in this case that the relevant repository of adverse event reporting information was the database, referred to in this case throughout discovery as the Safety Correspondence File. There is no suggestion in Plaintiffs' spoliation motion that this database was not maintained as required. Instead, Plaintiffs say that because the agreement uses the word "correspondence" there must have been email correspondence in the three custodial files. The obligation was clarified in 2010 when the Pharmacovigilance Agreement was revised to remove reference to correspondence and reflect that BMS was required to maintain the database and records of all safety information. The adverse

event information was maintained in the database and there is no
suggestion in this case that there was any information in the database that
was deleted.

The more fundamental problem with Plaintiff's argument is that
Plaintiffs as non-parties to the Pharmacovigilance Agreement cannot
enforce the obligations in the agreement to their benefit.

As an initial matter, the obligations in the Pharmacovigilance
Agreement are not, as Plaintiffs characterize them, document retention
policies. Rather, the obligations create an affirmative duty to establish,
share and maintain the records of adverse event reporting post marketing.

The law applicable to this issue is controlled by Rule 37(e) of the
Federal Rules of Civil Procedure because Plaintiffs' challenge is to the
email files of the three custodians.  The Advisory Committee notes to the
2015 amendments to Rule 37 explain that the rule forecloses reliance on
inherent authority or state law to determine when certain measures would
be used. Thus, Plaintiffs' sole reliance on Florida state law cases to
support its argument is contrary to revised Rule 37(e).

But even assuming Florida state law was relevant (which it is not),
Plaintiffs' argument that the Pharmacovigilance Agreement created a duty

to preserve ESI in the custodial files of the three custodians still fails. As reflected in the Florida cases Plaintiffs cite—*see Miller v Allstate Ins. Co.,* 573 So. 2d 24, 25-26 (Fla. Dist. Ct. App.) And *United Rentals, Inc. v. Kimmins Constr. Corp,* 2008 WL 5246313, at *3-4 (M.D. Fla. Dec. 1, 2008)—under Florida law a spoliation claim based upon the breach of a contractual obligation requires the plaintiff to be a party to the contract. Plaintiffs were not parties to the Pharmacovigilance Agreement and therefore, even under state law cannot use the breach of the agreement as a basis for bringing a claim for spoliation. Simply put, because the agreement in this case has nothing whatsoever to do with the Plaintiffs the Plaintiffs cannot use the agreement to artificially create a duty owed to Plaintiffs, and most certainly cannot rely upon a contract to which it is not a party to create a duty by OAPI to preserve documents for Plaintiffs.

## C. Plaintiffs are not entitled to sanctions relating to hard copy documents.

While the primary focus of Plaintiffs' spoliation motion is on the emails and other ESI in the custodial files of three custodians, because Plaintiffs mention "hard-copy" documents in passing as it relates to two of the custodians, the Court will briefly address hard-copy documents.

As an initial matter, the issue of whether Rule 37(e) also applies to non-ESI spoliation claims involving tangible documents and evidence is unresolved, at least in the Eleventh Circuit. *See, ML Healthcare Services, LLC v. Publix Supermarkets, Inc.,* case no. 15-13851, 2018 WL 747392, at *10 (11th Cir. Feb. 7, 2018); *Living Color Enters. v New Era Aquaculture Ltd., supra.* at *12 n. 2.  The Court need not resolve this issue because Plaintiffs have not established "bad faith" necessary to trigger sanctions under the Court's inherent authority nor have they come close to demonstrating "an intent to deprive" Plaintiffs of evidence, the standard applicable under Rule 37(e) to justify the imposition of an adverse inference instruction.

