IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: ABILIFY (ARIPIPRAZOLE)
PRODUCTS LIABILITY LITIGATION,          Case No. 3:16-md-2734

                                        Chief Judge M. Casey Rodgers
                                        Magistrate Judge Gary Jones

This Document Relates to All Cases
_____/

## O R D E R

This matter is before the Court on Plaintiffs' Request for Additional
Discovery from Dr. Berit Carlson. ECF No. 1062. Defendant Bristol-Myers
Squibb ("BMS") has filed a brief in opposition. ECF No. 1063. The Court
has reviewed the submissions and for the reasons explained below grants
Plaintiffs' request to obtain additional ESI from Dr. Carlson's custodial files.

## BACKGROUND

The present dispute regarding production of additional ESI from Dr.
Carlson's custodial files stems from Plaintiffs' September 27, 2018, Motion
to Compel More Complete Productions. ECF No. 1005. The Court
conducted a telephonic hearing on October 18, 2018, to address the
Motion to Compel. The Court postponed ruling on Plaintiffs' Motion to
Compel and directed the parties to engage in more detailed discussions
concerning why additional discovery is necessary regarding each

custodian at issue. To the parties credit, after engaging in further meet and confers Plaintiffs and BMS reached agreement on all custodians except for Dr. Carlson. The Court directed the parties to file briefs addressing whether BMS should be required to conduct an additional search of Dr. Carlson's custodial records with additional search terms for the period of 2003-2006. This order resolves this remaining issue.

Previously, during the general causation discovery phase, BMS collected and searched Dr. Carlson's ESI from 2007 through February 28, 2017, using the general causation search terms agreed to by the parties. During the general liability discovery phase, BMS collected and searched Dr. Carlson's ESI from 2009 through 2012, when she held the position of Director, Neuroscience Medical Strategy/Medical Affairs. Additionally, as to non-ESI, BMS produced 3,000 pages of hard copy documents from 2003-2007 and 2010 and 21 handwritten notebooks covering the time period form 2003-2012.

Plaintiffs proffer that because of Dr. Carlson' extensive involvement with Abilify® from 2003-206, there is a reasonably high expectation that the additional searches of her custodial files will uncover critical evidence that has not yet been produced. Plaintiffs request BMS to produce responsive

ESI covering the time period of 2003-2006. Additionally, Plaintiffs request that BMS run a search using the modifier "ari" across Dr. Carlson's entire custodial file for 2003-2012—the entire time period Dr. Carlson worked on Abilify®.

While recognizing that Dr. Carlson played a key role in 2009-2012— when she held the position of Director of Neuroscience Medical Affairs, served as the lifecycle lead for Abilify®, and regularly attended Medical Surveillance Team meetings—BMS says that there is no justification for the production of ESI from Dr. Carlson's custodial files from 2003-2006 because Dr. Carlson held an entry-level position during this time frame. BMS says that because Dr. Carlson held an entry level position during 2003-2006 her role with Abilify® does not have any unique relevance to this case. According to BMS, requiring BMS to collect, search and review ESI from Dr. Carlson's custodial files from 2003-2006 is not proportional to the needs of the case because of the marginal importance of Dr. Carlson's early Abilify® positions. BMS further says that production of ESI from 2003-2006 is not proportional because any responsive ESI would be duplicative of ESI already produced.

## DISCUSSION

Dr. Carlson was hired by BMS in June 2003 as a Medical Science Liaison ("MSL") to work with the Abilify® team. She held this position for 16 months. When Dr. Carlson was hired she was provided with Abilify® training materials and educational materials. These materials previously were produced by BMS when BMS produced hard copy documents. Dr. Carlson was one of a number of MSLs managed by Regional Associate Directors. BMS has produced documents from the Regional Associate Directors for Florida from 2002-2012. Notably, when Dr. Carlson was hired she attended lectures from experts in the field and was provided with scientific publications concerning Abilify's® mechanism of action. As a MSL for Abilify® Dr. Carlson's primary function was to educate physicians about Abilify®.

In October or November 2004 Dr. Carlson was promoted to Manager, U.S. Neuroscience Medical Strategy overseeing the medical affairs group for Abilify® at the BMS headquarters in Princeton, New Jersey. Dr. Carlson stayed with the Abilify® Medical Affairs department from 2004-2012, working exclusively on Abilify®. Thus, between 2003-2006 Dr. Carlson served as a MSL for Abilify® for sixteen months and then for the next two

years she served as the Manager of the US Neuroscience Medical Strategy until she was promoted in 2006 to the Associate Director position.

During the 2003-2006 time frame (and continuing after 2006) Dr. Carlson was responsible for disseminating safety and efficacy information to prescribing physicians. In addition, beginning in 2004, Dr. Carlson was responsible at least in part for planning BMS's publication strategy, which included distributing BMS's commercial message regarding Abilify's® safety profile to prescribing physicians. Lastly, beginning in 2005 Dr. Carlson served as the study director for a clinical trial and then from 2006-2007 she served as the Medical Affairs Lead for another clinical study. In sum, between 2003-2006 Dr. Carlson was involved exclusively with Abilify® in a variety of roles, with increasing responsibility as her career progressed at BMS.

Plaintiffs say that given Dr. Carlson's roles from 2003-2006 in which to varying degrees she was involved with physician education, marketing, publication and medical planning there is a reasonable expectation that documents relevant to the issues germane to this case would be located in her custodial files for 2003-2006.