Under Rule 37(e)'s intent to deprive standard Plaintiff would have to show that OAPI's automatic deletion of emails under its 2004 email policy was an affirmative act undertaken to deprive Plaintiffs of the use of the information in this case. The record is devoid of any evidence suggesting that the imposition of the 2004 email policy (which applied to all company-wide email accounts and not just the relevant custodians in this case) was initiated for the purpose of depriving the Plaintiffs of this information. In 2004 OAPI had no inkling that potential litigants like the Plaintiffs in this

case existed and there is absolutely no evidence that the imposition of the automatic auto-delete function initiated in 2004 was anything other than an ordinary course document retention system. Indeed, in 2007—long before Plaintiffs came on the radar screen— OAPI changed its document retention policy to maintain all emails indefinitely. This conclusion is consistent with the view of other courts who have found that there is no intent to deprive where ESI is deleted as part of routine company wide policies related to the periodic deletion of ESI. *See, e.g. Living Colors Enters,* 2016 WL 1105297, at *6 (no intent to deprive where defendant failed to turn off cell phone's auto-delete feature); *Eshelman v. Puma Biotech, Inc.,* 2017 WL 2483800, at *5(E.D.N.C. June 7, 2017)(failure to suspend default 90 day deletion of internet browsing history did not constitute intent to deprive).

The same analysis applies to sanctions under the Court's inherent authority. In the Eleventh Circuit a finding of bad faith is necessary for any request for an adverse inference instruction or other spoliation sanctions under the Court's inherent authority. *See. e.g. ML Helathcare Services, LLC,* 2018 WL 747392, at * 10 ("Prior to the amendment of Rule 37, this Court held that an adverse inference instruction is only proper 'when the

absence of [the] evidence is predicated on bad faith.")

The complete lack of any record evidence suggesting that OAPI's deletion of emails under its 2004 email policy was carried out to deprive Plaintiffs of this information also supports the conclusion that Plaintiffs have not demonstrated the requisite bad faith to support sanctions under the Court's inherent authority.

Nor can Plaintiffs establish bad faith based upon circumstantial evidence. Courts in the Eleventh Circuit have observed that even where direct evidence of bad faith is lacking a party may attempt to show bad faith by circumstantial evidence. *Jetport, Inc. v. Landmark Aviation Miami, LLC,* 2017 WL 7732869, at, *3 (S.D. Fla. July 24, 2017). One of the necessary criteria for examining circumstantial evidence to determine whether the destruction of evidence constitutes bad faith is the requirement that the movant demonstrate "the spoliating party did so while it knew or should have known of its duty to preserve the evidence." *Id.* As discussed at length above, OAPI did not have a duty to preserve information from 2004 to 2006 in the custodial files of two of the custodians because OAPI could not have reasonably anticipated this litigation ten years before the Plaintiffs threatened to file or filed their lawsuits. Because there is no

evidence of bad faith, circumstantially or otherwise, Plaintiffs are not

entitled to sanctions under the Court's inherent authority.

Accordingly, upon due consideration, it is **ORDERED**:

Plaintiffs' Spoliation and Rule 37 Motion for Sanctions Against
Defendant Otsuka America Pharmaceutical, Inc,  ECF No. 719, is
**DENIED**.[7]

**DONE AND ORDERED** this 5th day of October 2018.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

---

[7] Plaintiffs' alternative request for leave to add state-law spoliation claims is not
an available sanction under Rule 37(e) or under the Court's inherent authority. Leave to
amend to add a claim is accomplished under Rule 15 of the Federal Rules of Civil
Procedure. Therefore, as the request relates to Plaintiffs' request for sanctions the
request is denied. Plaintiffs also argue that even if the Court does not find spoliation,
the Court should grant Plaintiffs permission to introduce evidence at trial regarding the
circumstances surrounding OAPI's failure to retain and produce the emails. The issue
of what evidence should and should not be introduced at trial is premature at this point.
Until the Court is able to ascertain what evidence, if any, may be used at trial that has
anything to do with the time period 2002 to 2006 and what would have been contained
in the custodial files of the three custodians, a meaningful determination on this issue
cannot be made. Moreover, the determination of that issue is an issue to be made by
the district judge during the trial of these cases and not a determination that is
appropriate to be made on a motion for sanctions by a magistrate judge who will not be
the trial judge in this case.