While BMS does not dispute that Dr. Carlson played an important

role with Abilify®, BMS says the importance of her involvement was while she served as Director, Medical Affairs/Medical Strategy in 2012 when pathological gambling was assessed in response to the inquiry from a foreign regulatory authority. According to BMS, Dr. Carlson's role with Abilify® was not significant until 2008 when she became the medical point person for Abilify®. BMS says that Dr. Carlson's role and responsibilities then expanded in 2010 when she began attending Abilify® MST meetings as part of the lifecycle team and then further expanded in 2011 when Dr. Carlson became the Lifecycle Lead for Abilify®. Dr. Carslson's custodial files in these time frames were collected, searched, reviewed and produced for both phases of discovery.

BMS argues that Dr. Carlson's 2003-2006 custodial files should not be subject to discovery because her role with Abilify® then does not warrant it and because BMS already has produced ESI from Dr. Carlson's supervisors covering this time period as well as providing Dr. Carlson's hard copy documents from 2003-2006. According to BMS, discovery of Dr. Carlson's custodial files would uncover at best ESI that is marginal to the issues in the case and duplicative of ESI already produced.

As with most discovery disputes involving ESI the Court is required to

assess the proportionality of requiring the production of additional ESI.

Among the factors the Court may consider in assessing proportionality are

the importance of the discovery in resolving the issues and whether the

burden or expense outweighs the likely benefit. Rule 26(b)(1) Fed. R. Civ.

P.  The Advisory Committee Notes to the 2015 Amendments to the Federal

Rules of Civil Procedure provide that ""'[t]he court's responsibility, using all

of the information provided by the parties, is to consider [the burden and

benefit of the proposed discovery] and all of the other factors in reaching a

case-specific determination of the appropriate scope of discovery."  Thus,

although no one factor is designed to outweigh the other factors, as a

practical matter, the determination here hinges upon whether production of

Dr. Carlson's custodial files is important to resolution of the issues in the

case.  That does not mean that this factor outweighs consideration of

whether the burden or expense outweighs the likely benefit. Certainly

requiring a party to conduct an additional collection, search, review and

production of ESI by necessity will increase the cost of discovery.  The

question therefore is whether the ESI from Dr. Carlson's custodial files

from 2003-2006 likely will disclose information that will be useful to the

issues in this case.  The Court concludes that it will.

Admittedly Dr. Carlson's role and responsibility for Abilify® increased and expanded from 2003, when she was hired as a MSL, to 2011 when she became the Lifecycle Lead for Abilify®. But that is precisely the reason why Dr. Carlson's earlier custodial files from 2003-2006 have importance and will not simply result in the production of duplicate ESI or ESI of marginal importance.

Dr. Carlson's increasing involvement with and responsibility for Abilify®—and particularly her key role with Abilify® in 2009-2012—was certainly informed by her prior roles and experience with Abilify®. Between 2003-2006 Dr. Carlson was initially educated on the mechanism of action of Abilify®, was involved with interacting with physicians, who were offering or considering offering Abilify® as a treatment option to their patients, and then after her promotion to Manager, US Neuroscience Medical Strategy, she was responsible for overseeing the medical affairs group for Abilify®. Notably, at least during some period of time after Dr. Carlson became Manager for US Neuroscience Medical Strategy she was directly involved with disseminating safety and efficacy information to prescribing physicians. Additionally, at least towards the end of the 2003-2006 time frame Dr. Carlson was extensively involved in a number of Abilify® clinical

trials. While Dr. Carlson did not attend MST meetings between 2003-2006, her extensive (and exclusive) involvement with Abilify® during this time frame was not divorced from the role she eventually assumed with regard to Abilify®. Dr. Carlson's continuous involvement with Abilify® evidences a longitudinal progression of responsibilities, and not simply a vertical progression, with unrelated involvement and responsibilities as she assumed different positions with BMS. In short, Dr. Carlson's involvement with Abilify® during her time as a key player in 2009-2012, did not take place in a vacuum unrelated to her previous involvement with Abilify® between 2003-2006. Production of Dr. Carlson's ESI from her earlier roles in the field therefore is likely to produce ESI that is relevant to issues concerning safety and efficacy of Abilify® as well as labeling, publication and medical planning. The Court recognizes that additional collection, search and review will involve increased discovery costs. The anticipated increased costs from a targeted collection, however, during a three year period of time does not in the Court's view outweigh the likely benefit of the discovery. The Court therefore concludes that the requested discovery is proportional to the needs of the case and must be produced by BMS.

That leaves the issue of whether BMS also should be required to

conduct an additional search of the previously collected custodial files using the product modifier "ari," a term Plaintiffs say BMS employees frequently used to identify Abilify®. Because the prior search terms did not include "ari," and Plaintiffs say use of this product modifier could identify other documents, the Court is persuaded that BMS should run an additional search from the collection of Dr. Carlson's custodial files using only the product modifier "ari." This view is consistent with the Court's previous ruling that Otsuka should do so for certain custodians and is consistent with what BMS has agreed to do in the stipulation reached between the parties for the additional searches of custodians.

Accordingly, for these reasons, Plaintiffs' supplemental motion to compel BMS to produce ESI from Dr. Carlson's custodial files from 2003-2006 is granted. The parties are directed to meet and confer and within ten (10) days provide the Court with a projected time frame for the production of the additional ESI.

**DONE AND ORDERED** this 29th day of November, 2018.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge